**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FILED: AUG 12, 2008

|  |  |  |
|---|---|---|
| JONES DAY, a General Partnership, | ) ) ) | Case No.: 08CV4572 |
| Plaintiff, | ) ) | JUDGE DARRAH |
| v. | ) ) | Judge: MAGISTRATE JUDGE COX |
| BlockShopper.com, an unincorporated business entity, | ) ) ) | RCC |
| and | ) ) |  |
| Brian Timpone, d/b/a Blockshopper.com, an individual, | ) ) ) ) |  |
| and | ) ) |  |
| Edward Weinhaus, d/b/a Blockshopper.com, an individual, | ) ) ) ) |  |
| Defendants. | ) ) |  |

## MOTION FOR TEMPORARY RESTRAINING ORDER

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, Plaintiff Jones Day ("Jones Day"), respectfully requests that this Court enter a Temporary Restraining Order: (1) enjoining Defendants' use of Jones Day's federally-registered service marks JONES DAY and JONES DAY (and Design) (the "Jones Day Service Marks"), including, but not limited to, providing links to the web site www.jonesday.com; (2) engaging in any conduct which dilutes the Jones Day Service Marks; and (3) using any content from the Jones Day web site.

As set forth more fully in the attached Memorandum in Support, which is incorporated herein by this reference, Defendants' use of the Jones Day Service Marks violates the Federal Trademark Dilution Act and the Lanham Act. Defendants' conduct is intentional and injurious to Jones Day's business and is irreparably harming the goodwill associated with intellectual property owned by Jones Day. Accordingly, this Court should issue a Temporary Restraining Order enjoining any further use or publication of the Jones Day Service Marks.

Date:  August 12, 2008

Respectfully submitted,

By: _____
Paul W. Schroeder
Illinois State Bar No. 2509113
pwschroeder@jonesday.com
JONES DAY
77 West Wacker Drive, Suite 3500
Chicago, Illinois 60601-1692
Telephone:  (312) 782-3939
Facsimile:  (312) 782-8585

Meredith M. Wilkes
N.D. Illinois Bar No. 90785056
mwilkes@jonesday.com
Robert P. Ducatman
rducatman@jonesday.com
James W. Walworth Jr.
jwalworth@jonesday.com
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, Ohio 44114
Telephone:  216-586-3939
Facsimile:  216-579-0212

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JONES DAY,<br>a General Partnership, | ) ) ) | Case No.:_____ |
| Plaintiff, | ) ) | Judge:_____ |
| v. | ) ) | |
| BlockShopper.com,<br>an unincorporated business entity, | ) ) ) | |
| and | ) ) | |
| Brian Timpone,<br>d/b/a Blockshopper.com,<br>an individual, | ) ) ) ) | |
| and | ) ) | |
| Edward Weinhaus,<br>d/b/a Blockshopper.com,<br>an individual, | ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFF JONES DAY'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................................1

FACTUAL BACKGROUND....................................................................................1

    The Fame and Recognition of the Jones Day Service Marks ............................1

    Defendants' Unlawful Conduct .........................................................................4

    Jones Day's Notice to Defendants ....................................................................5

ARGUMENT.........................................................................................................6

DEFENDANTS' USE OF THE JONES DAY SERVICE MARKS SHOULD BE
ENJOINED. ..........................................................................................................6

A.  Jones Day Meets The Standard For Injunctive Relief. ...................................6

B.  Jones Day Is Likely To Succeed On The Merits. ..........................................6

    1.    Defendants' Use Of "Jones Day" Dilutes The Distinctive Value Of The
        Jones Day Service Marks. ......................................................................6

        a.    Defendants Are Engaged In Trademark Dilution As A Matter Of
            Law. ..............................................................................................6

        b.    Defendant's Use of "Jones Day" Blurs and Tarnishes the Jones
            Day Service Marks. .......................................................................7

    2.    Jones Day Is Likely To Prevail On The Merits Of Its Service Mark
        Infringement Claims. ............................................................................11

        a.    Jones Day Has The Exclusive Rights To Use the Jones Day
            Service Marks. ............................................................................11

        b.    Defendant's Continued Use Of The Jones Day Service Marks
            Establishes "Likelihood of Confusion" As A Matter Of Law.................12

C.  There is No Adequate Remedy at Law and Jones Day Will Continue To Suffer
Irreparable Injury In The Absence Of Immediate Injunctive Relief. ........................13

D.  Injunctive Relief Will Not Harm Defendant And Will Serve The Public Interest.................14

CONCLUSION ...................................................................................................15

## INTRODUCTION

Plaintiff, Jones Day ("Jones Day"), moves this Court for an Order enjoining Defendants Blockshopper.com ("Blockshopper"), Brian Timpone ("Timpone") and Edward Weinhaus ("Weinhaus") from committing further acts of service mark dilution and service mark infringement arising out of Defendants' unauthorized use of Jones Day's valuable and famous service marks JONES DAY and JONES DAY (and Design).

As established below, Defendants are intentionally trading upon the fame and recognition of the Jones Day Service Marks. Defendants' behavior is indisputably unlawful and irreparably harmful to Jones Day. Jones Day will ultimately succeed on its claims against Defendants. Moreover, Defendants will not be harmed by the entry of an injunction. Accordingly, Jones Day respectfully requests that this Court expeditiously enter a temporary restraining order against Defendants' unlawful conduct.

In compliance with Rule 65(b) of the Federal Rules of Civil Procedure, Jones Day has served notice of its Complaint and Motion for Temporary Restraining Order on Defendants by electronic mail and by overnight express. (See Declaration of Kristy Posch, attached hereto as Exhibit A and by this reference herein incorporated).

## FACTUAL BACKGROUND

### The Fame and Recognition of the Jones Day Service Marks

Tracing its origins to 1893 in Cleveland, Ohio, Jones Day is one of the world's largest and most famous law firms, with more than 2,200 lawyers resident in 30 geographically diverse locations worldwide. (Attached hereto as Exhibit B and by reference herein incorporated is the Declaration of Lee Ann Russo, Esq., ¶¶ 3 and 4). Jones Day is fortunate to have been selected to act as principal outside counsel to, or provide significant legal representation for, more than half

of the *Fortune* 500 companies, as well as to a wide variety of other entities, including privately-held companies, financial institutions, investment firms, health care providers, retail chains, foundations, educational institutions and individuals.  (Id., ¶ 9).  Surveys repeatedly list Jones Day as one of the law firms most frequently engaged by domestic corporations, and many of the Firm's lawyers have achieved national recognition in their disciplines.  (Id., ¶ 10).  Jones Day has been ranked first among litigation departments in the United States, and consistently ranks among the finest litigation departments in the United States.  (Id.)

In the United States, Jones Day maintains offices in Atlanta, Chicago, Cleveland, Columbus, Dallas, Houston, Irvine, Los Angeles, New York, Palo Alto, Pittsburgh, San Diego, San Francisco and Washington, D.C.  (Id., ¶ 5).  Jones Day's international practice is also significant and expanding.  In addition to representing a large number of its United States-based clients in international matters, Jones Day represents many major companies based in Europe, the Middle East, Asia, and Latin America.  (Id., ¶ 6).  Jones Day maintains a significant presence in the principal legal and regulatory capitals of the world.  In Europe, more than 400 lawyers are based in Brussels, Frankfurt, London, Madrid, Milan, Moscow, Munich and Paris.  (Id., ¶ 7).  In Asia, more than 200 lawyers are based in Beijing, Hong Kong, Shanghai, Singapore, Taipei, and Tokyo.  (Id., ¶ 8).  Jones Day also has offices in Sydney, Australia.  (Id.)

As a result of the high quality of legal services it has provided to its clients for more than a century, and its reputation as one of the premier law firms in the United States, if not the world, Jones Day's name and service marks have become very valuable assets and are famous.  (Id. ¶ 15).  Since at least as early as July 1983, Jones Day has used, and continues to use, the service mark JONES DAY to identify the legal services the Firm provides.  (Id., ¶ 16).  The Firm has used the service mark JONES DAY in commerce in other forms since at least 1939.  (Id.)  As a

-2-

direct result of the time and effort promoting the Jones Day Service Marks, Jones Day's clients, its competitors and the general public have come to associate high-quality legal services provided by Jones Day by its use of the name and service mark JONES DAY in both word and stylized forms. (Id., ¶ 20).

Jones Day is the owner of two United States Service Mark Registrations, Numbers 2,212,877 and 2,316,539, for the mark JONES DAY to identify legal services (collectively the "Jones Day Service Marks"). The Jones Day Service Marks are valid and have become incontestable. (Id., ¶ 13, Ex. 1).

Jones Day vigorously protects its rights in and to the Jones Day Service Marks. (Id., ¶ 17). For example, in March 2000, Judge Nugent of the United States District Court for the Northern District of Ohio enjoined a cybersquatter from posting any content on web sites at the domain names *www.jonesdayreavis.com*, *www.jonesdayreavispogue.com*, and *www.jonesdayreavisandpogue.com* or from registering any domain name that is identical or confusingly similar to any registered or common law service mark of Jones Day, including but not limited to, the Jones Day Service Marks. (See Jones Day Reavis & Pogue v. Wick, et al., Case No. 1:00CV613 (N.D. Ohio 2000)). Moreover, in November, 2005, Judge Economus of the United States District Court for the Northern District of Ohio held that the Jones Day Service Marks are famous and awarded temporary and permanent injunctive relief to Jones Day against a cybersquatter who had registered www.jonesdays.com. (See Jones Day v. Patel, Case No. 1:05CV2584 (N.D. Ohio 2005)). Jones Day also was awarded costs, statutory damages and attorneys' fees. (See Order dated January 10, 2006, a true and correct copy of which is attached hereto as Exhibit C and by reference herein incorporated).

In 2006, Jones Day again successfully enforced its service marks against improper internet usage. Jones Day sued for trademark dilution in the United States District Court for the Northern District of Ohio (Case No. 1:06CV01174). The suit ultimately settled when the defendant agreed to refrain from referencing or using, directly or indirectly, "Jones Day" or the Jones Day Service Marks. (Russo Decl., ¶ 19).

## Defendants' Unlawful Conduct

Defendants Weinhaus and Timpone co-founded, registered and operate the internet web site located at the domain *www.blockshopper.com* (the "Web Site"). (Posch Decl., ¶ 3, Ex. 1). Defendants Weinhaus and Timpone use the Web Site to operate the Defendant business Blockshopper.com. (Id.).

Blockshopper.com is a business predicated upon gathering and publishing details of private residential real estate transactions. (Id.). Defendants use the Web Site as a tool by which to solicit advertisements and garner advertising income. For example, the Web Site touts that: "BlockShopper.com offers special advertising and sponsorship packages created to meet your local customer acquisition or brand-building needs." (Id.). In order to make their site more attractive to potential advertisers, Defendants use the service marks of others, link to web sites owned by others and use material from web sites belonging to others. (Id.).

Defendants have used the Jones Day Marks on the Web Site. On at least two occasions, Defendants have linked "articles" on the Web Site to the Jones Day web site. (Id.). Defendants also have used materials from the Jones Day web site on the Web Site. A review of the content of the Web Site reveals that the photographs of at least two Jones Day associates are identical to the photographs which appear on the Jones Day web site. (Id.).

-4-

Defendants have no business connection or association with Jones Day.  (Russo Decl., ¶ 23).  Jones Day never has authorized Defendants to use any intellectual property owned by Jones Day, including the Jones Day Marks.  (Id.).  Defendants' use of the Jones Day Marks, the link to the Jones Day web site and the use of proprietary information from the Jones Day web site creates the false impression that Jones Day is affiliated with and/or approves of the business conducted by the Defendants.  (Id. ¶¶ 22-24).  Such an impression is false, disparages Jones Day and infringes and dilutes the Jones Day Marks.  (Id. ¶ 24).

**Jones Day's Notice to Defendants**

Jones Day did not become aware of Defendants' use of the Jones Day Service Marks until July 2008.  (Id., ¶ 22).  After Jones Day became aware of the use of the Jones Day Service Marks, it contacted Defendants on July 10, 2008, and requested that the Defendants cease all use of the Jones Day Marks, cease linking to the Jones Day web site and cease use of Jones Day's web site content.  (Complaint Ex. E).  Jones Day did not receive a response to this letter.

On July 17, 2008, Jones Day again contacted Defendants and requested that the Defendants cease all use of the Jones Day Marks, cease linking to the Jones Day web site and cease use of Jones Day's web site content.  (Complaint Ex. F).  Again, Defendants failed to respond to Jones Day's requests.  Defendants continue to operate the Web Site and use Jones Day's intellectual property.

Obviously, Defendants do not intend to cease their unlawful and disparaging use of the Jones Day Service Marks.  Because Defendants' conduct has and continues to injure the valuable service mark rights of Jones Day, Jones Day seeks immediate injunctive relief to prevent further irreparable harm.  A copy of the proposed Temporary Restraining Order is attached for the Court's convenience at Exhibit D and by reference herein incorporated.

## ARGUMENT

## DEFENDANTS' USE OF THE JONES DAY SERVICE MARKS
## SHOULD BE ENJOINED.

**A.      Jones Day Meets The Standard For Injunctive Relief.**

In the Seventh Circuit, the standard for granting a temporary restraining order is the same

as the standard for granting a preliminary injunction. YourNetDating, Inc. v. Mitchell,

88 F. Supp. 2d 870, 871 (N.D. Ill. 2000). In deciding a motion for a preliminary injunction, a

court must determine whether: (1) the plaintiff has some likelihood of success on the merits; (2)

there is an adequate remedy at law; and (3) plaintiff will suffer irreparable harm if the injunction

is not granted. Ty, Inc. v. Jones Group, Inc., 237 F.3d 891, 895 - 896 (7th Cir. 2001).

If the above conditions are met, then the Court must consider the irreparable harm that

the non-moving party will suffer if preliminary relief is granted, and the public interest in

denying or granting the injunction. Id. The more likely it is that the plaintiff will succeed on the

merits, the less the balance of irreparable harms need favor the plaintiff's position. Id. In this

matter, all of the factors weigh heavily in favor of entering the requested injunctive relief.

**B.      Jones Day Is Likely To Succeed On The Merits.**

**1.      Defendants' Use Of "Jones Day" Dilutes The Distinctive Value Of The Jones
Day Service Marks.**

**a.      Defendants Are Engaged In Trademark Dilution As A Matter
Of Law.**

The Federal Trademark Dilution Act, 15 U.S.C. § 1125(c) ("FTDA"), permits the owner

of a famous mark to seek an injunction against the "use of a mark or trade name in commerce

that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark,

regardless of the presence or absence of actual or likely confusion, of competition, or of actual

economic injury." 15 U.S.C. § 1125(c)(1).

-6-

In contrast to an infringement claim, injury resulting from dilution does not result from consumer confusion about the source of a product or service.  Dilution is the lessening of the capacity of a famous mark to identify and distinguish goods or services, regardless of the presence or absence of competition between the owner of the famous mark and other parties, or likelihood of confusion, mistake or deception.  15 U.S.C. § 1125.  Dilution can occur either by blurring or tarnishment of a mark.  15 U.S.C. § 1125(c)(2)(B)-(C).  The FTDA was enacted to "protect[ ] the trademark owner from the erosion of the distinctiveness and prestige of a trademark…"  Eli Lilly & Co. v. Natural Answers, Inc., 233 F.3d 456, 466 (7th Cir. 2000).

A review of the plain language of the FTDA reveals that Jones Day is likely to prevail on the merits of its trademark dilution claim.  The Jones Day Services Marks are famous, and Defendant's conduct tarnishes and blurs the distinctive Jones Day Service Marks.

> **b.     Defendant's Use of "Jones Day" Blurs and Tarnishes the Jones Day Service Marks.**

Jones Day can establish each of the statutory elements of a dilution claim.  In order to prove trademark dilution pursuant to 15 U.S.C. § 1125(c), a party must show: (1) it is the owner of a famous mark; (2) the mark is being used by defendant in interstate commerce; (3) the use began after the mark became famous; and (4) there is a likelihood of dilution either by blurring or tarnishment of the famous mark.  Fame can be demonstrated by several factors including "[t]he duration, extent, and geographic reach of advertising and publicity of the mark…" Id.  Blurring occurs when there is an "association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark." Id.  Tarnishment occurs when there is an "association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark." Id.

As set forth in the Declaration of Lee Ann Russo, Esq., Jones Day owns two incontestable registrations for the Jones Day Service Marks. (Russo Decl., Ex. 1). Incontestable registrations are conclusively presumed to be distinctive. 15 U.S.C. § 1115(b). Moreover, Jones Day has been using "Jones Day" and the Jones Day Service Marks for nearly seventy (70) years throughout the world. (Russo Decl., ¶ 16).

Jones Day provides significant legal representation for more than half of the *Fortune* 500 companies, and surveys repeatedly list Jones Day as one of the law firms most frequently engaged by domestic corporations. (Id., ¶¶ 9 and 10). Jones Day has been ranked first among litigation departments in the United States and consistently ranks among the finest litigation departments in the United States. (Id., ¶ 10). Moreover, Jones Day has spent millions of dollars advertising and promoting the Jones Day Service Marks. (Id., ¶ 19). As a direct result of the time, money and efforts of Jones Day, the Jones Day Service Marks have come to serve as a unique identifier of a standard of quality of legal services originating from Jones Day. (Id., ¶ 20). Finally, as a matter of law, the Jones Day Service Marks are famous. The United States District Court for the Northern District of Ohio has so held. (See Ex. C).

It cannot be disputed that Defendants began using the Jones Day Service Marks well after Jones Day. Defendants' use both blurs and tarnishes the Jones Day Service Marks, thereby diluting the distinctive quality of the marks and lessening the capacity of the marks to identify the legal services provided by the Firm. Defendants cannot dispute that their use of the Jones Day Service Marks is diluting the distinctive value of the marks. "The *sine qua non* of tarnishment is a finding that plaintiff's mark will suffer negative associations through defendant's use." Hormel Foods Corp. v. Jim Henson Prods., 73 F.3d 497, 507 (2d Cir. 1996). See also Eli Lilly, 233 F.3d at 466 ("Dilution by tarnishing occurs when a junior mark's

-8-

similarity to a famous mark causes consumers mistakenly to associate the famous mark with the defendant's inferior or offensive product.").

For instance, in <u>America Online, Inc. v. IMS</u>, 24 F. Supp. 2d 548 (E.D. Va. 1998), the court held that there had been dilution by tarnishment because the Defendant had used the plaintiff's registered trademark "AOL" in connection with his junk e-mail practices.  While the junk mail did not originate from AOL, the defendant put the initials "aol" into the header of nearly 60 million junk e-mails.  The plaintiff argued, and the court agreed, that the AOL mark was tarnished due to the "strong likelihood of dilution by negative associations that AOL subscribers make between AOL and Melle's junk e-mailing practices."  <u>Id.</u> at 552.

The negative associations found in <u>America Online</u> are the type of negative associations resulting from Defendants' use of the Jones Day Service Marks.  As the direct result of decades of providing high quality legal services, Jones Day has built a strong reputation as a premier law firm.  In contrast, Defendants are riding the coat tails of famous service marks as a means by which to solicit internet advertising.  Much like the AOL mark was damaged by it being associated with junk e-mail, the Jones Day Marks are tarnished by the association with Defendants' predatory practices.  Clients or potential clients of Jones Day may be dissuaded to engage the services of the Firm due to the implication that the Firm is somehow associated with a web site such as the one operated by Defendants.

Defendants' use of the Jones Day Service Marks constitutes dilution by blurring, as well.  Dilution by blurring results from interference with the source-identifying function of a trademark.  Dilution by blurring whittles away the value of a trademark when it is used to identify the services of someone other than the mark's owner.  4 J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> § 24.67 at 24-133.  Selling power is destroyed because

the trademark's uniqueness has been blurred. Id. See also Eli Lilly, 233 F.3d at 466 ("Dilution by blurring...occurs when consumers 'see the plaintiff's mark used on a plethora of different goods and services...raising the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product.'") (citations omitted).  Examples of dilution by blurring could include CLOROX power tools, EXXON lap top computers or KODAK pianos.  4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 24.94.2 at 24-227.

Dilution by blurring is readily apparent in this case.  Viewers of the Web Site will now call to mind two sets of services – those provided by Jones Day and those provided by Defendants.  Defendants' use of the Jones Day Service Marks is a blatant free ride on Jones Day's substantial investment in the Jones Day Service Marks.  Defendants' use has diminished the Jones Day Service Marks both by blurring the unique association between Jones Day and the Jones Day Service Marks.  Thus, Defendants should be enjoined.

Defendants have appropriated the Jones Day Service Marks in a blatant attempt to capitalize on the fame and recognition of the Jones Day Service Marks.  It is plain from the content of the Web Site that Defendants are using the Jones Day Service Marks in a manner that dilutes the distinctive quality of the Jones Day Service Marks.  First, Defendants are using the Jones Day Service Mark to advertise and promote Defendants' services.  Second, the nature of the Web Site itself (publishing private real estate transaction details)  reveals that Defendants are disparaging Jones Day by suggesting that the Firm approves or is otherwise affiliated with the business of Blockshopper.  In short, Defendants are using the famous Jones Day Service Marks in a manner that dilutes their distinctive quality, and such use should be enjoined.

2.     **Jones Day Is Likely To Prevail On The Merits Of Its Service Mark Infringement Claims.**

In addition to its claim for dilution, Jones Day has asserted a claim against Defendants for service mark infringement.  (Complaint).  Jones Day is likely to prevail on this claim, as well.

Section 43(a) of the Lanham Act prohibits service mark infringement, service mark dilution and false designation of origin.  Relevant sections of the statute impose liability on those who "use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1)(a).  To succeed on the merits of its service mark infringement claim, Jones Day must show:  (1) that the Jones Day Service Marks are valid service marks owned by Jones Day; and (2) Defendants' use of the Jones Day Service Marks creates a likelihood of confusion.  15 U.S.C. § 1114.  As set forth below, Jones Day has substantial evidence to establish these elements.

a.     **Jones Day Has The Exclusive Rights To Use the Jones Day Service Marks.**

Defendants cannot dispute the validity and strength of the Jones Day Service Marks.  A certificate of registration is *prima facie* evidence of the validity, ownership and exclusive right to use the registered mark at issue in connection with services specified in the certificate of registration.  15 U.S.C. § 1057.  Further, registered service marks which have become incontestable under § 15 of the Lanham Act are presumed to be strong.  15 U.S.C. § 1065.

Jones Day has continuously used the Jones Day Service Marks since at least as early as 1939.  (Russo Decl. ¶ 17).  Jones Day obtained its first federal registration for the mark "Jones Day" on December 22, 1998, and both of the Jones Day Service Mark Registrations are incontestable.  (Ex. 2 to Russo Decl.)  As such, there can be no dispute that Jones Day is the sole

-11-

owner of valid registrations for the Jones Day Service Marks.  Thus, the first required element for demonstrating a likelihood of success on the merits is easily satisfied.

> **b.    Defendant's Continued Use Of The Jones Day Service Marks Establishes "Likelihood of Confusion" As A Matter Of Law.**

"The 'keystone' of trademark infringement is 'likelihood of confusion' as to source, **affiliation, connection or sponsorship of goods or services** among the relevant class of customers and potential customers."  <u>TV Land v. Viacom Int'l, Inc.</u>, 908 F. Supp. 543, 550 (N.D. Ill. 1995) (emphasis added).  The sole purpose of Defendants' use of the Jones Day Marks is to create the impression that they are in some manner associated or affiliated with Jones Day and/or that Jones Day approves of their practices.  Providing links to the Jones Day web site further evidences the danger of confusion as to the affiliation or endorsement.  Thus, this Court can readily find in favor of Jones Day as to the element of likelihood of confusion.

That a likelihood of confusion exists based upon Defendants' unauthorized and continued use of the Jones Day Service Marks is fortified by consideration of the multi-factor test set forth by the Seventh Circuit:  (1) the similarity of the marks in appearance and suggestion; (2) the similarity of the products; (3) the area and manner of concurrent use; (4) the degree of care likely to be used by consumers; (5) the strength of the plaintiff's mark; (6) whether any actual confusion exists; and (7) the defendant's intent to palm off its goods as those of the plaintiffs. <u>Ty, Inc.</u>, 237 F.3d at 897 -898.  None of these factors by itself is dispositive of the likelihood of confusion question, and different factors will weigh more heavily from case to case depending on the particular facts and circumstances involved.  <u>Id.</u>  Even though no one factor is decisive, the similarity of the marks, the intent of the defendant, and evidence of actual confusion are the "most important factors" in a likelihood of confusion case.  <u>Id.</u>

-12-

The Jones Day Service Marks are indisputably strong, as evidenced by the incontestable service mark registrations, nearly 70 years of use, and the millions spent advertising and promoting them. (Russo Decl., ¶¶ 16, 19); 15 U.S.C. § 1115(b). Jones Day is prominently recognized throughout the world as a premier law firm, has been ranked first among litigation departments in the United States and tops the BTI Consulting Group's national survey of Client Service Performance for Law Firms. (Russo Decl., ¶¶ 10-11). The marks at issue are identical, which further dictates that confusion is likely. Moreover, the marketing channels are identical. Jones Day uses the internet to provide information about the services it provides. (Russo Decl. ¶ 12).

Defendants' obvious intent to benefit from the goodwill represented by the Jones Day Service Marks further dictates that Jones Day is entitled to relief. Defendants' reasons for using the Jones Day Service Marks is to lend the appearance of legitimacy to what they are doing by misappropriating the selling power associated with the Jones Day Service Marks, or, to draw attention to what they are doing, neither of which is permissible use. Defendants' intent to profit from their use of the Jones Day Service Marks weighs heavily in favor of a finding of likelihood of confusion. Thus, the totality of the relevant factors support a finding of "likelihood of confusion" as to sponsorship or affiliation between Jones Day and Blockshopper. Jones Day is therefore highly likely to prevail on its service mark infringement claims.

**C.     There is No Adequate Remedy at Law and Jones Day Will Continue To Suffer Irreparable Injury In The Absence Of Immediate Injunctive Relief.**

The injuries caused by trademark infringement "are by their very nature irreparable and not susceptible of adequate measurement for remedy at law." Processed Plastic Co. v. Warner Communications, Inc., 675 F.2d 852, 858 (7th Cir. 1982). Jones Day's clients and the public have come to expect high quality legal services from Jones Day. Jones Day has earned and

-13-

enjoys an outstanding reputation. It has built substantial goodwill in the Jones Day Marks. Defendants' unlawful use of the Jones Day Marks harms that substantial goodwill, and there is no monetary judgment that can undo or remediate that harm. Unless Defendants' unlawful use of the Jones Day Service Marks is enjoined, Jones Day will suffer damage to their reputation and loss of goodwill causing irreparable injury to Jones Day.

**D.      <u>Injunctive Relief Will Not Harm Defendant And Will Serve The Public Interest</u>**.

In deciding whether to issue a temporary restraining order, the Court should also consider the harm to Defendants if they are enjoined, as well as whether the order will serve the public interest. <u>Ty, Inc.</u>, 237 F.3d at 897-898.

A Temporary Restraining Order will not harm Defendants. Defendants have chosen to engage in illegal activities in a blatant attempt to gain a free windfall from the goodwill Jones Day has built at significant cost over many years. Granting injunctive relief would require Defendants to cease their impermissible use of the Jones Day Service Marks. Defendants would not suffer any harm if such a Temporary Restraining Order is entered. Perhaps most importantly, Defendants are free to, and can, continue to operate the Web Site without using the Jones Day Service Marks, and without linking to the Jones Day web site or using Jones Day proprietary web site content.[1]

Finally, granting a Temporary Restraining Order will serve the public interest. The public has an interest in not being confused by improper use of another's trademark. <u>See Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.</u>, 846 F.2d 1079, 1092 (7th Cir. 1988) ("[T]he relevant consideration [in determining whether the public interest will be disserved by the grant

---

[1]    Where, as is the case here, the injunction will cause no harm to defendant, no bond is required. <u>See, e.g.</u>, <u>Special Educ. Services v. RREEF Performance, Partnership-I, L.P.</u>, No. 95 C 6468, 1996 WL 41251, *2 (N.D. Ill. Jan. 29, 1996) ("This court has explained that SES need not post security for the preliminary injunction because the injunction will do little or no harm to RREEF.") (citing <u>Scherr v. Volpe</u>, 466 F.2d 1027, 1035 (7th Cir. 1972)).

-14-

of an injunction] is the consumer's interest in not being deceived about the products they purchased."). Thus, a Temporary Restraining Order should issue. Defendants will not be harmed and the public interest is served.

## CONCLUSION

The overwhelming evidence demonstrates that Jones Day is likely to prevail on the merits of its dilution and infringement claims. Jones Day is suffering irreparable harm, and the public interest will be served by injunctive relief. For the foregoing reasons, Jones Day respectfully requests that this Court issue a Temporary Restraining Order in the form attached hereto as Exhibit D.

Dated:  August 12, 2008                       Respectfully submitted,

                                              By: _____
                                              Paul W. Schroeder
                                              Illinois State Bar No. 2509113
                                              pwschroeder@jonesday.com
                                              JONES DAY
                                              77 West Wacker Drive, Suite 3500
                                              Chicago, Illinois 60601-1692
                                              Telephone:  (312) 782-3939
                                              Facsimile:  (312) 782-8585

                                              Meredith M. Wilkes
                                              N.D. Illinois Bar No. 90785056
                                              mwilkes@jonesday.com
                                              Robert P. Ducatman
                                              rducatman@jonesday.com
                                              James W. Walworth Jr.
                                              jwalworth@jonesday.com
                                              JONES DAY
                                              North Point
                                              901 Lakeside Avenue
                                              Cleveland, Ohio 44114
                                              Telephone:  216-586-3939
                                              Facsimile:  216-579-0212

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that true and correct copies of the foregoing Motion for

Temporary Restraining Order and Memorandum in Support, together with all exhibits thereto,

was served via electronic mail and overnight courier on this 12th day of August, 2008 on:

Blockshopper.com
875 N. Michigan Avenue, Suite 3100
Chicago, Illinois 60610

Brian Timpone
2024 North Racine Avenue, Apartment D
Chicago, Illinois 60614

Edward Weinhaus
102 Ladue Aire Drive
Saint Louis, Missouri 63141

Attorney for Plaintiff

CLI-1637704v1

08CV4572
JUDGE DARRAH
MAGISTRATE JUDGE COX
RCC

**Exhibit A to Plaintiff Jones Day's Memorandum of Law in Support of Motion for Temporary Restraining Order**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| JONES DAY,<br>a General Partnership, | )<br>)<br>) | Case No.:_____ |
| Plaintiff, | )<br>) | Judge:_____ |
| v. | )<br>) | |
| BlockShopper.com,<br>an unincorporated business entity, | )<br>)<br>) | |
| and | )<br>) | |
| Brian Timpone,<br>d/b/a Blockshopper.com,<br>an individual, | )<br>)<br>)<br>) | |
| and | )<br>) | |
| Edward Weinhaus,<br>d/b/a Blockshopper.com,<br>an individual, | )<br>)<br>)<br>) | |
| Defendants. | ) | |

**<u>DECLARATION OF KRISTY POSCH</u>**

I, Kristy Posch, declare as follows:

1.      I provide this Declaration in support of the Motion for Temporary Restraining

Order in the above-captioned case.  I have personal knowledge of all facts set forth below and, if

called upon to testify, I would testify consistent with those facts.

2.        I am a Paralegal in the law firm of Jones Day.

3.        Defendants operate the web site accessible at www.blockshopper.com ("the Web Site"). Attached hereto as Exhibit 1, and by reference herein incorporated, is a true and correct copy of the pages an internet user would see when he or she accesses the Web Site. Exhibit 1 accurately depicts the Web Site as of the date of this Declaration.

4.        On August 12, 2008, I sent each of the Defendants a copy of the Complaint and Jury Demand, Motion for Temporary Restraining Order, Memorandum in Support, and Exhibits attached thereto. I sent these materials to the Defendants via UPS to the addresses for Defendants listed by Defendants on the Web Site. I also sent these materials to the known electronic mail address used by Defendants on the Web Site.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on:   August 12, 2008

_____
Kristy Posch

**Exhibit 1 to the Declaration of Kristy Posch**

CLI-1638245v1





Launched in May 2006, <u>BlockShopper Chicago</u> covers Chicago's Lincoln Park and Lake View neighborhoods.



Launched in January 2008, BlockShopper South Florida covers all of Palm Beach and Broward counties.

## St. Louis

Launched in March 2007, BlockShopper St. Louis covers all of suburban St. Louis County, including news and data on nearly 225,000 home sales since 1998.

## Las Vegas

Launched in May 2008, BlockShopper Las Vegas covers all of Clark County, Nevada, with more than 15 years of sale data.

### *What's BlockShopper?*

As featured in the Chicago Tribune, BlockShopper is a local real estate news and market data service for current and aspiring homeowners.

Read our daily news stories and learn who's buying and who's selling in your neighborhood.

Or put prices in perspective with our comprehensive home sales database. BlockShopper is the ultimate research tool for home buyers, sellers and investors.

**Contact Us:** Media, Advertising & Business Dev.: brian@blockshopper.com · User/Homeowner Support: rob@blockshopper.com

Chicago **BlockShopper**.com

LUCID REALTY    with Lucid Realty    ★ Low Commissions  ★ Buyer Rebates  ★ Full Service

**Home**    News    Sold Homes    About Us

AUGUST 11

## Northwestern Memorial radiologist buys N. Greenview townhome

*by Dan Fey*

Dr. Karin E. Dill bought a three-bedroom, three bath townhome at 2669 N. Greenview Ave. in Lincoln Park for $650,000 from Timothy and Dawn Walsh on June 10.

Read more...


2669 N. Greenview Ave.

Filed under: Lincoln Park | West Lincoln Park

AUGUST 11

## DuPont account manager sells for $483K on N. Halsted

*by Dan Fey*

Tara Zmyslo and Andrew Benedict sold their two-bedroom, two bath condo at 2719 N. Halsted in Lincoln Park for $483,000 to Jamie Smith on June 16.

Read more...


2719 N. Halsted

Filed under: Lincoln Park | Mid-North

**New Construction Condos**
Chicago New Condos For Sale Floor Plans, Prices, Delivery Dates

**Wrigleyville Townhouses**
Find Every Home in the Chicago MLS For Free. Thousands of Listings!


Ads by Google

AUGUST 11

## Investment exec sells for $509K on W. Lill

*by James Trotter*

Daniel M. Alfe and his wife, Amie, sold their three-bedroom, two bath condo at 817 W. Lill Ave. in Lincoln Park for $509,000 to Vito and Donata Falco on June 13.

Read more...


817 W. Lill Ave.

Filed under: Lincoln Park | Mid-North

AUGUST 8

## Real estate lawyer pockets $140K on W. Fullerton condo

*by James Trotter*

Charles D. Mangum and his wife, Rachel Story, sold their two-bedroom, two bath condo at 453 W. Fullerton Pkwy. in Lincoln Park for $500,000 to Jason Hartline on July 14. Read more...

Filed under: Lincoln Park | Mid-North


Mr. Mangum

### Chicago Real Estate

Select Neighborhood
Lincoln Park

Maximum Price
$350,000

Prop Type
Condominium

Bathrooms
0

Bedrooms
0

Search

XML BlockShopper News RSS Feed

## Subscribe

Get the latest Lincoln Park & Lake View home sales news, FREE delivered straight to your inbox.

Join

## Browse by Neighborhood

- Lake View
- Lincoln Park

## Browse by Street

- Addison St
- Aldine Ave
- Alta Vista Ter
- Altgeld St
- Arlington Pl
- Armitage Ave
- Ashland Ave
- Barry Ave
- Belden Ave
- Belle Pl
- **and more...**

## Browse by Price

- $ 50-99k
- $ 100-149k
- $ 150-199k
- $ 200-249k
- $ 250-299k
- $ 300-349k
- $ 350-399k
- $ 400-449k
- $ 450-499k
- $ 500-549k

**Chicago MLS Search**
Find Townhomes in the Chicago MLS For
Free. Thousands of Listings!
◄ ►

**Lincoln Park Lofts**
Discover Your Next Chicago Loft! Search In
Your Price Range Today.

Ads by Google

AUGUST 8

## New Feinberg chair spends $1.09M for Deming Place condo

*by James Trotter*

Dr. Douglas E. Vaughan bought a three-bedroom, 2.1 bath condo at 454 W. Deming Place in Lincoln Park for $1.09 million from Chicago developer Wexner/Greenberg Associates, Inc. on July 8. Read more...


Dr. Vaughan

Filed under: Lincoln Park / Wrightwood

right ©
07

**Browse by Sale Date**

- Jul 20 - 26, 2008
- Jul 13 - 19, 2008
- Jul 8 - 12, 2008
- Jun 29 - Jul 5, 2008
- Jun 22 - 28, 2008
- Jun 15 - 21, 2008
- Jun 8 - 14, 2008
- Jun 1 - 7, 2008
- May 25 - 31, 2008
- May 18 - 24, 2008
- and older...

and higher...

BlockShopper.com. **Advertise** | FAQ | About Us | Contact Us | Terms of Use

AUGUST 8

## Indiana grad spends $468K for new N. Lincoln condo

*by Dan Fey*

Scott Boruff and Amanda Greiwe bought a two-bedroom, two bath condo at 2757 N. Lincoln Ave. in Lincoln Park for $468,00 from Impressionist Homes on Lincoln on June 23. Read more...


Mr. Boruff

Filed under: Lincoln Park / Lincoln Central

**Chicago, IL Townhomes**
Over 3 Million Properties for Sale. Free Listings
by Price, Size, Area.


**Chicago Condo Surveying**
Land & property surveying services Please call
today to find out more!

Ads by Google

AUGUST 7

## Dispute lawyer spends $1.5 million in Wrigleyville

*by Dan Fey*

James W. Hutchison bought a home at 3818 N. Wayne Ave. in Lake View for $1,502,500 from Tom Romano on July 10. Read more...


Mr. Huchison

Filed under: Lake View / Lakeview East

AUGUST 7

## IT consultant sells W. Barry condo for $435K

*by James Trotter*

Bradley Vesprini sold his three-bedroom, two bath condo at 728 W. Barry Ave. in Lake View for $435,000 to Gregory Heidemann on July 14. Read more...


728 W. Barry Ave.

Filed under: Lake View / Lakeview East

## Earlier Features

- D.C. nonprofit specialist spends $575K on N. Wayne (AUGUST 7)
- Rush Medical psychiatrist sells W. Schubert home (AUGUST 6)
- Realtor sells W. Lill condo for $445K (AUGUST 6)
- Minneapolis attorney sells W. Surf condo (AUGUST 6)
- Tax lawyer, Kent College professor spends $1.22M (AUGUST 6)
- NFL kicker turned real estate exec buys in Hartland Park II (AUGUST 5)
- Former TV producer sells N. Lake Shore condo (AUGUST 5)
- Real estate development exec spends $525K on N. Sheffield (AUGUST 4)
- UIC lab director buys N. Grace condo (AUGUST 4)
- William Blair principal sells on N. Dayton (AUGUST 4)
- W. Belmont condo draws $470.5K (AUGUST 1)
- Public relations exec spends $995K on N. Greenview (AUGUST 1)
- Realtor sells W. Grant condo for $750K (AUGUST 1)
- Minnesota landscaper sells W. Cornelia condo (JULY 31)
- Corporate attorney swaps N. Bosworth condo with personal trainer (JULY 31)

*For more stories, see the News Archives.*



| Home | News | Sold Homes | About Us |

## Advertise on BlockShopper.com

BlockShopper.com offers special advertising and sponsorship packages created to meet your local customer acquisition or brand-building needs.

If you're a **real estate professional**, **mortgage broker/lender**, **home builder** or local **small business** looking to cost-effectively reach potential buyers in a targeted market area, check out what we have to offer.

You can shop for Ads on our Advertising Store.

You will find it especially helpful to review our "How To" Select the Ad That's Right For You and our Special Guide to Advertising Pricing.

In **St. Louis and Chicago**, email eddie (@at) blockshopper (DOT)com.

### Subscribe

Get the latest Lincoln Park & Lake View home sales news, delivered straight to your inbox.

[                    ] Join

---

**Sending Message to Contactify Link Number:**

[                    ] Your Name

[                    ] Your Email Address

[                    ] Subject

[                    ] Message

Please enter the code: (can't read code?)

[                    ]

By sending a message through contactify you fully accept our terms and privacy policy. If you do not agree please do not continue.

[ I agree, send message ]    [ I don't agree ]

Powered by Contactify (get yours, it's free.)

Copyright © 2006–07 BlockShopper.com. **Advertise** | FAQ | About Us | Contact Us | Terms of Use



Home     News     Sold Homes     About Us

JULY 24

# Blockshopper.com founder buys Lincoln Park townhome

*by Jeremy Schnitker*

Blockshopper.com founder Brian Timpone and his wife, Patricia, bought a four-bedroom, 3.1 bath townhome in the Camden Passage complex at 2024 N. Racine for $730,000 from Robert and Annica Nolan on June 14.



2024 N. Racine

The Nolans paid $640,000 for Unit #D in Nov. 2005.

Mr. Timpone, 34, founded Blockshopper in the spring of 2006 with the intent of fusing real estate and community news. Blockshopper, which has sites in Chicago and St. Louis, is planning a nationwide rollout in 2007–08.

He is a co-founder and owner of 1871media.com, now uxCast.com, a content software solutions provider.

Blockshopper is just one of the many media ventures the south suburban native has been involved with over the years. He's the Publisher of a chain of legal newspapers, *The Madison County Record*, *The West Virginia Record* and *The Southeast Texas Record*. He also publishes LegalNewsline.com, a web-based newswire covering state supreme courts and state attorneys general.

He was a Content Executive with Zacks.com, and co-founder of ePrairie.com and GolfSpan.com.

The former television reporter has worked with major networks such as CBS, CNN, CNBC, NBC.

Mr. Timpone has dabbled in politics, serving as the spokesman for the Illinois General Assembly's Minority Leader, Lee Daniels. He's also managed media communication and strategy for a handful of statewide political campaigns.

He's a graduate of the University of Missouri School of Journalism and attended Marian Catholic High School in Chicago Heights.

He and Patty also own property at 1725 N. Dayton, Unit #A, for which they paid $519,000 in Feb. 2005.

There are 19 townhomes in Camden Passage, which was built in 1988.

**Address**: 2024 N. Racine, Unit #D
**Buyer**: Brian and Patricia Timpone
**Seller**: Robert and Annica Nolan
**Sale date**: June 14

## Property Location



## Subscribe

Get the latest Lincoln Park & Lake View home sales news, delivered straight to your inbox.

Join

Search Who Bought, Who Sold and For How Much Throughout
Lincoln Park and Lake View – for Free!!!

>> E-mail this article to a friend

Copyright © 2006–07 BlockShopper.com. **Advertise** | FAQ | About Us | Contact Us | Terms of Use

(/)





(http://www.adbrite.com/mb/commerce/purchase_form.php?opid=626765&afsid=

(/)



- **News (/news/)**
- **Cities (/cities/)**

- **Schools (/schools/)**
- **ZIPs (/zips/)**
- **Condos (/condos/)**
- **Taxes (/taxes/)**
- **For Sale (/listings/)**
- **Agents (/agents/)**
- **Foreclosures (/foreclosures/)**
- **New Construction (/construction/)**

Sign-in (/dashboard) / Join (/signup) BlockShopper today!

NEW: BlockShopper Unlisted (/unlisted)

AUG 11

## Civil litigator spends $377,500 in Ladue (/news/story/201911/)

by Angie Barrett

Jonathan K. Glassman and his wife, Yi Sun, bought a four-bedroom, 2.5 bath at 12 Burroughs Ln. in Ladue for $377,500 from Edmond E. Jacobitti and his wife, Barbara L. Hertenstein, on May 22. **Read more... (/news/story/201911/)**

AUG 8

## State senator selling 1920s-era abode in U City (/news/story/201875/)

by James Trotter

Missouri senator Joan Bray and her husband, Dr. Carl Hoagland, are selling their four-bedroom, two full and one half-bath home at 7120 Washington Ave. in University City for $559,700. **Read more... (/news/story/201875/)**



Senator Bray

AUG 6

## Cable company exec sells in West County (/news/story/201861/)

by Amy Anderson

Cash S. Hagen and his wife, Vanessa, sold their three-bedroom, two bath home at 329 Arbor Glen Dr. in Unincorporated West County for $382,500 to Mark Mcpeak and his wife, Susan, on May 6. **Read more... (/news/story/201861/)**



Mr. Hagen

AUG 5

## Electronics wholesaler gets $415K for Des Peres 5BD (/news/story/201787/)

by Amy Anderson

Jed M. Nadler and his wife, Carol, sold their five-bedroom, 3.5 bath home at 1434 Fairbrook Dr. in Des Peres for $415,000 to David Collins and his wife, Valerie, on May 22. **Read more... (/news/story/201787/)**



1434 Fairbrook Dr.

AUG 5

## Chesterfield 4BD draws $411K (/news/story/201786/)

by Amy Anderson

Lorenzo A. Squellati and his wife, Karen, sold their four-bedroom, 2.5 bath at 212 Vonbehren Dr. in Chesterfield for $411,000 to Jonathan L. White and his wife, Natalie, on May 15. **Read more... (/news/story/201786/)**



212 Vonbehren Dr.

AUG 4

## Radiation oncologist spends $410K in Frontenac (/news/story/201781/)

by Angie Barrett

Dr. Rajanish Singla bought a three-bedroom, two bath home at 1 Lynnbrook Rd. in Frontenac for $410,000 from Daniel J. Mosley and his wife, Elizabeth, on May 6. **Read more... (/news/story/201781/)**

AUG 4

## Former SLU swimmer buys in Chesterfield for $405K (/news/story/201780/)

by Angie Barrett

Luke Muran and his wife, Kristin, bought a four-bedroom, 3.5 bath home at 431 Strawbridge Dr. in Chesterfield for $405,000 from Robyn Gottlieb and her husband, Louis, on May 15. **Read more... (/news/story/201780/)**



Mr. Muran

AUG 4

## Lawyer sells in Ballwin for $392K (/news/story/201779/)

by Amy Anderson

Lawrence O. Willbrand, Jr. and Mary Lou Willbrand sold a four-bedroom, 3.5 bath home at 209 Pointe Lucerne Ct. in Ballwin for $392,000 to Craig A. Ransom and his wife, Amanda, on May 6. **Read more... (/news/story/201779/)**



209 Pointe Lucerne Ct.

AUG 1

## Horse racing handicapper, internist sell in Chesterfield for $457,500 (/news/story/201771/)

by Angie Barrett

Marc Skale and his wife, Dr. Christina Skale, sold their four-bedroom, 2.5 bath at 13650 River Valley Ct. in Chesterfield for $457,500 to Jeffrey Keech and his wife, Rachel, on May 20. **Read more... (/news/story/201771/)**

AUG 1

## Former payroll co. owner sells in Clarkson Valley for $431K (/news/story/201769/)

by Angie Barrett

Angela C. Smiley and her husband, Michael, sold their four-bedroom, 2.5 bath at 27 Forest Club Dr. in Clarkson Valley for $431,000 to Santa Ana Holdings LLC on May 1. **Read more... (/news/story/201769/)**

### Earlier Features

- Bryan Cave attorney buys classic University City 3BD (/news/story/201742/) (JUL 31)
- Indianapolis transplant selling Clarkson Valley 4BD (/news/story/201676/) (JUL 30)
- Labor officer lists 4BD in Black Jack for $599,900 (/news/story/201626/) (JUL 30)
- Cardiologist asking $599K in West County (/news/story/201675/) (JUL 30)
- Healthcare co. exec lists Clayton 4BD for $829K (/news/story/201707/) (JUL 29)
- Washington University professor lists University City home for $589,900 (/news/story/201703/) (JUL 29)
- Former Rams quarterbacks coach selling South County 5BD (/news/story/201649/) (JUL 28)
- Periodontist asking $539K for Town & Country 4BD (/news/story/201616/) (JUL 28)
- Washington University business manager selling in West County (/news/story/201618/) (JUL 25)
- Banking exec spends $475K in Town & Country (/news/story/201646/) (JUL 25)

### Sales Volume

■ 2008 ■ 2007 ■ 2006



Browse **2008** sales by month:

JAN (/months/2008/1/) | FEB (/months/2008/2/) | MAR (/months/2008/3/) | APR (/months/2008/4/) | MAY (/months/2008/5/) | JUN (/months/2008/6/) | JUL (/months/2008/7/) | AUG (/months/2008/8/)

Browse **2007** sales by month:

JAN (/months/2007/1/) | FEB (/months/2007/2/) | MAR (/months/2007/3/) | APR (/months/2007/4/) | MAY (/months/2007/5/) | JUN (/months/2007/6/) | JUL (/months/2007/7/) | AUG (/months/2007/8/) | SEP (/months/2007/9/) | OCT (/months/2007/10/) | NOV (/months/2007/11/) | DEC (/months/2007/12/)

Browse **2006** sales by month:

JAN (/months/2007/1/) | FEB (/months/2007/2/) | MAR (/months/2007/3/) | APR (/months/2007/4/) | MAY (/months/2007/5/) | JUN (/months/2007/6/) | JUL (/months/2007/7/) | AUG (/months/2007/8/) | SEP (/months/2007/9/) | OCT (/months/2007/10/) | NOV (/months/2007/11/) | DEC (/months/2007/12/)

Previous years: 2005 (/months/2005/) | 2004 (/months/2004/) | 2003 (/months/2003/) | 2002 (/months/2002/) | 2001 (/months/2001/) | 2000 (/months/2000/) | 1999 (/months/1999/) | 1998 (/months/1998/)

Search Buyers/Sellers: [_____] [Go]



DIRECTV

Our best offer of the year!
Get DIRECTV FREE for 4 months.
WHEN YOU SIGN UP FOR NFL SUNDAY
TICKET™ FOR $74.99/MO. FOR 4 MONTHS.

ORDER TODAY

Offer ends 1/30/08
New customers only.

LEGAL ►

**Your Ad Here (http://www.adbrite.com/mb/commerce/purchase_form.php?opid=626761&afsid=1)**

### Median Sale Price (All)

■ 2008 ■ 2007 ■ 2006



| City | YTD Median Price | YTD Home Sales |
|------|------|------|
| Ladue (/cities/ladue) | $ 714K | 194 |



| City | YTD Median Price | YTD Home Sales |
|---|---|---|
| **Town & Country (/cities/town_and_country)** | $ 683K | 154 |
| **Clayton (/cities/clayton)** | $ 511K | 302 |
| **Des Peres (/cities/des_peres)** | $ 356K | 143 |
| **Wildwood (/cities/wildwood)** | $ 355K | 707 |
| Other Cities | | |

## Foreclosures

🟩 2008 🟥 2007 🟧 2006



(/foreclosures)

| City | 2007 FCs | 2006 FCs | Trend |
|---|---|---|---|
| **Vinita Terrace (/foreclosures/years/2007/83)** | 5 | 1 | ▲ 400.0% |
| **Beverly Hills (/foreclosures/years/2007/8)** | 19 | 4 | ▲ 375.0% |
| **Edmundson (/foreclosures/years/2007/27)** | 4 | 1 | ▲ 300.0% |
| **Ladue (/foreclosures/years/2007/47)** | 12 | 3 | ▲ 300.0% |
| **Charlack (/foreclosures/years/2007/15)** | 3 | 1 | ▲ 200.0% |
| **See all cities... (/foreclosures)** | | | |

Copyright © 2008 **StLouis.BlockShopper.com (/)** . | **About/Contact Us (/about/)**

More BlockShopper cities: **Chicago (http://chicago.blockshopper.com/)** · **Las Vegas (http://lasvegas.blockshopper.com/)** · **South Florida (http://southflorida.blockshopper.com/)**



◀HOME

(/)

**5.25%** APY* **Checking**

(http://www.adbrite.com/mb/commerce/purchase_form.php?opid=626765&afsid=

(/)

YOU ARE HERE

BLOCKSHOPPER.COM

- **News (/news/)**
- **Cities (/cities/)**

- **Schools (/schools/)**
- **ZIPs (/zips/)**
- **Condos (/condos/)**
- **Taxes (/taxes/)**
- **For Sale (/listings/)**
- **Agents (/agents/)**
- **Foreclosures (/foreclosures/)**
- **New Construction (/construction/)**

**Sign-in (/dashboard)** / **Join (/signup)** BlockShopper today!

NEW: **BlockShopper Unlisted (/unlisted)**

AUGUST 8, 2007 8:25AM

# Blockshopper.com co-founder buys in Creve Coeur

*by Dan Fey, BlockShopper Staff*



102 Ladue Aire Dr.

Blockshopper.com co-founder Edward Weinhaus and his wife, Natalie, bought a five-bedroom, 3.5 bath at 102 Ladue Aire Dr. in Creve Coeur for $648,000 from Harold and Sheryll Gilbertson on June 20.

The Gilbertsons paid $499,000 for the 4,015 square foot home in April 2001. It was built in 1983.

Formerly a real estate investor, Mr. Weinhaus helped co-found **Blockshopper.com (http://chicago.blockshopper.com/welcome/)** with Chicago native Brian Timpone in March 2006. Mr. Weinhaus oversees operations for the St. Louis version of Blockshopper, which also offers a Chicago site and is planning a nationwide rollout in 2007-08.

The sites fuse local real estate data and community news.

Mr. Weinhaus previously was a principal with **Houston Buyers/Oak Willow Builders (http://www.oakwillowbuilders.com/about/)** , a real estate investment firm in Houston founded in 2003. He also founded **HoustonRealNews.com (http://www.houstonrealnews.com/)** , an advertiser-supported online real estate newspaper serving the Houston area.

A licensed realtor, Weinhaus has bought and sold 150 residential properties.

Prior to entering real estate, Weinhaus worked in an executive capacity with Columbus-based American Electric Power (AEP), Chicago venture consulting firm JumpStart Capital Partners, Boston Consulting Group and golf resort owner KSL Recreation.

He also advised on the start-up of GolfSpan.com and ePrairie.com.

Weinhaus began his business career as a derivatives trader for Swiss Bank-O'Connor in Chicago.

Mr. Weinhaus received his M.B.A. from the University of Chicago and is a graduate of the London School of Economics.

**Address:** **102 Ladue Aire Drive (/property/18P240383/102_ladue_aire_drive/)**
    **Buyer(s):** Edward A Weinhaus (Husband) and Natalie B Weinhaus (Wife)
    **Seller(s):** Harold K Gilbertson (Husband) and Sheryll Gilbertson (Wife)
    **Sale date:** 2007-06-20

*Have a story idea for us? Email the BlockShopper newsroom -- **news@blockshopper.com (mailto:news@blockshopper.com)** , Be sure to include the property address.*



Your Ad Here (http://www.adbrite.com/mb/commerce/purchase_form.php?opid=626761&afsid=1)

Copyright © 2008 StLouis.BlockShopper.com (/) . | About/Contact Us (/about/)



with Lucid Realty

| Home | News | Sold Homes | About Us |

APRIL 23

## New Jones Day lawyer spends $760K on Sheffield
*by James Trotter*

Jacob C. Tiedt and his wife, Erin Shencopp, bought a three-bedroom, 2.1 bath at 2048 N. Sheffield Ave. in Lincoln Park for $760,000 from the Cartus Financial Corporation on March 24.

Unit #1 is one of three in the building.

Tiedt is an associate in the Chicago office of international law firm Jones Day. He practices corporate law with a focus on capital markets transactions for the firm, which he joined earlier this year.

He previously spent three years as an attorney at Simpson, Thacher & Bartlett in New York City and two years with Baker & Hostetler in Columbus, Ohio.

He earned his J.D. from the University of Michigan (2003) and his bachelor's in economics and German from Michigan State University (2000).

**Address:** 2048 N. Sheffield Ave., Unit #1
**Buyer:** Jacob C. Tiedt and Erin Shencopp
**Seller:** Cartus Financial Corporation
**Sale date:** March 24



Mr. Tiedt



2048 N. Sheffield Ave.

Property Location



### Subscribe
Get the latest Lincoln Park & Lake View home sales news, delivered straight to your inbox.

[_____] Join

Search Who Bought, Who Sold and For How Much Throughout Chicago – for Free!!!

>> E–mail this article to a friend

Copyright © 2006–07 BlockShopper.com. **Advertise** | FAQ | About Us | Contact Us | Terms of Use



| Home | News | Sold Homes | About Us |

JULY 7

## Jones Day attorney spends $463K on Buckingham Pl.
*by Dan Fey*

Dan Malone Jr. bought a two-bedroom, two bath condo at 859 W. Buckingham Place in Lake View for $463,000 from Amy Bollinger on May 16.

Bollinger paid $452,500 for Unit #2 in Aug. 2005. There are four units in the building.

Malone is an associate in the Chicago office of global law firm Jones Day. He specializes in general corporate law, with a focus on private equity transactions, leveraged buyouts as well as mergers and acquisitions.

He earned his J.D. from Boston College (2006) and his bachelor's from Fordham University in New York City ('03).

**Address:** 859 W. Buckingham Place, Unit #2
**Buyer:** Dan Malone Jr.
**Seller:** Amy Bollinger
**Sale date:** May 16
>> E-mail this article to a friend



Mr. Malone



859 W. Buckingham Place

### Property Location



### Subscribe

Get the latest Lincoln Park & Lake View home sales news, delivered straight to your inbox.

[                    ] Join

Copyright © 2006–07 BlockShopper.com. **Advertise** | FAQ | About Us | Contact Us | Terms of Use

<u>**Exhibit B to Plaintiff Jones Day's Memorandum of Law in Support of Motion for Temporary Restraining Order**</u>

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JONES DAY,<br>a General Partnership, | ) | Case No.:_____ |
| | ) | |
| Plaintiff, | ) | Judge:_____ |
| | ) | |
| v. | ) | |
| | ) | |
| BlockShopper.com,<br>an unincorporated business entity, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Brian Timpone,<br>d/b/a Blockshopper.com,<br>an individual, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Edward Weinhaus,<br>d/b/a Blockshopper.com,<br>an individual, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>DECLARATION OF LEE ANN RUSSO, ESQ.</u>

I, Lee Ann Russo, Esq., declare:

1.      I provide this Declaration in support of the Motion for Temporary Restraining

Order in the above-captioned case.

2.      I am a partner in the law firm of Jones Day, a general partnership, and the Plaintiff in this matter.  I am the Administrative Partner for the Chicago Office of Jones Day.

3.      Jones Day traces its origins to the firm of Blandin & Rice, which was formed in Cleveland in 1893.

4.      Jones Day is one of the world's largest and most famous law firms, with more than 2,200 lawyers resident in 30 geographically diverse locations, worldwide.

5.      In the United States, Jones Day maintains offices in Atlanta, Georgia; Chicago, Illinois; Cleveland, Ohio; Columbus, Ohio; Dallas, Texas; Houston, Texas; Irvine, California; Los Angeles, California; New York, New York; Palo Alto, California; Pittsburgh, Pennsylvania; San Diego, California; San Francisco, California; and Washington, D.C.

6.      Jones Day's international practice also is significant and expanding.  In addition to representing a large number of its United States-based clients in international matters, Jones Day represents many major companies based in Europe, the Middle East, Asia, and Latin America.  Jones Day maintains a significant presence in the principal legal and regulatory capitals of the world.

7.      Jones Day has more than 400 lawyers in Europe.  In Europe, Jones Day maintains offices in Brussels, Belgium; Frankfurt, Germany; London, England; Madrid, Spain; Milan, Italy; Moscow, Russia; Munich, Germany; and Paris, France.

8.      Jones Day has more than 200 lawyers in Asia.  In Asia, Jones Day maintains offices in Beijing, China; Hong Kong, People's Republic of China; Shanghai, China; Singapore; Taipei, Taiwan; and Tokyo, Japan.  Jones Day also has offices in Sydney, Australia.

9.      Jones Day acts as principal outside counsel to, or provides significant legal representation for, more than half of the *Fortune* 500 companies, as well as to a wide variety of

other entities, including privately-held companies, financial institutions, investment firms, health care providers, retail chains, foundations, educational institutions and individuals.

10. Surveys repeatedly list Jones Day as one of the law firms most frequently engaged by domestic corporations, and many of the Firm's lawyers have achieved national recognition in their disciplines. Jones Day has been ranked first among litigation departments in the United States, and consistently ranks among the finest litigation departments in the United States.

11. In October 2005, Jones Day, for the third time in five years, topped the BTI Consulting Group's national Survey of Client Service Performance for Law Firms. Jones Day is one of only two law firms honored in 2005 as a member of the BTI Client Service Hall of Fame. This exclusive list includes law firms that clients rank in the BTI Client Service Top Ten for five years in a row.

12. Jones Day publicizes the quality of its services in various ways, including through publication of "white papers" on topics of interest to its clients and potential clients, through the professional and civic activities of its lawyers and through its website at "www.jonesday.com." Jones Day has owned and operated this website since September 30, 1997.

13. Jones Day is the owner of two United States Service Mark Registrations, Numbers 2,212,877 and 2,316,539, for the mark JONES DAY in connection with "Legal Services" (collectively the "Jones Day Marks"). Copies of these Registrations are attached as Exhibit 1 hereto.

14. Jones Day has not authorized Defendants to use any intellectual property owned by Jones Day, including the service mark JONES DAY.

15.    As a result of the high quality of legal services it has provided to its clients for more than a century, and its reputation as one of the premier law firms in the United States (and the world, Jones Day's name and the Jones Day service marks have become very valuable assets and are famous.

16.    Since at least as early as July 1983, Jones Day has used, and continues to use, the service mark JONES DAY to identify the legal services the Firm provides. The Firm has used the service mark JONES DAY in commerce in various forms since at least 1939. Jones Day has used the service mark Jones Day on its letterhead, on publications, on its website and in other ways (*e.g.,* on legal pads) in connection with its legal services throughout the world.

17.    Jones Day vigorously protects its rights in and to its service marks. For example, in March 2000, Jones Day sued a cybersquatter who had registered and was using website domain names that incorporated, inter alia, the service mark JONES DAY. Judge Nugent of the United States District Court for the Northern District of Ohio enjoined a cybersquatter from posting any content on websites at the domain names www.jonesdayreavis.com, www.jonesdayreavispogue.com, and www.jonesdayreavisandpogue.com or from registering any domain name that is identical or confusingly similar to any registered or common law service mark of Jones Day, including, but not limited to, the service mark JONES DAY.

18.    A similar result was reached in November, 2005. Jones Day sued an individual who had registered and was using www.jonesdays.com to disparage Jones Day. Judge Economus of the United States District Court for the Northern District of Ohio enjoined that individual from posting any content on the web site located at www.jonesdays.com, from registering any domain name that is identical or confusingly similar to any registered or common law service mark of Jones Day, including, but not limited to, the Jones Day Marks, and from

engaging in any conduct which dilutes or infringes Jones Day's rights in and to the Jones Day Marks. Jones Day also was awarded costs, statutory damages and attorneys' fees.

19.     In 2006, Jones Day again enforced its service marks against improper internet usage. Jones Day sued for trademark dilution in the United States District Court for the Northern District of Ohio (Case No. 1:06CV01174). The suit settled when the defendant agreed to refrain from referencing or using, directly or indirectly, "Jones Day" or the Jones Day Service Marks.

20.     Since 1983, Jones Day has spent millions of dollars marketing its services worldwide using both the word and stylized service mark JONES DAY.

21.     As a direct result of the time and effort promoting the service mark JONES DAY, Jones Day's clients, its competitors and the general public have come to associate high quality legal services provided by Jones Day by its use of the name and service mark JONES DAY in both word and stylized forms.

22.     Because of its size and worldwide presence, Jones Day enjoys the privilege of possessing one of the most recognized names of any law firm.

23.     In July 2008, Jones Day became aware that Defendants were using the Jones Day Marks on the web site located at www.blockshopper.com (the "Web Site"). In addition, Defendants were also linking to, and using materials from, the Jones Day web site located at www.jonesday.com. Jones Day has no business connection or association with Defendants.

24.     The Web Site disparages Jones Day and Jones Day's valuable intellectual property rights. The Web Site creates an association between intrusive activity and Jones Day. The continued presence of the Jones Day Marks on the Web Site, and links to the Jones Day web site on the Web Site, irreparably injures the firm's reputation with its clients, potential clients, law students and the greater community.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct

Executed on:  August 12, 2008

Lee Ann Russo, Esq.

**EXHIBIT 1 to the Declaration of Lee Ann Russo, Esq.**

Int. Cl.: 42

Prior U.S. Cls.: 100 and 101

**United States Patent and Trademark Office**

Reg. No. 2,212,877
Registered Dec. 22, 1998

## SERVICE MARK
### PRINCIPAL REGISTER

## JONES DAY

JONES, DAY, REAVIS & POGUE (PARTNER-SHIP)
NORTH POINT, 901 LAKESIDE AVENUE
CLEVELAND, OH 44114

    FOR: LEGAL SERVICES, IN CLASS 42 (U.S. CLS. 100 AND 101).
    FIRST USE 7-0-1983, FIRST USED IN ANOTHER FORM IN 1939; IN COMMERCE 7-0-1983, FIRST USED IN COMMERCE IN ANOTHER FORM IN 1939.

    SER. NO. 75-384,524, FILED 11-4-1997.

ROBERT C. CLARK JR., EXAMINING ATTORNEY

Int. Cl.: 42

Prior U.S. Cls.: 100 and 101

Reg. No. 2,316,539

## United States Patent and Trademark Office

Registered Feb. 8, 2000

### SERVICE MARK
### PRINCIPAL REGISTER



JONES, DAY, REAVIS & POGUE (PARTNER-
SHIP)
NORTH POINT
901 LAKESIDE AVENUE
CLEVELAND, OH 44114

FOR: LEGAL SERVICES, IN CLASS 42 (U.S.
CLS. 100 AND 101).

FIRST USE 3-0-1986; IN COMMERCE
3-0-1986.

OWNER OF U.S. REG. NO. 2,212,877.

SER. NO. 75–630,767, FILED 1–29–1999.

NANCY CLARKE, EXAMINING ATTORNEY

**Exhibit C to Plaintiff Jones Day's Memorandum of Law in Support of Motion for Temporary Restraining Order**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JONES DAY, | ) | Case No. 1:05 CV 2584 |
|    a general partnership. | ) | |
| | ) | Judge Peter C. Economus |
|          Plaintiff. | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PANKAJKUMAR PATEL, | ) | |
|    an individual, | ) | |
| | ) | |
|         Defendant. | ) | |

## ORDER

Before the Court is the Motion for Costs, Statutory Damages and Attorney's Fees filed by

Plaintiff, Jones Day.  The Court hereby finds as follows:

    1.       Jones Day filed a Complaint against Defendant Pankajkumar Patel ("Patel" or

"Defendant") on November 3, 2005 asserting service mark infringement, service mark dilution

and cyberpiracy in violation of 15 U.S.C. § 1051 et seq. arising out of Defendant's registration and

use of the internet domain name *www.jonesdays.com.*

    2.       On November 30, 2005, the matter came before the Court on a Preliminary

Injunction hearing consolidated with trial on the merits.  On November 30, 2005, this Court found

in favor of Jones Day and issued a permanent injunction against Defendant. By Order of the same date, this Court set a briefing schedule on the issue of costs and attorney's fees.

3.     The Court finds that on November 30, 2005, Jones Day established that it is the owner of registered service marks within the meaning of 15 U.S.C. § 1117(a) and that Defendant has infringed Jones Day's rights to the Jones Days service mark.

4.     The Court finds that on November 30, 2005, Jones Day has proven Defendant violated 15 U.S.C. § 1125(d)(1) by registering and using the internet domain name www.jonesdays.com.

5.     The Court hereby orders final judgment in favor of Jones Day on its claims of service mark infringement, service mark dilution and cyberpiracy pursuant to 15 U.S.C. § 1114, §§ 1125(a), (c) and (d).

6.     On December 14, 2005 Jones Day submitted a Motion for Costs, Statutory Damages and Attorney's Fees, Memorandum in Support and evidentiary supporting costs and fees incurred.

7.     By Court Order, Defendant Patel's opposition to Jones Day's Motion for Costs, Statutory Damages and Attorney's Fees was due by December 28, 2005.

8.     Defendant Patel did not oppose Jones Day's Motion for Costs, Statutory Damages and Attorney's Fees.

9.     In support of its Motion for Costs, Statutory Damages and Attorney's Fees, Jones Day submitted the requisite evidence to establish costs in the amount of $389.60.

10.    In support of its Motion for Costs. Statutory Damages and Attorney's Fees, Jones Day has demonstrated that it is entitled to statutory damages in the amount of $4,000.00 pursuant to 15 U.S.C. § 1117(d).

11.    The Court finds that Defendant's acts of service mark infringement, service mark dilution and cyberpiracy were willful within the meaning of 15 U.S.C. §§ 1117(a) and (b) entitling Jones Day to an award of Attorney's Fees.

12.    Pursuant to 15 U.S.C. § 1117, the Court hereby awards Jones Day costs, statutory damages and attorney's fees and hereby ORDERS Defendant to pay to Jones Day:

        a.    costs in the amount of $389.60; and

        b.    statutory damages in the amount of S4,000.00; and

        c.    attorney's fees in the amount of S89,004.00;

        d.    for a total of S93,393.60.

13.    Defendant is hereby ORDERED to take all steps necessary to comply with this Order immediately.

Dated this __10th__ day of January. 2006.

                         s/Peter C. Economus - 1/10/06

                         Peter C. Economus
                         United States District Court Judge

**Exhibit D to Plaintiff Jones Day's Memorandum of Law in Support of Motion for Temporary Restraining Order**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JONES DAY, | ) | Case No.:_____ |
| a General Partnership, | ) | |
| | ) | Judge:_____ |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BlockShopper.com, | ) | |
| an unincorporated business entity, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Brian Timpone, | ) | |
| d/b/a Blockshopper.com, | ) | |
| an individual, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Edward Weinhaus, | ) | |
| d/b/a Blockshopper.com, | ) | |
| an individual, | ) | |
| | ) | |
| Defendants. | ) | |

**<u>TEMPORARY RESTRAINING ORDER</u>**

IT IS HEREBY ORDERED AND DECREED AS FOLLOWS:

Before the Court is Plaintiff Jones Day's Motion for Temporary Restraining Order,

Memorandum in Support of that Motion and other supporting evidentiary materials.  Pursuant to

Rule 65(b) of the Federal Rules of Civil Procedure, after reviewing the submission of the Plaintiff,

the Court finds as follows:

1.      Jones Day has shown a substantial likelihood of success on the merits for its claims of Service Mark Dilution and Service Mark Infringement as alleged in the Complaint in this action.

2.      Absent an award of injunctive relief, Jones Day will suffer irreparable harm.

3.      An award of injunctive relief will not harm Defendant, and the public interest will be served by immediately enjoining Defendants as set forth in this Order.

4.      Jones Day need not post a bond for this Order to issue.

5.      As of the date of this Order, Defendants, and anyone acting in concert with or on Defendants' behalf, is immediately ENJOINED from:

a.      Using any reproduction or colorable imitation of the Service Mark JONES DAY, or any mark confusingly similar thereto;

b.      Engaging in any conduct that suggests or tends to suggest to the public that Defendants are in any manner, directly or indirectly, affiliated, connected or associated with Jones Day or that the Defendants' services, goods or commercial activities originate from or are sponsored or approved by Jones Day;

c.      engaging in any conduct which dilutes Jones Day's rights in and to the Service Mark JONES DAY;

d.      engaging in any conduct which disparages the reputation of Jones Day; and

e.      using any content from or linking to the Jones Day web site www.jonesday.com.

6.      Defendants are further ORDERED to immediately take all necessary steps to remove any content that originated from www.jonesday.com and to delete any link to www.jonesday.com from the web site www.blockshopper.com.

7.      This Temporary Restraining Order shall be effective immediately and shall continue in effect through and until August ___, 2008, at which time the Court will conduct a hearing to determine whether to enter an Order granting permanent injunctive relief.

IT IS SO ORDERED.


Dated this _____ day of August, 2008.        _____

United States District Court Judge

**<u>Exhibit E to Plaintiff Jones Day's Memorandum of Law in Support of Motion for Temporary Restraining Order</u>**

# JONES DAY

NORTH POINT • 901 LAKESIDE AVENUE • CLEVELAND, OHIO 44114-1190
TELEPHONE: 216-586-3939 • FACSIMILE: 216-579-0212

Direct Number: 216-586-7231
mwilkes@jonesday.com

JP302273:cmg
079978-083072
CL: 1632034v1

July 10, 2008

**VIA UPS**

Mr. Rob Biedermann
875 N. Michigan Avenue
Suite 3100
Chicago, Illinois 60610

Re:    www.blockshopper.com

Dear Mr. Biedermann:

You are undoubtedly aware of the law firm Jones Day, 901 Lakeside Avenue, Cleveland, Ohio 44114 ("Jones Day"). I am writing to you on Jones Day's behalf. The Firm is aware that in connection with your use of the above-referenced domain name, you have equipped that site with content and materials which are proprietary to Jones Day. Accordingly, your conduct has been referred to the undersigned for further disposition.

Be advised that Jones Day has the exclusive rights to the service marks JONES DAY and JONES DAY and Design to identify legal services. These rights are embodied, in part, in United States Service Mark Registration Nos. 2,212,877 and 2,316,539. Moreover, Jones Day is the exclusive owner and has rights to the content which appears on its web site located at www.jonesday.com. These rights are valid and have not been granted to you to use in any manner whatsoever. Be further advised that at no time have you received permission to link to the Jones Day web site.

You are infringing and diluting Jones Day's service mark rights. Continued unauthorized use of material from the Jones Day web site, including photographs of Jones Day associates, as well as the unauthorized links to the Jones Day web site is disparaging the reputation of Jones Day, its partners and employees. Your actions constitute, at a minimum, service mark infringement, service mark dilution, deceptive trade practices, fraudulent misrepresentation, palming off, reverse palming off, tortious interference with a valid business expectancy, invasion of privacy, false light publicity, and appropriation of likeness in violation of 15 U.S.C. § 1051 et seq., as well as state law.

Accordingly, on behalf of Jones Day, I demand that you immediately disable all links to Jones Day's web site, remove the photographs of Jones Day personnel from your web site and

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON

JONES DAY

Mr. Rob Biedermann
July 10, 2008
Page 2

prevent the posting of any content on your web site which is proprietary to Jones Day, or suggests that Jones Day is affiliated in any manner with you. The removal of the links and Jones Day's proprietary content, as well as a written statement of your compliance with the foregoing demands, should be sent to me within 24 hours of your receipt of this letter. Should you fail to comply with these demands, Jones Day will commence immediate litigation for damages and injunctive relief against you.

Your actions will be closely monitored. Should you have any questions, you may contact the undersigned.

Sincerely,

Meredith M. Wilkes

cc:    Robert P. Ducatman, Esq.

**Exhibit F to Plaintiff Jones Day's Memorandum of Law in Support of Motion for
Temporary Restraining Order**

# JONES DAY

NORTH POINT • 901 LAKESIDE AVENUE • CLEVELAND, OHIO 44114-1190
TELEPHONE: 216-586-3939 • FACSIMILE: 216-579-0212

Direct Number: 216-586-7231
mwilkes@jonesday.com

JP302273:cmg
079978-083072
CL: 1634131v1

July 17, 2008

**VIA UPS**

Mr. Rob Biedermann
875 N. Michigan Avenue
Suite 3100
Chicago, Illinois  60610

Re:    www.blockshopper.com

Dear Mr. Biedermann:

I write as a follow up to my letter to you dated July 10, 2008.  As of today, in connection with your use of the above-referenced domain name, you continue to use content and materials which are proprietary to Jones Day.

In light of the foregoing, I renew the demands set forth in my letter to you of July 10, 2008.  In particular, I demand that you immediately disable all links to Jones Day's web site, remove the photographs of Jones Day personnel from your web site and prevent the posting of any content on your web site which is proprietary to Jones Day, or suggests that Jones Day is affiliated with you or the blockshopper.com web site in any manner.  Your removal of the links, as well as the removal of Jones Day's proprietary content, must be complete within 24 hours of your receipt of this letter.

Your actions will be closely monitored.  This is the last written notice you will receive.  Should you have any questions, you may contact the undersigned.

Sincerely,

Meredith M. Wilkes

cc:    Robert P. Ducatman, Esq.

ATLANTA • BEIJING • BRUSSELS • CHICAGO • CLEVELAND • COLUMBUS • DALLAS • FRANKFURT • HONG KONG • HOUSTON
IRVINE • LONDON • LOS ANGELES • MADRID • MILAN • MOSCOW • MUNICH • NEW DELHI • NEW YORK • PARIS • PITTSBURGH
SAN DIEGO • SAN FRANCISCO • SHANGHAI • SILICON VALLEY • SINGAPORE • SYDNEY • TAIPEI • TOKYO • WASHINGTON