# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **JONES DAY,** | ) | |
| **a General Partnership,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 08 CV 4572** |
| | ) | **Judge John Darrah** |
| **BLOCKSHOPPER LLC, d/b/a** | ) | |
| **Blockshopper.com, a Missouri Limited** | ) | |
| **Liability Corporation, BRIAN TIMPONE,** | ) | |
| **an individual, and EDWARD WEINHAUS,** | ) | |
| **an individual,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS'
## MOTION TO DISMISS AMENDED COMPLAINT

Martin B. Carroll
Tracy Katz Muhl
Adam Hachikian
**FOX, HEFTER, SWIBEL, LEVIN & CARROLL, LLP**
200 West Madison Street, Suite 3000
Chicago, Illinois 60606
(312) 224-1200
(312) 224-1202 (fax)

**Table of Contents**

FACTS ............................................................................................................................ 2

I.   BLOCKSHOPPER PUBLISHES AN ONLINE RESIDENTIAL REAL ESTATE
     NEWSPAPER FOR CHICAGO AREA TRANSACTIONS. ............................ 2

II.  JONES DAY IS A LARGE LAW FIRM WITH REGISTERED SERVICE
     MARKS FOR "JONES DAY" IN CONNECTION WITH LEGAL SERVICES. ............. 5

III. BLOCKSHOPPER ACCURATELY REPORTS THE REAL ESTATE
     TRANSACTIONS OF TWO JONES DAY ASSOCIATES. ............................ 5

IV.  JONES DAY SUES FOR INFRINGEMENT AND DILUTION. ..................... 6

ARGUMENT ................................................................................................................... 7

I.   BLOCKSHOPPER'S USE OF "JONES DAY" IN THE HEADLINE OR TEXT
     OF A NEWS ARTICLE DOES NOT DILUTE THE JONES DAY MARKS'
     ABILITY TO IDENTIFY JONES DAY'S LEGAL SERVICES. ..................... 7

     A.  BlockShopper Is Expressly Excluded from the Anti-Dilution Act as a Form
         of News Reporting and News Commentary. ......................................... 8

     B.  BlockShopper's Use of "Jones Day" Is a Nominative Fair Use, Identifying
         Jones Day as Tiedt and Malone's Employer. ........................................ 10

     C.  It is Impossible for BlockShopper to Blur the JONES DAY Marks Where
         BlockShopper Uses BLOCKSHOPPER.COM, Not JONES DAY, as a
         Service Mark to Identify Itself as the Source of Its News. .................. 13

II.  BLOCKSHOPPER'S USE OF "JONES DAY" IN A NEWS ARTICLE DOES NOT
     CONFUSE READERS INTO BELIEVING THAT BLOCKSHOPPER LLC IS
     ASSOCIATED WITH JONES DAY ............................................................. 15

     A.  BlockShopper's Use of "Jones Day" Does Not Confuse Readers. ....... 16

         1.  Jones Day cannot plead traditional likelihood of confusion. ....... 16

         2.  Jones Day evidently pleads likelihood of confusion based only on the
             use of   its marks to identify accurately Tiedt and Malone's employer. ...... 17

         3.  Jones Day's has no trademark rights in its purported "evidence" of
             likelihood of confusion. ............................................................ 18

         4.  Cases with greater likelihood of confusion are resolved in defendants'
             favor. ........................................................................................ 18

     B.  BlockShopper's Use of "Jones Day" is a Nominative Fair Use. .......... 20

III. TIMPONE AND WEINHAUS HAVE NO PERSONAL LIABILITY FOR THEIR
     ACTS AS MEMBER OF BLOCKSHOPPER LLC. ...................................... 21

*AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 615 (7th Cir. 1993)..................... 15

*AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804-05 (7th Cir. 2002) ..................... 13

Anti-Dilution Act. 15 U.S.C. § 1125(c)(3) ............................................................................. 8

*Autozone, Inc. v. Strick*, 466 F. Supp. 2d 1034, 1038 (N.D. Ill. 2006)........................................ 16

*BidZirk, LLC v. Smith*, C.A. No. 6:06-109-HMH (4th Cir. Mar. 6, 2007) ................................. 9

*BidZirk, LLC v. Smith*, C.A. No. 6:06-109-HMH (D.S.C. Apr. 10, 2006) ................................. 9

*BidZirk, LLC v. Smith*, C.A. No. 6:06-109-HMH (D.S.C. April 10, 2006)................................. 9

*Caterpiller, Inc. v. Walt Disney Co.*, 287 F. Supp. 2d 913 (C.D. Ill. 2003) ............................... 20

*Dangler v. Imperial Mach. Co.*, 11 F.2d 945 (7th Cir. 1926)..................................................... 23

*FM Industries, Inc. v. Citicorp Credit Services, Inc.*, No. 07 C 1794, 2007 WL 4335264 (N.D. Ill. Dec. 5, 2007) ............................................................................................................... 24

*Forrest v. Univ. Savs. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2000) ......................................... 2

*Illinois High School Ass'n v. GTE Vantage, Inc.*, 99 F.3d 244, 247 (7th Cir. 1996) .................. 14

*Internet Trademark Suits and the Demise of "Trademark Use"*, 39 U.C. Davis L. Rev. 371, 413 (2006)..................................................................................................................................... 18

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 379 (7th Cir. 2008) ..................................................................................................................................... 22

*Just Add Water, Inc. v. Everything But Water, Inc.*, No. Civ. 3:04-CV-2085-H, 2005 WL 1206874, *4 (N.D. Tex. May 18, 2005)................................................................................ 16

*Knight-McConnell v. Cummins*, No. 03 Civ. 5035 (NRB), 2004 WL 1713824, *1 (S.D.N.Y. Jul. 29, 2004) .................................................................................................... 19

*Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005)......................................................... 21

Lanham Act, 15 U.S.C. §§ 1114 and 1125(a)........................................................ 6,7,8,10,13,15

*Le Book Publ'g, Inc. v. Black Book Photography, Inc.*, 418 F. Supp. 3d 305, 313 (S.D.N.Y. 2005) ................................................................................................................. 14,20

McCarthy on Trademarks and Unfair Competition § 24:127 ....................................................... 8

*Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 414 (S.D.N.Y. 2006) ..................................................................................................................................... 21

*News Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302 (9th Cir. 1992).......... 14

*Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 805 (9th Cir. 2002) ........................................... 14

*Segal v. Geisha NYC, LLC*, 517 F.3d 501 (7th Cir. 2008) ......................................................... 16

*The Drink Group, Inc. v. Gulfstream Communications, Inc.*, 7 F. Supp. 2d 1009 (N.D. Ill. 1998)...................................................................................................................... 23

The Illinois Reporter's Privilege statute, 735 ILCS 5/8-902(b) ................................................... 9

*Ticketmaster Corp. v. Tickets.com, Inc.*, No. CV 997654 HLHVBKX, 2003 WL 21406289, *5 (C.D. Cal. Mar. 7, 2003) .................................................................................................. 18

*Trans Union, LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1038 (N.D. Ill. 2001).......... 16

*Ty, Inc. v. Publ'ns Int'l, Ltd.*, No. 99 C 5565, 2005 WL 464688, *5 (N.D. Ill. Feb. 25, 2005) ... 20

*Universal City Studios, Inc. v. Ideal Publishing, Corp.*, No. 77 Civ. 4508, 1977 WL 25614, *1 (S.D.N.Y. Sept. 29, 1977)................................................................................................ 19

*Wham-O, Inc. v. Paramount Pictures Corp.*, 286 F. Supp. 2d 1254 (N.D. Cal. 2003) ............... 20

*Yankee Publ'g Inc. v. News Am. Publ'g Inc.*, 809 F. Supp. 267, 276 (S.D.N.Y. 1992) .............. 11

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **JONES DAY,** | ) | |
| **a General Partnership,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vi.** | ) | **Case No. 08 CV 4572** |
| | ) | **Judge John Darrah** |
| **BLOCKSHOPPER LLC, d/b/a** | ) | |
| **Blockshopper.com, a Missouri Limited** | ) | |
| **Liability Corporation, BRIAN TIMPONE,** | ) | |
| **an individual, and EDWARD WEINHAUS,** | ) | |
| **an individual,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANTS'
## MOTION TO DISMISS AMENDED COMPLAINT

The relief sought by Jones Day in its Amended Complaint would radically overturn the long established and ubiquitous Internet practice of websites linking to other websites and prevent news organizations from referencing companies in their stories by name for fear of being sued for alleged service mark infringement. Jones Day is apparently upset that Defendant BlockShopper LLC ("BlockShopper"), owner of residential real estate news website www.blockshopper.com, accurately reported upon the transactions of two Jones Day associate attorneys, Jacob Tiedt and Dan Malone, Jr. Fortunately for BlockShopper and other news media, Jones Day can no more stop the accurate news reports on www.blockshopper.com than it can stop articles in *The Chicago Tribune*, www.cnn.com, or any other print or electronic news source, large or small. To find otherwise turns trade and service mark law on its head, allowing mark holders to censor the news and other forms of First Amendment expression. The federal Lanham Act, state, and common laws relied upon by Plaintiff do no such thing. They accord

Plaintiff only the limited right to prevent consumer confusion and dilution of its marks. Nothing of the sort occurred here.

Plaintiff's Amended Complaint and exhibits demonstrate, on their face, that BlockShopper reported on dozens residential real estate transactions involving professionals employed by a multitude of employers – not just Jones Day. (Am. Compl., Exs. C, D.) Thus, it is impossible to believe Jones Day's conclusory allegations that any consumer would confuse or associate Jones Day with BlockShopper, or that the distinctiveness of the JONES DAY marks in identifying legal services would be blurred. Jones Day has pled itself out of court, and all of its claims should be dismissed.

## STANDARD ON MOTION TO DISMISS

BlockShopper moves to dismiss Plaintiff's Amended Complaint under Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." On such a motion, "taking all facts pleaded in the complaint as true and construing all inferences in plaintiff's favor," this Court must "review the complaint and all exhibits attached to the complaint." *Forrest v. Univ. Savs. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2000) (citation omitted). "Where an exhibit and the complaint conflict, the exhibit typically controls." *Id.* This Court "is not bound by" Jones Day's "characterization of an exhibit and may independently examine and form its own opinions about the" attached web pages. *Id.* Here, the Amended Complaint and exhibits plainly show Jones Day provided nothing but conclusory allegations of implausible trademark violations, contradicted by its own exhibits. Thus, this Court must dismiss the Amended Complaint in full.

## FACTS

I.      **BLOCKSHOPPER PUBLISHES AN ONLINE RESIDENTIAL REAL ESTATE NEWSPAPER FOR CHICAGO AREA TRANSACTIONS.**

Defendant BlockShopper LLC is a Missouri Limited Liability Corporation with offices in Chicago, Illinois.  (Am. Compl. ¶ 3.)  Individual Defendants Brian Timpone ("Timpone"), an Illinois resident, and Edward Weinhaus ("Weinhaus"), a Missouri resident, are members of BlockShopper LLC.  (Am. Compl. ¶¶ 4-5, 20-21; Ex. C, pp. 7, 12.)

BlockShopper "gather[s] and publish[es] details" of "residential real estate transactions" in Chicago, St. Louis, South Florida, and Las Vegas.  (Am. Compl. ¶ 22, Ex. C.)  Attached to Plaintiff's Amended Complaint as Exhibit C and expressly "incorporated herein by reference" are "true and correct screenshots" from Defendant's web site.  (Am. Compl. ¶ 20.)

The BlockShopper home page ([www.blockshopper.com/welcome](www.blockshopper.com/welcome))[1] opens to a large masthead banner (2" by 7") with its service mark "BlockShopper.com," and tag line "Real Intelligence on Local Real Estate."  (Am. Compl. Ex. C, p. 1.)    Underneath are four links to geographic areas with details on launch date and neighborhoods (e.g. "Chicago.  Launched in May 2006 BlockShopper Chicago covers Chicago's Lincoln Park and Lake View neighborhoods.")  *Id.*  Finally, the bottom of the page asks "What's BlockShopper?":

> As featured in the Chicago Tribune, BlockShopper is a local real estate news and market data service for current and aspiring homeowners.  Read our daily news stories and learn who's buying and who's selling in your neighborhood.  Or put prices in perspective with out comprehensive home sales database.  BlockShopper is the ultimate research tool for home buyers, sellers and investors.

*Id.*

The Chicago BlockShopper.com page ([chicago.blockshopper.com](chicago.blockshopper.com)) leads with a smaller, "Chicago BlockShopper.com" header (1" by 2.25"), followed by tabs for "Home," "News," "Sold Homes," and "About Us."  (Am. Compl. Ex. C, pp. 2-4.)  Under the "Home" tab, readers see news stories on the left two thirds of the page, while the right third contains a "Chicago Real Estate" search tool, a window to Subscribe to "home sales news," and menus to search news

---

[1] All cited web addresses are from the upper right hand corner of Plaintiff's Exhibits.

stories by Neighborhood, Street, Price, or Sale Date.  *Id.*  There are also three advertising sections on the page – one right of the masthead and two in between news stories.  *Id.*

Twenty-three news stories dated between July 31 and August 11 are featured on the page - eight brief article excerpts, followed by fifteen headlines, followed by "News Archives" for more stories.  *Id.*  The excerpts have a headline (e.g. "DuPont account manager sells for $438K on N. Halsted"); date; byline; a few lines of text; photograph of the property, seller, or buyer; "filed under" line; and "read more…" link to the full story.  *Id.*  The fifteen headlines (e.g. "William Blair principal sells on N. Dayton") provide only a story date.  *Id.*  The twenty-three total stories name seven different employers – Northwestern Memorial, DuPont, Rush Medical, Kent College, the NFL, UIC, and William Blair – and reference a variety of professions, including investments, law, medicine, sports, real estate, nonprofit work, and public relations. (Am. Compl. Ex. C., pp. 2-4; ¶ 24.)  Under the "About Us" tab (chicago.blockshopper.com/about us/advertise.asp), there is information about advertising on BlockShopper.com, a contact form, and another Subscribe box to request "home sales news."  (Am. Compl. Ex. C., pp. 5-6; ¶ 23.)

Plaintiff's screenshot under the "News" tab shows a July 24 article with the headline "BlockShopper.com founder buys Lincoln Park Townhome."  (Am. Compl. Ex. C, pp. 7-8.)  The story reports that Defendant Timpone purchased a Lincoln Park townhome and further recounts that Timpone "founded BlockShopper in the spring of 2006 with the intent of fusing real estate and community news," that "BlockShopper is just one of [Timpone's] many media ventures," and that Timpone is the publisher of legal newspapers, *The Madison County Record*, *The West Virginia Record*, and *The Southeast Texas Record*.  *Id.*  The article also states that Timpone publishes "LegalNewsline.com," was a Content Executive with Zacks.com, co-founded ePraire.com and GolfSpan.com, and was a television reporter with CBS, CNN, CNBC, NBC.  *Id.*

## II.    JONES DAY IS A LARGE LAW FIRM WITH REGISTERED SERVICE MARKS FOR "JONES DAY" IN CONNECTION WITH LEGAL SERVICES.

Jones Day is a large law firm with a Chicago office.  (Am. Compl. ¶ 2.)  In December 1998 and February 2000, respectively, Jones Day received federal registrations for the service marks JONES DAY (text) and JONES DAY (text and design) for use in connection with "legal services."  (Am. Compl. ¶ 14, Exs. A-B.)  "Jones Day" is both Plaintiff's business or trade name and its service mark.  (Am. Compl. ¶ 2, caption, signature block.)

## III.    BLOCKSHOPPER ACCURATELY REPORTS THE REAL ESTATE TRANSACTIONS OF TWO JONES DAY ASSOCIATES.

On April 23, 2008, BlockShopper accurately reported that Jones Day associate Jacob Tiedt ("Tiedt") purchased a residence.  (Am. Compl. ¶¶ 25-26, 29; Ex. D, p. 3.)  The article, titled "New Jones Day lawyer spends $760K on Sheffield," provides facts about the property sale, Tiedt's employment with Jones Day, his areas of legal practice, Tiedt's prior legal jobs with Simpson, Thatcher & Bartlett and Baker & Hoestetler, and Tiedt's educational degrees.  *Id.*  Alongside the story are two small (1.5" by 2") photographs of Tiedt and his new residence.  *Id.*  In one instance, Tiedt's name is underlined, indicating a hyperlink which, when clicked, takes the reader to Tiedt's biography page (www.jonesday.com/jtiedt/) within the Jones Day site.  *Id.*

Similarly, on July 7, 2008, BlockShopper accurately reported that Jones Day associate Dan Malone, Jr. ("Malone") purchased a condo.  (Am. Compl. ¶¶ 25-26, 29; Ex. D, p. 1.)  That article, headlined "Jones Day attorney spends $463K on Buckingham Place," provided similar facts on the purchase, Malone's employment with Jones Day, his areas of legal practice, and his educational degrees.  *Id.*  Alongside the story is a small (1.5" by 2") photograph of Malone and a smaller (1.5" by 1") photograph of his condo.  *Id.*  As with Tiedt's article, Malone's name is underlined in one place, and it contains a hyperlink to Malone's profile page

5

([www.jonesday.com/dpmalone/](www.jonesday.com/dpmalone/)). *Id.* Jones Day does not allege that either story's informational content is in any way false or inaccurate.

**IV.     JONES DAY SUES FOR INFRINGEMENT AND DILUTION.**

On August 12, 2008, Jones Day filed its Complaint against "BlockShopper.com," Timpone, and Weinhaus. (Compl. ¶¶ 3-5.) On August 28, Jones Day filed an Amended Complaint replacing "BlockShopper.com" with BlockShopper LLC, but still naming Timpone and Weinhaus as Defendants, despite its own allegation that they are members of BlockShopper LLC. (Am. Compl. ¶¶ 3-5, 21.)

The Amended Complaint contains five counts. Four of the five counts (Counts I, II, IV, and V) claim that BlockShopper's unauthorized use of the JONES DAY marks is likely to confuse consumers into believing that BlockShopper's real estate news site somehow originates from, is sponsored by, or is affiliated with Jones Day. (Am. Compl. ¶¶ 38, 44, 61, 67.) Specifically, Count I is for service mark infringement under the federal Lanham Act, 15 U.S.C. §§ 1114 and 1125(a); Count II is for false designation of origin under the Lanham Act, 15 U.S.C. §1125(a); Count IV is for unfair business practices under Illinois's Uniform Deceptive Trade Practices Act; and Count V is for common law infringement and unfair competition. Count III is alleged under the federal Lanham Act for service mark dilution, 15 U.S.C. §1125(c). That count rests upon the assertion that BlockShopper's use of the JONES DAY marks within the real estate news articles will somehow dilute or "blur" the JONES DAY marks, undermining the JONES DAY marks' ability to identify Jones Day's legal services.

All five claims, on the face of the Amended Complaint and the attached, incorporated exhibits, fail to state a claim upon which relief can be granted. Despite Jones Day's conclusory allegations, it is impossible to believe that any consumer reading BlockShopper's real estate

news site will be confused, or that the ability of the JONES DAY marks to identify Jones Day's legal services will be diluted.  Accordingly, all claims must be dismissed.

## ARGUMENT

**I.  BLOCKSHOPPER'S USE OF "JONES DAY" IN THE HEADLINE OR TEXT OF A NEWS ARTICLE DOES NOT DILUTE THE JONES DAY MARKS' ABILITY TO IDENTIFY JONES DAY'S LEGAL SERVICES.**

A proper claim for dilution requires Jones Day to plead that Jones Day and BlockShopper both use the same or similar marks to identify themselves as the sources of two different goods or services.  Jones Day has not even tried to plead this allegation, nor could it where BlockShopper plainly uses BLOCKSHOPPER.COM to identify itself as the source of news services, and only uses the words "Jones Day" in a non-trademark sense to identify Jones Day as Tiedt and Malone's employer.  (Am. Compl. Ex. D.)   The federal Anti-Dilution Act, a sub-section of the Lanham Act, provides:

> …the owner of a famous mark… shall be entitled to an injunction against another person who… use[s]… a mark or trade name… that is likely to cause dilution by blurring or dilution by tarnishment of the famous mark…

15 U.S.C. §1125(c)(1).  The statute defines both forms of dilution:

> (B)... "[D]ilution by bluring" is association arising from the similarity between a mark or trade name and a famous mark that impairs the distinctiveness of the famous mark.[2]

> (C)… "[D]ilution by tarnishment" is association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.

15 U.S.C. §1125(c)(2).  In addition, the statute also excludes uses from its coverage:

---

[2] The statute provides six non-exclusive factors for blurring: "degree of similarity between [defendant's] mark… and the famous mark," "degree of… distinctiveness of the famous mark," "extent… [of] substantially exclusive use of the [famous] mark," "degree of recognition of the famous mark," "inten[tion] to create an association with the famous mark,"  and "any actual association… [with] the famous mark."

(3) Exclusions.  **The following shall not be actionable as dilution by blurring or dilution by tarnishment under this subsection:**
  (A) **Any fair use, including a nominative or descriptive fair use… of a famous mark by another person other than as a designation of source for the person's own goods or services**, including use in connection with—
    (i)  advertising or promotion that permits consumers to compare goods or services; or
    (ii) identifying and parodying, criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner.
  (B) **All forms of news reporting and news commentary.**
  (C) Any noncommercial use of a mark.

15 U.S.C. § 1125(c)(3) (emphasis added).  Jones Day has not even attempted to plead the requisite allegation that BlockShopper has a similar mark to Jones Day.  Jones Day has failed to state a claim and, even if it had, its claim would be excluded under both the news and nominative fair use exceptions.

### A.    BlockShopper Is Expressly Excluded from the Anti-Dilution Act as a Form of News Reporting and News Commentary.

"All forms of news reporting and news commentary" are completely excluded from the Anti-Dilution Act.  15 U.S.C. § 1125(c)(3).  This defense was added "at the behest of the National Association of Broadcasters, which felt that the noncommercial use exemption might not be sufficient to exempt news broadcasts" as they may be considered commercial in nature.  4 McCarthy on Trademarks and Unfair Competition ("McCarthy") § 24:127 citing 50 P.T.C.J. 711 (Oct. 19, 1995).  The exclusion insured the press that the "federal dilution law would not be used as a weapon against media use of trademarks in the context of conveying news..." McCarthy § 24:127.  As a result, the news and noncommercial use exclusions "partially duplicate" or overlap the fair use exemption, "but were retained… to satisfy critics who argued that the federal antidilution law could be used to stifle the use of famous marks in free speech and expression." McCarthy §§ 24:123, 127-28.

The Anti-Dilution Act does not define news reporting and news commentary, likely because it "seems self-explanatory." McCarthy § 24:127. Over the years, only one case has raised and discussed its application – *BidZirk, LLC v. Smith*, C.A. No. 6:06-109-HMH (D.S.C. April 10, 2006).[3] In that case, Defendant Steve Smith, a blogger, posted a four-part article called "Special Report: You Gotta Be Berserk to Use an eBay Listing Company! The Whole Story," at www.jackwhispers.blogspot.com. *BidZirk*, 2007 WL 3119445, *1 (D.S.C. Oct. 22, 2007). BidZirk sued and moved for a preliminary injunction on its Lanham Act claims, asking the court to enjoin Smith from using BidZirk's service marks and links to BidZirk's site in his article on his blog. *Id.*

Thereafter, the magistrate judge denied the injunction, finding specifically that Smith's blog was covered by the "news reporting and news commentary" exclusion and, therefore, BidZirk was not likely to succeed on the merits. *BidZirk, LLC v. Smith*, C.A. No. 6:06-109-HMH (D.S.C. Mar. 21, 2006). The district court judge agreed, adopting the finding on the news exclusion. *BidZirk, LLC v. Smith*, C.A. No. 6:06-109-HMH (D.S.C. Apr. 10, 2006). BidZirk appealed to the Fourth Circuit, which affirmed without substantive discussion. *BidZirk, LLC v. Smith*, C.A. No. 6:06-109-HMH (4th Cir. Mar. 6, 2007).

To determine whether a blogger could apply the news exclusion, the *BidZirk* court considered statutory reporter's privileges (South Carolina's had no definition) and then applied a functional analysis, which looked at content, rather than format, to see whether the article conveyed information to the public. *BidZirk*, 2007 WL 3119445, *6-7. The Illinois Reporter's Privilege statute, 735 ILCS 5/8-902(b), defines "news medium" as:

> any news paper or other periodical published at regular intervals whether in print or electronic format and having a general circulation; a news service whether in print or electronic format…

---

[3] All unpublished opinions are attached hereto as Group Exhibit A.

Following the BidZirk court's analysis and its reliance on statutory reporter's privileges, BlockShopper's web page, on its face, is clearly news reporting and commentary. BlockShopper obviously publishes a newspaper or periodical in electronic format with stories published at regular intervals, as evidenced by the articles' range of dates, and available in general circulation to any Internet user supplying the address www.blockshopper.com, as well as via email circulation to anyone providing an email address in the Subscribe window. (Am. Compl. Ex. C.) Each story functions to provide factual information from public records of residential real estate sales, supplemented by researched information with respect to the parties to the sale. *Id.* Further establishing the fact that BlockShopper is a news organization, Jones Day does not and cannot contend that the factual content in BlockShopper's articles is false or inaccurate.

If the *BidZirk* blogger's account of one personal experience with BidZirk sufficiently functioned as news, it is impossible to believe that BlockShopper's site with its thousands of informational articles does not qualify as news reporting. BlockShopper is simply reporting publically available news. It unquestionably falls within the news reporting and commentary exclusion, regardless of whether one considers the speech "commercial" or "non-commercial" and, thus, Jones Day's dilution claim must be dismissed.

B. **BlockShopper's Use of "Jones Day" Is a Nominative Fair Use, Identifying Jones Day as Tiedt and Malone's Employer.**

Even if Jones Day's deficient dilution claim was not excluded as news reporting, the partially overlapping "fair use" exclusion defeats the claim. 15 U.S.C. § 1125(c)(3)(A). The fair use exclusion effectively balances the First Amendment's protection of free speech with a company's desire to protect its trade or service mark. The fair use exclusion explicitly includes

"nominative or descriptive fair use… of a famous mark" including use for "commenting upon the famous mark owner or… [its] services…" *Id.* As explained by one court:

> [W]hen unauthorized use of another's mark is part of a communicative message and not a source identifier, the First Amendment is implicated in opposition to the trademark right…. [W]here the unauthorized use of a trademark is for expressive purposes of … **news reporting**, and commentary, the law requires a balancing of the rights of the trademark owner against the interests of free speech.

*Yankee Publ'g Inc. v. News Am. Publ'g Inc.*, 809 F. Supp. 267, 276 (S.D.N.Y. 1992) (emphasis added). The fair use exception has developed to address that tension between the First Amendment and protecting trademark rights.

The exception has its origin in *News Kids on the Block v. News America Publishing, Inc.*, 971 F.2d 302 (9th Cir. 1992). In that case, defendant newspapers *USA Today* and *The Star* featured stories and pictures of the New Kids musical group, plus a 900 number poll asking: "Which one of the New Kids is the most popular?" and "Now which kid is the sexiest?" *Id.* at 304. The New Kids sued for federal and state trademark infringement for unauthorized use of their mark, and the district court granted summary judgment for the newspaper.

The Ninth Circuit affirmed, and set out the "nominative fair use" defense, explaining that "it is often virtually impossible to refer to a particular product for purposes of… point of reference… without using the mark." *Id.* at 306. Expanding on this point, the court noted that a "reference to a large automobile manufacturer based in Michigan would not differentiate between the Big Three," nor would "a large Japanese manufacturer of home electronics" name one entity. *Id.* at 307. Hence, "much useful social and commercial discourse would be all but impossible if speakers were under threat of an infringement suit every time they made reference to a person, company or product by using its trademark." *Id.*

Indeed, the Ninth Circuit explained that instances like these are "best understood as involving a non-trademark use of a mark – a use to which the infringement laws simply do not

apply." *Id.* Accordingly, the court set out three requirements for a nominative fair use: (1) "the product or service in question must be one not readily identifiable without the use of the trademark," (2) "only so much of the mark… may be used as is reasonably necessary to identify the product or service," and (3) "the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder." *Id.* at 308. The newspaper polls, with their stories and pictures, met this standard and, therefore, were not infringing. *Id.*

The Anti-Dilution Act adopted this concept from the federal common law and integrated it as an excluded use. BlockShopper's use obviously qualifies. On the first requirement, it is impossible to identify Jones Day as Tiedt and Malone's employer without using the JONES DAY mark. "Jones Day" is both the firm's trade name and its service mark, and using a general description like "large international law firm with a Chicago office" would not suffice. Second, BlockShopper used only as much of the JONES DAY mark as reasonably necessary (i.e. the words alone) and did not adopt the specialized font and design of JONES DAY's registered mark. Third, BlockShopper did nothing in conjunction with the mark that would suggest sponsorship or endorsement by Jones Day. The use of pictures, facts about the attorneys, and deep-links certainly is not enough, as comparable acts in the *New Kids* case did not constitute suggestion of endorsement.[4] *Id.* at 309 (*The Star* 900 number poll, which included an article and pictures, "says nothing that expressly or by fair implication connotes endorsement or joint sponsorship on the part of the New Kids").

Thus, BlockShopper made a statutorily exempted nominative fair use of the service mark JONES DAY, which mirrors the trade name Jones Day, as needed for its news story. The Anti-Dilution Act excludes such claims, and this Court accordingly must dismiss.

---

[4] These factors discussed in greater detail in Argument II.A.3, as relates to the likelihood of confusion based claims. Those arguments are incorporated herein by reference as further demonstration that there is no suggestion of sponsorship or endorsement.

**C.    It is Impossible for BlockShopper to Blur the JONES DAY Marks Where BlockShopper Uses BLOCKSHOPPER.COM, Not JONES DAY, as a Service Mark to Identify Itself as the Source of Its News.**

Jones Day also claims that BlockShopper's unauthorized use of the JONES DAY marks is "blurring" the distinctiveness of the JONES DAY marks and, therefore, diluting those marks. (Am. Compl. ¶¶ 34, 55-57.)[5] These allegations are conclusory and obviously false. A blurring by dilution claim is firmly rooted in the "similarity between a [defendant's] mark or trade name and a famous mark that impairs the distinctiveness of the famous mark," but BlockShopper's mark, BLOCKSHOPPER.COM, and the JONES DAY marks are wholly dissimilar. 15 U.S.C. § 1125(c)(2)(B); (Am. Compl. Exs. B, C.) Plus, "blurring" only occurs where plaintiff's:

> mark[s] [are] used by other persons to identify *other sources* on a plethora of *different goods and services*. The unique and distinctive significance of the mark to identify and distinguish *one source* may be diluted and weakened. But no confusion as to source, sponsorship, affiliation or connection has occurred.

*AM Gen. Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804-05 (7th Cir. 2002) citing McCarthy § 24:68 (emphasis added). Jones Day simply cannot allege that BlockShopper is using JONES DAY to identify itself, BlockShopper, as an "other source," where BlockShopper only uses the words "Jones Day" to identify Jones Day as Tiedt and Malone's employer.

Recognizing this distinction, the Anti-Dilution Act only protects against:

> the erosion of the distinctiveness and prestige of a trademark caused by the sale of *other goods and services* under the *same name* (for example, the use of "Tiffany & Co." as the name of a hamburger stand, or simply a proliferation of borrowings that, while not degrading the original seller's mark, are so numerous as to deprive the mark of its distinctiveness and hence impact)

---

[5] Plaintiff's Amended Complaint alleges only dilution by "blurring" and never mentions "tarnishment." 15 U.S.C. § 1125(c)(2)(C). That is not surprising, as tarnishment occurs where a mark is "linked to a product of shoddy quality, or is portrayed in an unwholesome or unsavory context..." *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 507 (2nd Cir. 1996). Nowhere has Plaintiff alleged that BlockShopper's web site is shoddy, unwholesome, or unsavory, nor could it, in light of the truth of the articles and the exhibits to the Amended Complaint.

*Illinois High School Ass'n v. GTE Vantage, Inc.¸* 99 F.3d 244, 247 (7th Cir. 1996) (emphasis added). *See also Playboy Enters., Inc. v. Welles*, 279 F.3d 796, 805 (9th Cir. 2002) (providing example of a "Rolls Royce" mark on cocoa).

Picking up on *ISHA*'s example, to dilute the JONES DAY marks, BlockShopper would have to use JONES DAY or something similar (i.e. not BLOCKSHOPPER.COM) as the source identifying service mark of BlockShopper's news services. Jones Day's Amended Complaint and exhibits show that nothing of the sort occurred. BLOCKSHOPPER.COM and JONES DAY are completely dissimilar marks. (Am. Compl. Exs. C, D.) Further, BlockShopper is using BLOCKSHOPPER.COM, not JONES DAY, on BlockShopper, LLC's different, non-legal services. *See Le Book Publ'g, Inc. v. Black Book Photography, Inc.*, 418 F. Supp. 3d 305, 313 (S.D.N.Y. 2005) (granting motion to dismiss dilution claim where defendant used its own mark, not plaintiff's mark, on its goods). Rather, BlockShopper is using Jones Day's trade name (which happens to now match its marks) in the text or headline of a news article to identify accurately Jones Day as the employer of the reported upon attorney. Accordingly, the JONES DAY marks remain completely intact in identifying Jones Day as the "one source" of Jones Day's legal services and attorneys.

Put another way, had BlockShopper used the service marks JONES DAY or the JONES DAILY instead of BLOCKSHOPPER.COM for its online newspaper, the similar marks might give rise to a claim, either for infringement (because readers might confuse Jones Day as the source of the news) and/or for dilution (because using the JONES DAY marks for non-legal services might erode the mark's distinctiveness for legal services). But BlockShopper did no such thing. Lacking any possible allegations that BlockShopper used a mark confusingly similar to Jones Day's, that that mark was used as a source identifier for BlockShopper's different

services, and that JONES DAY's ability to function as the source identifier for Jones Day's legal services was therefore harmed, Count III must be dismissed.

## II. BLOCKSHOPPER'S USE OF "JONES DAY" IN A NEWS ARTICLE DOES NOT CONFUSE READERS INTO BELIEVING THAT BLOCKSHOPPER LLC IS ASSOCIATED WITH JONES DAY.

It is impossible to believe Jones Day's conclusory allegations of confusion where every screen shot of BlockShopper's web site incorporated into the Amended Complaint plainly features a news site with dozens of articles mentioning dozens of employers, all written under the BLOCKSHOPPER.COM masthead. (Am. Compl. Ex. C.) The federal Lanham Act only protects owners of registered marks as described:

> Any person who shall, without the consent of the registrant—(a) use… a registered mark in connection with… goods or services… which such use is likely to cause confusion, … mistake, or…deceive… shall be liable…

15 U.S.C. § 1114(1)(a). The Act also covers registered or unregistered marks as follows:

> (1) Any person who, on or in connection with any goods or services… uses… any word, term, name… or any false designation of origin… which— (A) is likely to cause confusion… or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods [or] services… shall be liable…

15 U.S.C. § 1125(a). The Illinois Uniform Deceptive Trade Practice Act similarly provides:

> A person engages in a deceptive trade practice when… the person:
> (1)      passes off goods and services as those of another;
> (2)      causes likelihood of confusion… as to the source, sponsorship, approval…
> (3)      causes likelihood of confusion… as to affiliation… or association…

815 ILCS 510/2(a).

All three statutory claims (Counts I, II, and IV), as well as the common law infringement or unfair competition claim (Count V), require allegations to support of likelihood of confusion and are considered together. *AHP Subsidiary Holding Co. v. Stuart Hale Co.*, 1 F.3d 611, 615 (7th Cir. 1993) (the "linchpin of both common law and federal statutory infringement claims is

whether consumers in the relevant market confuse the alleged infringer's mark with the complainant's mark") (citation omitted); *Autozone, Inc. v. Strick*, 466 F. Supp. 2d 1034, 1038 (N.D. Ill. 2006) ("same likelihood of confusion analysis" for "federal claims and the state law claims") (citations omitted); *Trans Union, LLC v. Credit Research, Inc.*, 142 F. Supp. 2d 1029, 1038 (N.D. Ill. 2001) (same for Illinois statutory and common law claims) (citations omitted). Since there is no plausible likelihood of confusion alleged, all four claims must be dismissed.

### A. BlockShopper's Use of "Jones Day" Does Not Confuse Readers.

Just because Jones Day alleges that BlockShopper's use of the JONES DAY marks within two articles is likely to cause confusion, does not entitle Jones Day to survive a motion to dismiss. While a complaint may adequately plead facts to put a defendant on notice of plaintiff's claim, dismissal under Rule 12(b)(6) is still warranted where "the facts pled cannot result in any plausible relief." *Segal v. Geisha NYC, LLC¸* 517 F.3d 501 (7th Cir. 2008); *Just Add Water, Inc. v. Everything But Water, Inc.*, No. Civ. 3:04-CV-2085-H, 2005 WL 1206874, *4 (N.D. Tex. May 18, 2005) (granting motion to dismiss trademark infringement claim based upon "boilerplate language" offered in a "conclusory fashion"). Jones Day offers nothing to support its incredible theory that readers will believe BlockShopper's news is associated with Jones Day alone, out of the dozens of employers referenced in article on the site. The Amended Complaint and exhibits, therefore, prove the allegation of confusion by association is false on its face.

### 1. Jones Day cannot plead traditional likelihood of confusion.

Jones Day does not even try to plead the standard elements for likelihood of confusion because it basically fails across the board. *Am. Gen.*, 312 F.3d at 812 (listing six non-exclusive factors). The marks BLOCKSHOPPER.COM and JONES DAY are completely dissimilar. The services and uses are distinct – BLOCKSHOPPER.COM is used for online real estate news

services, while JONES DAY is used for legal services. The degree of care used by customers of both services is plainly high (or so Jones Day's ample allegations about the firm's quality would lead one to believe). Jones Day pleads no evidence of actual confusion, nor does it plead that BlockShopper intended to pass off its product (online news services) as Jones Day's product (legal services). In fact, the only factor Jones Day pleads at all is the strength of its own mark, which, without any other factors, proves nothing at all in terms of infringement.

> **2.    Jones Day evidently pleads likelihood of confusion based only on the use of its marks to identify accurately Tiedt and Malone's employer.**

Jones Day's theory of likelihood of confusion, then, must rest on allegations that, despite the complete facial dissimilarity of their marks, BlockShopper used "Jones Day" in a manner that suggests Jones Day sponsors or is affiliated with BlockShopper. (Am. Compl. ¶¶ 38, 44, 61, 67.) Based upon the Amended Complaint and exhibits, those allegations are absurd. The JONES DAY mark has allegedly been used twice in BlockShopper's news reports. (Am. Compl. ¶ 25.) In those two articles, the JONES DAY marks are not the only marks or trade names used – Tiedt's article references Simpson, Thatcher & Bartlett; Baker & Hostetler; the University of Michigan; and Michigan State University, while Malone's article names Boston College and Fordham University. (Am. Compl. Ex. D.)

Beyond those immediate articles, BlockShopper features roughly two dozen stories at a time, and just the few screen shots from the Chicago BlockShopper.com page attached to Jones Day's Amended Complaint name at least *seven different employers* and far more professions. (Am. Compl. Ex. C, pp. 2-4.) It is inconceivable, despite Jones Day's conclusory allegations, that any reader of BlockShopper's site would identify Jones Day out of the dozens of listed employers and entities at any given time and conclude that Jones Day sponsored or is affiliated with BlockShopper.

3.  **Jones Day's has no trademark rights in its purported "evidence" of likelihood of confusion.**

Jones Day's alleged "evidence" of likelihood of confusion only supports the above logic. Jones Day identifies three aspects of the Tiedt and Malone articles which it believes give rise to the necessary likelihood of confusion – 1) the deep-links to Tiedt and Malone's profile pages on Jones Day's web site, 2) the photographs of Tiedt and Malone which appear identical to the photographs on the Jones Day web site, and 3) the use of "proprietary information" from the Jones Day web site. (Am. Compl. ¶¶ 25-28.)   These items are incapable of being trademarked, and hence do not give rise to trademark confusion at all.  A deep-link "is simply an address, open to the public, like a street address of a building, which, if known, can enable the user to reach the building."  *Ticketmaster Corp. v. Tickets.com, Inc.*, No. CV 997654 HLHVBKX, 2003 WL 21406289, *5 (C.D. Cal. Mar. 7, 2003).

> Internet users are accustomed to encountering multiple links on the websites they visit.  There is no general expectation that linked and linking sites are part of a single or affiliated entity.  Permitting trademark owners to regulate use of their marks in connection with links may disrupt the effectiveness of the Internet to provide a wide range of information to users.  **Moreover, extending the trademark owner's rights to prohibit such indirect associations seriously interferes with First Amendment interests.**

Margaret Barrett, *Internet Trademark Suits and the Demise of "Trademark Use"*, 39 U.C. Davis L. Rev. 371, 413 (2006) (emphasis added).

Likewise, the facts about Tiedt and Malone's education and areas of legal practice, are not "proprietary," at all but simply facts BlockShopper was free to report.  (Am. Compl. ¶ 26.) Finally, Malone and Tiedt's photographs are just pictures, in which Jones Day does not and cannot claim trademark rights.

4.  **Cases with greater likelihood of confusion are resolved in defendants' favor.**

In similar circumstances, courts have refused to accept claims like Jones Day's that the use of its mark, even in combination with links, photos, or facts could cause likelihood of confusion. In *Knight-McConnell v. Cummins*, No. 03 Civ. 5035 (NRB), 2004 WL 1713824, *1 (S.D.N.Y. Jul. 29, 2004), Knight-McConnell ran a web site "which [is] a forum for investor discussions and publishes a newsletter on various stocks." Defendant Cummins ran her own web site, on which she placed a link to Knight-McConnell's site. Cummins wrote about Knight-McConnell on her site and in discussion groups, calling her, among other things, "criminal," "insane," and "paid to lie to investors." *Id.* Knight-McConnell filed federal trademark and copyright infringement claims against Cummins, including for false designation of origin, and Cummins moved to dismiss. *Id.* The district court granted the motion, finding:

> Plaintiff has not alleged that the defendant engaged in any conduct that is likely to cause confusion as to the origin of the defendant's web site. **The mere appearance of a hyperlink to another site will not lead a web-user to conclude that the owner of the site he is visiting is associated with the owner of the linked site. This is particularly true in this case because the defendant's website advertises real estate and web design services, not investment services,** and defendant is continuously disassociating herself from plaintiff by criticizing her….

*Id.* at *2 (emphasis added). Paralleling the facts found in *Knight-McConnell,* BlockShopper links to Jones Day's site, refers to its employees' real estate transactions, and focuses on online real estate news, not legal services like Jones Day. A claim of "likelihood of confusion" simply jars with the facts found in Jones Day's Amended Complaint and exhibits.

Similarly, in *Universal City Studios, Inc. v. Ideal Publishing, Corp.*, No. 77 Civ. 4508, 1977 WL 25614, *1 (S.D.N.Y. Sept. 29, 1977), plaintiff television company moved for a TRO against defendant publisher of *Teen Beat* magazine claiming that its fan magazine titled "Teen Beat's Super Special – Shaun & Parker" and subtitled "Spend a Day on The Hardy Boys Set" infringed upon plaintiff's THE HARDY BOYS mark. The court denied the motion, finding that

the studio failed to demonstrate that the public would tend to associate the magazine with the studio's series. *Id.* at 762. In so holding, the court noted "[d]efendant's own trademark 'TEEN BEAT' is prominently displayed on the magazine," and "[t]he words 'Hardy Boys' are used descriptively in connection with the activities of the actors on the set…"

BlockShopper's and *Teen Beat*'s facts are very similar – both used many facts and photos, but, under the clear mastheads of BlockShopper and *Teen Beat*, the idea that readers would be confused simply did not hold water. *See also Le Book*, 418 F. Supp. 2d at 312 (granting motion to dismiss trademark infringement claims where defendant's allegedly infringing mark was so dissimilar that confusion was unlikely); *Caterpiller, Inc. v. Walt Disney Co.¸* 287 F. Supp. 2d 913 (C.D. Ill. 2003) (denying motion for TRO on infringement and dilution claims where Disney film accurately used Caterpiller's trademarks on vehicles in film without permission); *Wham-O, Inc. v. Paramount Pictures Corp.*, 286 F. Supp. 2d 1254 (N.D. Cal. 2003) (same where film accurately used Slip 'N Slide trademark in film without permission).

### B. BlockShopper's Use of "Jones Day" is a Nominative Fair Use.

Nominative fair use is also a defense to likelihood of confusion claims, though in this context it is a common law defense, unlike under the Anti-Dilution Act, where it is a statutory defense.[6] The Northern District has adopted the nominative fair use defense for trade and service mark claims. *Ty, Inc. v. Publ'ns Int'l, Ltd.*, No. 99 C 5565, 2005 WL 464688, *5 (N.D. Ill. Feb. 25, 2005) (accepting nominative fair use, and noting doctrine could also be called "proper name fair use" or "reference fair use"). Moreover, the inclusion of nominative fair use in the text of the Anti-Dilution Act signals legislative acceptance of the common law doctrine.

Though motions to dismiss on the nominative fair use defense are not common, they are necessary where, as here, "Jones Day" is both trade name *and* service mark, making

---

[6] BlockShopper incorporates herein its nominative fair use discussion in Argument I, Sec. C, as well.

identification otherwise impossible, and making a textbook case for fair use. *See also Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 414 (S.D.N.Y. 2006) (granting motion to dismiss for defendant CrossBorder on nominative fair use defense where defendant did not use allegedly infringing phrase "generic ZOCOR," but only used the term "generic simvastatin" and mark ZOCOR on those items). The only way BlockShopper could identify Jones Day as Tiedt and Malone's employer was to use the words "Jones Day," which also happen to be the mark JONES DAY. There are no alternatives or lesser ways to make this identification. And stopping anyone, media or otherwise, from using JONES DAY to identify Jones Day gives Jones Day a radical right to censor speech in contravention of the First Amendment.. As the Fourth Circuit has warned:

> [P]rotections 'against unfair competition' cannot be transformed into 'rights to control language.' Such a transformation would raise serious First Amendment concerns because it would limit the ability to discuss the products or criticize the conduct of companies that may be of widespread public concern and importance. Much useful social and commercial discourse would be all but impossible if speakers were under threat of an infringement lawsuit every time they made reference to a person, company or product by using its trademark.

*Lamparello v. Falwell*, 420 F.3d 309, 313 (4th Cir. 2005) (internal citations and quotations omitted). BlockShopper did nothing more that use Jones Day's trade name in the nominative sense to identify an employer. Therefore, the likelihood of confusion based claims must be dismissed.

## III. TIMPONE AND WEINHAUS HAVE NO PERSONAL LIABILITY FOR THEIR ACTS AS MEMBER OF BLOCKSHOPPER LLC.

Jones Day's Amended Complaint names both Weinhaus and Timpone as individual defendants in addition to defendant BlockShopper LLC. (Am. Compl. ¶¶ 3-5.) Yet, Jones Day admits that: "Defendants Weinhaus and Timpone are now *members of Defendant BlockShopper LLC*…." (Id. ¶ 21, emphasis added.) Moreover, Jones Day has offered no explanation or

allegation for why these *individual members of an LLC should be held personally liable for the actions of the LLC.* By Jones Day's own allegations, the website that is the source of the conduct complained of is operated by BlockShopper LLC. (Id.) The complaint merely alleges that "Weinhaus and Timpone co-founded, registered and own the internet web site located at the domain www.blockshopper.com." (Id. ¶ 20.) Such bare-bone allegations do not even approach the pleading requirements for piercing the corporate veil of BlockShopper LLC and attaching personal liability to two of its members. Therefore, plaintiff's entire complaint should be dismissed with regard to the individual defendants Weinhaus and Timpone.

It is black-letter law that an individual cannot normally be held liable for the actions of a corporation or LLC.[7] The corporate veil is pierced:

> [O]nly when there is such unity of interest and ownership that the separate personalities of the corporation and the individual or other corporation no longer exist, and when adherence to the fiction of a separate corporate existence would sanction a fraud or promote injustice. Piercing the corporate veil is not favored and in general, courts are reluctant to do so.

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 529 F.3d 371, 379 (7th Cir. 2008) (internal citations omitted). Jones Day has not and cannot allege that BlockShopper LLC is not a properly established limited liability company, fully capitalized and operated as a distinct legal entity for legitimate commercial purposes. By Jones Day's own admissions, BlockShopper LLC operates a website that reports on "real estate transactions" and seeks to "solicit advertisements and garner advertising income." (Am. Compl. ¶¶ 22-23.) None of Jones Day's allegations even purport to state a basis to overcome the well-established preference for respecting the corporate form and protecting individual officers, members, and/or employees from personal liability.

---

[7] *Cement-Lock v. Gas Technology Institute*, 523 F. Supp. 2d 827, 845-46 (N.D. Ill. 2007) (Noting that piercing the veil of an LLC is comparable to piercing a corporation, albeit harder because the corporate formalities requirement is less strict for LLCs).

The general pleading requirements for piercing the corporate veil have been modified slightly to specifically deal with infringement claims. Over 80 years ago, the 7th Circuit established specialized requirements for attaching personal liability in an infringement claim in *Dangler v. Imperial Mach. Co.*, 11 F.2d 945 (7th Cir. 1926). *Dangler* remains the seminal case on piercing the corporate veil for infringement claims and has been cited recently and often by this Court. In *Dangler*, the court held:

> **[I]n the absence of some special showing, the managing officers of a corporation are not liable for the infringements of such corporation,** though committed under their general direction.… It is when the officer acts willfully and knowingly – that is, when he personally participates in the manufacture or sale of the infringing article (acts other than as an officer), or when he used the corporation as an instrument to carry out his own willful and deliberate infringements, or when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability – that officers are held jointly with the company.

*Id.* at 947 (emphasis added). Jones Day's infringement claims do not meet this "special showing" standard.

There are no allegations that Weinhaus or Timpone acted outside of their standard responsibilities as members of an LLC. Moreover, the complaint does not allege that the individuals personally took any willful or deliberate actions to even conceivably infringe on Jones Day's marks. Finally, there is not even a suggestion that BlockShopper LLC is setup for the purpose of avoiding personal liability so that Weinhaus and Timpone can commit deliberate infringement with impunity. Even accepting the complaint as presumptively true at this pleadings stage, the plaintiff has failed to allege anything that would warrant extending personal liability to the individual defendants.

This Court has recently considered motions to dismiss in comparable cases where the plaintiff attempted to attach personal liability to individuals for infringement claims. In *The Drink Group, Inc. v. Gulfstream Communications, Inc.*, 7 F. Supp. 2d 1009 (N.D. Ill. 1998), this

Court considered a complaint against a corporation and the two individuals who incorporated the company. The court granted the individual defendants' motion to dismiss, holding that the plaintiff "fail[ed] to allege any facts which demonstrate wrongdoing by the individual Defendants." *Id.* at 1010-11. The skeletal allegations in *Drink Group* are similar to the allegations against the individuals in Jones Day's complaint. Specifically, the *Drink Group* court explained that:

> *The mere fact that Holmes and Amoroso incorporated Drink Magazine, LLP is innocuous in the absence of allegations that, at the time of incorporation, they were motivated by some improper purpose or acting outside the scope of their corporate duties*. In other words, Plaintiff's averments fall woefully short of the 'special showing' requirement of *Dangler*. Plaintiff's remaining allegations against Holmes and Amoroso regarding continuing infringement and their roles as the 'principal' and 'driving force' behind the infringement, are similarly unavailing. These conclusory statements, standing alone, run afoul of Plaintiff's obligation to adumbrate a claim with some supporting facts.

*Id.* at 1011 (emphasis added). Here, Jones Day has not even made the conclusory allegations *Drink Group* found to be insufficient, merely alleging Weinhaus and Timpone "co-founded" and "registered" the BlockShopper website. Given that Jones Day's complaint falls short of the pleadings deemed inadequate in *Drink Group*, there is no question that instant complaint does not make the "special showing" required by *Dangler.*

Similarly, in *FM Industries, Inc. v. Citicorp Credit Services, Inc.*, No. 07 C 1794, 2007 WL 4335264 (N.D. Ill. Dec. 5, 2007), the plaintiff brought infringement claims against two officers of the defendant corporation. The court dismissed the claims against the individuals, noting that "for personal liability to extend to Brown and Gillard as corporate officers, a special showing must be made that they acted willfully and knowingly, and personally participated in the infringing activities or otherwise used CCSI [the company] to carry out their own deliberate infringement." *Id.*, at *4. In analyzing the plaintiff's complaint, the court found there were no allegations that the individuals did anything "beyond the scope of their duties as officers" nor

was there any allegation that the defendant corporation was "organized to permit the individual defendants to profit from infringement or hide personal liability." *Id.* Likewise, Jones Day makes no allegations that Weinhaus and Timpone have acted outside of the scope of their duties as members of BlockShopper LLC or that BlockShopper LLC was created to permit Weinhaus and Timpone to profit from infringement while hiding from personal liability.

Based on Jones Day's paper-thin allegations against Weinhaus and Timpone, there is no basis to pierce the corporate veil of BlockShopper LLC and attach any personal liability to these members of the LLC. Under both the general piercing standard and the more specific "special showing" standard for infringement claims, Jones Day falls well short of the pleading requirements to bring a claim against these individual defendants and the Court should dismiss all claims against Weinhaus and Timpone.

## CONCLUSION

For all of the reasons discussed above, Jones Day's Amended Complaint must be dismissed in its entirety.

> **BLOCKSHOPPER LLC,**
> **BRIAN TIMPONE, and**
> **EDWARD WEINHAUS**
>
>
> By: /s/ Martin B. Carroll
>         One of their Attorneys

Martin B. Carroll
Tracy Katz Muhl
Adam Hachikian
**FOX, HEFTER, SWIBEL, LEVIN & CARROLL, LLP**
200 West Madison Street, Suite 3000
Chicago, Illinois 60606
(312) 224-1200
(312) 224-1202 (fax)
Dated: September 19, 2008