**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JONES DAY, | ) | Case No.: 08CV4572 |
| | ) | Judge John Darrah |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| BlockShopper LLC, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Brian Timpone, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| Edward Weinhaus, | ) | |
| | ) | |
| Defendants. | ) | |

## JONES DAY'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Dockets.Justia.com

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. RELEVANT FACTUAL ALLEGATIONS ........................................................ 1

III. ARGUMENT ..................................................................................................... 3

    A. Dismissal Pursuant To Rule 12(b)(6) Is Not Favored ........................................... 3

    B. Dilution Requires the Court to Make Factual Findings ........................................ 4

    C. Jones Day's Amended Complaint States a Claim for Dilution by Blurring and by Tarnishment .................................................................................................. 5

    D. Defendants' Unlawful Acts are Not Excused by the "News Reporting and News Commentary" Exception .................................................................................. 8

    E. Defendants' Use of the Jones Day Marks is Not Nominative Fair Use .............. 12

    F. Likelihood Of Confusion Is A Question Of Fact .................................................. 15

    G. Defendants Timpone and Weinhaus Can Be Individually Liable for the Unlawful Acts of Blockshopper LLC .................................................................... 18

IV. CONCLUSION ................................................................................................... 23

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aguila Records v. Federico*, No. 07 C 3993, 2007 WL 2973832 (N.D. Ill. Oct. 10, 2007) ..........16

*Autozone, Inc. v. Strick*, 466 F. Supp. 2d 1034 (N.D. Ill. 2006) ....................................17

*Autozone, Inc. v. Strick*, No. 07-2136, 2008 WL 4173019 (7th Cir. Sept. 11, 2008) ...................18

*Avery Dennison Corp. v. Sumpton*, 189 F.3d 868 (9th Cir. 1999)....................................5

*Babbit Electronics, Inc. v. Dunascan Corp.*, 38 F.3d 1161 (11th Cir. 1994) ...............................19

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) .................................................3

*Bidzirk, LLC v. Smith*, C.A. No. 6:06-109-HMH, 2007 WL 3119445
 (D.S.C. Oct. 22, 2007) ..........................................................9, 11, 12

*Bobak Sausage Co. v. A & J Seven Bridges, Inc.*, 07 C 4718, 2008 WL 4181744
 (N.D. Ill. Sept. 5, 2008) ........................................................16

*Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013 (C.D. Cal. 1998) ...............................5

*Cooper Industrial, Inc. v. Juno Lighting, Inc.*, 1 U.S.P.Q. 2d 1313 (N.D. Ill. 1986) ...................21

*Cortland Line Co. v. The Orvis Co.*, No. 97-CV-1294, 1997 WL 808608
 (N.D.N.Y. 1997) .................................................................12

*Courtenay Communications Corp. v. Hall*, 334 F.3d 210 (2d Cir. 2003) ....................................14

*Dangler v. Imperial Machine Co.*, 11 F.2d 945 (7th Cir. 1926)...........................................19, 20

*Do It Best Corp. v. Passport Software, Inc.*, No. 01 C 7674, 2004 WL 1660814
 (N.D. Ill. July 23, 2004)..........................................................20

*Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456 (7th Cir. 2000).........................................8

*Forrest v. University Savings Bank, F.A.*, 507 F.3d 540 (7th Cir. 2007) .......................................4

*For Your Ease Only, Inc. v. Calgon Carbon Corp.*, No. 02 C 7345, 2003 WL 21475905
 (N.D. Ill. June 20, 2003) ...........................................................19

*Knight-McConnell v. Cummins*, No. 03 Civ. 5035, 2004 WL 1713824 (S.D.N.Y. July 29,
 2004) .............................................................................18

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596 (9th Cir. 2005)..........12

*Lambert v. Kazinetz*, 250 F. Supp. 2d 908 (S.D. Ohio 2003) ........................................19

*Liquid Glass Enterprises, Inc. v. Dr. Ing h.c.F. Porsche AG*, 8 F. Supp. 2d 398
    (D.N.J. 1998)......................................................................................................6

*Lucent Techs. Inc. v. Johnson*, 56 U.S.P.Q. 2d 1637 (C.D. Cal. 2000) ...........................5

*McDonald's Corp. v. Grunville*, 441 F. Supp. 71 (N.D. Ill. 1977) ...............................16

*Merck & Co. Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402
    (S.D.N.Y. 2006) .................................................................................................15

*N. America Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211 (11th Cir. 2008) ..............17

*National Board for Certification in Occupational Therapy, Inc. v. America Occupational
    Therapy Associate*, 24 F. Supp. 2d 494 (D.Md. 1998) .........................................5

*New Kids on the Block v. New America Publ'g, Inc.*, 971 F.2d 302 (9th Cir. 1992) ...................13

*Papa John's International, Inc. v. Rezko*, 446 F. Supp. 2d 801 (N.D. Ill. 2006).......................8, 16

*Peaceable Planet, Inc. v. Ty, Inc.*, 185 F. Supp. 2d 893 (N.D. Ill. 2002) .....................................21

*Piaggio & C.S.P.A. v. Scooterworks USA, Inc.*, No. 98 C 7573, 1999 WL 674749
    (N.D. Ill. Aug. 23, 1999)...............................................................................19, 20

*Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020
    (9th Cir. 2004)...................................................................................................17

*Promatek Industrial, Ltd. v. Equitrac Corp.*, 300 F.3d 808 (7th Cir. 2002)................................17

*Rhee Brothers, Inc. v. Han Ah Reum Corp.*, 178 F. Supp. 2d 525 (D.Md. 2001) ..........................8

*RJ Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.*, No. 99 C 1174,
    2001 WL 747422 (N.D. Ill. June 29, 2001) .................................................12, 14

*Scandia Down Corporation v. Euroquilt, Inc.*, 772 F.2d 1423 (7th Cir. 1985)............................16

*Segal v. Geisha NYC LLC*, 517 F.3d 501 (7th Cir. 2008)..........................................................17

*Sethness-Greenleaf, Inc. v. Green River Corp.*, Nos. 89-C-9203, 91-C-4373,
    1994 WL 67830 (N.D. Ill. Feb. 11, 1994) .......................................................21

*Sparks Tune-Up Centers, Inc. v. Panchevre*, No. 90 C 4369, 1992 WL 211029
(N.D. Ill. Aug. 21, 1992)......................................................................................19

*The Drink Group, Inc. v. Gulfstream Communications, Inc.*, 7 F. Supp. 2d 1009
(N.D. Ill. 1998)...................................................................................................21

*Ticketmaster Corp. v. Tickets.com, Inc.*, 2003 WL 21406289 (C.D. Cal. 2003)....................16, 17

*Triple Canopy, Inc. v. Moore,* No. 04 C 3265, 2005 WL 1629768
(N.D. Ill. July 1, 2005).......................................................................................16

*Ty, Inc. v. Publication International, Ltd.*, No. 99 C 5565, 2005 WL 464688
(N.D. Ill. Feb. 25, 2005)............................................................................12, 14, 15

*United States Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623 (7th Cir. 2003)................4, 12

*Vulcan Golf LLC v. Google, Inc.*, 552 F. Supp. 2d 752 (N.D. Ill. 2008)...........................6, 8, 16

*World Impressions, Inc. v. McDonald's Corp.*, 235 F. Supp. 2d 831 (N.D. Ill. 2002) ............12, 14

*Yeager v. Cingular Wireless LLC*, No. CIV. 5-07-2517 FCD GGH, 2008 WL 2413167
(E.D. Cal. June 12, 2008)......................................................................................15

## FEDERAL STATUTES

15 U.S.C. § 1125(c) *et seq* .................................................................................4, 5, 6, 7, 8

## STATE STATUTES

735 ILCS 5/8-901 *et seq* .......................................................................................11

## OTHER

Legislation, Trademarks, 50 PTCJ 711 (Issue No. 1249, October 19, 1995)..................................9

## I. INTRODUCTION

Defendants' Motion to Dismiss should be denied. Defendants must demonstrate that Jones Day cannot prove any set of facts in support of its claims which would entitle Jones Day to relief. Because they cannot meet this burden, Defendants resort to bogus doomsday prophecies. For example, Defendants claim that the relief Jones Day seeks "would radically overturn the long established and ubiquitous Internet practice of websites linking to other websites," when Defendants have not established (and of course cannot do so in the course of a motion to dismiss) that there even is such a practice. Similarly, Defendants' rant that Jones Day is seeking to "stop accurate news reports" is nothing more than an attempt to draw this Court's attention away from the clear and plain claims in the Amended Complaint that focus on how these Defendants' particular practices on this particular website deprived Jones Day of the legitimate use of its own intellectual property.

Stripped of its invective, Defendants' Motion to Dismiss does not contain one argument which supports dismissing the Amended Complaint, and can be readily denied so that the matter can be resolved on a complete factual record as is anticipated by the already scheduled permanent injunction trial.

## II. RELEVANT FACTUAL ALLEGATIONS

Defendants use the trademarks, service marks and goodwill of intellectual property owners to further their business. Defendants' attempts to trade off of the goodwill and intellectual property of Jones Day provide the basis for the facts giving rise to the Amended Complaint. The relevant facts are as follows.

Defendants registered and use the web site www.blockshopper.com.  While the site depicts the details of real estate transactions, Defendants use it to make money; they solicit advertisements and advertising revenue.  (Am. Compl., ¶ 23, Ex. C; *See also* Def.s' Mot. to Dismiss at 4).  Defendants tout that: "BlockShopper.com offers special advertising and sponsorship packages created to meet your local customer acquisition or brand-building needs." (*Id.*, ¶ 23, Ex. C.).

Jones Day is one of the world's largest and most famous law firms.  (*Id.*, ¶¶ 8-13).  Jones Day is the owner of two United States Service Mark Registrations, Numbers 2,212,877 and 2,316,539, for the mark JONES DAY to identify legal services (collectively, the "Jones Day Marks").  (*Id.*, ¶ 14, Exs. A and B).  As a direct result of the time and effort Jones Day has spent promoting and enforcing the mark JONES DAY, Jones Day's clients, its competitors and the general public have come to associate high-quality legal services provided by Jones Day with the Jones Day Marks.  (*Id.*, ¶¶ 15-19).  Indeed, at least one court has held that the Jones Day Marks are famous.  (*Id.*, ¶¶ 15 and 53).  And, it is precisely because of the fame and recognition of the Jones Day Marks that Defendants are using them on the Blockshopper.com web site.

As alleged in the Amended Complaint, Defendants have used the Jones Day Marks and content from the Jones Day web site for their own gain.  (*Id.*, ¶¶ 25-29, Exs. C and D).  Rather than simply mention "Jones Day" as the law firm that employs certain individuals who have recently purchased homes in the Chicago area, Defendants link to the Jones Day web site and use proprietary content from the Jones Day web site.  (*Id.*, ¶¶ 25-26, Ex. D).  Defendants' use of the Jones Day Marks, the link to the Jones Day web site, and the use of proprietary information from the Jones Day web site is intended to "create the false impression that Jones Day is affiliated with and/or approves, sponsors or endorses the business conducted by the Defendants."  (*Id.*,

¶¶ 28, 38, 44, 61 and 67). This "false impression" was purposefully created by the Defendants to "make the [Defendants'] Web Site more attractive to potential advertisers." (*Id.*, ¶¶ 24, 47, 48).

Because of Defendants' unlawful activity, and after Jones Day's cease-and-desist letters were ignored, Jones Day filed suit against Defendants to cease their acts of trademark infringement, trademark dilution and unfair competition. Once the suit was filed, in order to avoid a preliminary injunction hearing, Defendants agreed to immediately cease using the Jones Day Marks until this matter is resolved. (*See* Stipulation and Order of August 19, 2008, docket entry no. 20; Initial Scheduling Order of September 19, 2008, docket entry no. 42). Indeed, Defendants agreed to the entry of an Order which bars the Defendants from using the Jones Day Marks, using content from the Jones Day web site, and prohibits Defendants from linking to the Jones Day web site. (*Id.*).

## III.   ARGUMENT

### A.    Dismissal Pursuant To Rule 12(b)(6) Is Not Favored.

Rule 8 of the Federal Rules of Civil Procedure embodies the liberal pleading standard a complaint must meet, and Rule 8 "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the … claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007).

A court faced with a motion to dismiss pursuant to Rule 12(b)(6) must liberally construe all allegations in favor of the party asserting the claim; all facts pled must be construed in favor of the party pleading them. *Bell Atl.,* 127 S.Ct. at 1964. Thus, the United States Court of Appeals for the Seventh Circuit has held that "[a] complaint should only be dismissed if there is

no set of facts, even hypothesized, that could entitle a plaintiff to relief." *Forrest v. Univ. Savs. Bank, F.A.*, 507 F.3d 540, 542 (7th Cir. 2007).[1]

Defendants pay lip service to the proper standard in their Motion to Dismiss. Yet, at every turn they ask this Court to construe facts and make inferences in their favor.[2] Such a request should be denied. Viewed against the proper legal standard, it is obvious that: (1) the Amended Complaint far surpasses the liberal notice requirements of Rule 8; and (2) Jones Day states claims for service mark infringement, dilution, false designation of origin, and unfair competition. Thus, Defendants' Motion to Dismiss should be denied.

### B.     Dilution Requires the Court to Make Factual Findings.

Dilution is an issue of fact not suitable for resolution as a matter of law. Jones Day asserts claims for dilution by blurring and by tarnishment in its Amended Complaint under 15 U.S.C. § 1125(c) (the "Federal dilution statute"). Neither the "news reporting and news commentary" exception, nor the nominative fair use doctrine, excuse Defendants' dilutive acts.

Dilution requires the Court to consider "all relevant factors" likely to "impair[] the distinctiveness of the famous mark." 15 U.S.C. §§ 1125(c)(2)(B) and (C) (2007). The Federal dilution statute lists six non-exclusive factors that may be considered. 15 U.S.C. § 1125(c)(2)(B)(i)-(vi). Not surprisingly, Courts have called a determination of blurring or

---

[1]  Defendants cite the decision in *Forrest* for the proposition that when a plaintiff's exhibits and allegations contradict, dismissal is appropriate. In *Forrest*, the issue was whether the defendant had made a firm offer of credit. While the Plaintiff alleged that the attached exhibit was not such an offer, on its face, the exhibit contained all of the elements necessary to meet the legal standard of such an offer. Thus, under such circumstances dismissal was appropriate. Unlike the exhibits in *Forrest*, nothing in the Exhibits at issue in this case contradict the allegations in the Amended Complaint. Indeed, the Exhibits support Jones Day's claims by demonstrating Defendants' unlawful use of the Jones Day Marks. (Am. Compl., Exs. C and D).

[2]  Defendants also argue that several affirmative defenses would permit this Court to dismiss the Amended Complaint. However, "[c]omplaints need not anticipate or attempt to defuse potential defenses." *United States Gypsum Co. v. Indiana Gas Co., Inc.*, 350 F.3d 623, 626 (7th Cir. 2003). A complaint need not "overcome" defenses. *Id.* And, unless the allegations of a Complaint allege the elements of a defense, a motion to dismiss is not appropriately decided on such a defense. *Id.* As set forth herein, nothing in the Amended Complaint supports Defendants' affirmative defenses.

tarnishment "a complex issue of fact" that routinely resists motions to dismiss. *Nat'l Bd. for Certification in Occupational Therapy, Inc. v. Am. Occupational Therapy Assoc*., 24 F. Supp. 2d 494, 510 (D.Md. 1998). *See also Lucent Techs. Inc. v. Johnson*, 56 U.S.P.Q. 2d 1637, 1639 (C.D. Cal. 2000) (denying defendant's motion to dismiss plaintiff's federal dilution claim); *Cairns v. Franklin Mint Co*., 24 F. Supp. 2d 1013, 1036 (C.D. Cal. 1998) (same); *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 881 (9th Cir. 1999) (viewing tarnishment as an "issue of fact" not suitable for disposition on a motion to dismiss).

Defendants' Motion asks the Court to do that which it cannot: decide complex issues of fact, with no discovery, as a matter of law. For this reason alone, Defendants' Motion fails.

### C.    Jones Day's Amended Complaint States a Claim for Dilution by Blurring and by Tarnishment.

To state a claim for dilution, a plaintiff must allege: (1) its mark is famous; (2) its mark is distinctive; (3) defendant's use of the mark commenced after it became famous; (4) defendant used the mark in commerce; and (5) defendant's use of the mark is likely to cause dilution by blurring or by tarnishment. 15 U.S.C. § 1125(c)(1). Jones Day alleges each of these elements in its Amended Complaint. Jones Day's Marks acquired fame in the United States. (Am. Compl., ¶ 53). Jones Day's Marks are distinctive. (*Id*., ¶¶ 15, 16, 55, 56). Defendants' use of the Jones Day Marks began after the marks achieved fame. (*Id*., ¶ 54). Defendants used and use the Jones Day Marks in commerce. (*Id*., ¶¶ 23-26). Defendants' use of the Jones Day Marks is diluting, and has diluted, the Jones Day Marks. (*Id*., ¶¶ 28, 55-57). This is all that Jones Day needs to allege to state a claim for dilution by blurring and tarnishment under the Federal dilution statute.

Defendants' argument that dilution by blurring is "impossible" is premised on a fundamental misunderstanding of the Federal dilution statute. Defendants allege that because they do not call themselves JONES DAY BLOCKSHOPPER (or something similar), Jones

Day's dilution claim fails. Defendants are wrong — several courts have found dilution when the defendant was using the plaintiff's mark in commerce, though not to label defendant's goods or services. For example, in *Liquid Glass Enters., Inc. v. Dr. Ing h.c.F. Porsche AG*, 8 F. Supp. 2d 398, 405 (D.N.J. 1998), Liquid Glass used a Porsche automobile in its commercial advertising for car polish. The court found dilution by blurring from Liquid Glass' use of Porsche's mark: "Liquid Glass's unauthorized use of Porsche's trademarks and trade dress is likely to slowly whittle away the distinctiveness of Porsche's marks, demeaning the Porsche cachet and blurring the value of its famous and strong marks." *Id*.

Defendants' argument conveniently ignores the very basis for a dilution claim which is *use* of the plaintiff's mark. In this case, Defendants are using Jones Day's Marks in a manner likely to cause dilution by blurring and by tarnishment. As alleged in Jones Day's Amended Complaint, Defendants' use of Jones Day's Marks (via deep links to the Jones Day web site) "creates the false impression that Jones Day is affiliated with and/or approves, sponsors or endorses the business conducted by the Defendants." (Am. Compl., ¶ 28). Jones Day alleges further that this "false impression" is purposefully created by the Defendants to "make the [Defendants'] Web Site more attractive to potential advertisers." (*Id*., ¶¶ 24, 47, 48). This claim of dilution by blurring is entirely resonant with the factors set forth in the Federal dilution statute — for example, "[w]hether the user of the mark or trade name intended to create an association with the famous mark." 15 U.S.C. § 1125(c)(2)(B)(v). *See Vulcan Golf LLC v. Google, Inc*., 552 F. Supp. 2d 752, 774 (N.D. Ill. 2008) (denying motion to dismiss plaintiff's claim of dilution by blurring, when "[a]ccording to the plaintiffs, because internet users could mistakenly assume that the defendants' web pages are associated with the plaintiffs and the plaintiffs do not have the ability to control the association of their marks, dilution has occurred.").

Defendants' dilutive actions are exacerbated by the fact that they openly promote sponsorships for their content: "BlockShopper.com offers special advertising and sponsorship packages created to meet your local customer acquisition or brand-building needs." (*See* Am. Compl., ¶ 23 and Ex. C). Nothing on Defendants' web site advises the viewer as to whether an entity named on the web site is there because it is an advertiser or because it is a sponsor or because it is an entity that has no affiliation to Blockshopper.com, but Blockshopper.com improperly links to it anyway, as it did to the Jones Day web site. Moreover, because only some of the Blockshopper.com real estate transaction pages contain links (as the Jones Day pages do), it increases the likelihood that a user will see those companies and firms with links placed in their pages as being a sponsor.

Jones Day is not, as Defendants disingenuously suggest, alleging that Defendants' use of "Blockshopper.com" dilutes the Jones Day Marks. (*See* Def.'s Mot. to Dismiss at 14). Rather, Jones Day alleges that Defendants' use of the Jones Day Marks— not something similar, but the actual marks themselves — constitutes dilution. Such use falls squarely within the statutory factors for dilution by blurring: "[t]he degree of similarity between the mark or trade name and the famous mark." 15 U.S.C. § 1125(c)(2)(B)(i). The "degree of similarity" in this case is absolute. Defendants are using the exact Jones Day Marks by deep-linking to the Jones Day web site.

Defendants' argument that the Amended Complaint fails to state a claim for dilution by tarnishment also fails. As the Federal dilution statute provides, dilution by tarnishment occurs when use "harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C). Jones Day's allegations meet this standard several times — paragraph 28 ("Such an impression is false and disparages Jones Day and the Jones Day Marks."), and paragraph 49 ("The acts of the

Defendants were committed willfully … with the intention of misappropriating and wrongfully trading upon the valuable goodwill and reputation of Jones Day and the Jones Day Marks.")  The Amended Complaint sufficiently alleges that Defendants' actions have harmful effects on the reputation of the Jones Day Marks.  Thus, Jones Day alleges a tarnishment claim.  *See Papa John's Int'l, Inc. v. Rezko*, 446 F. Supp. 2d 801, 808-09 (N.D. Ill. 2006) (*citing Eli Lilly & Co. v. Natural Answers, Inc*., 233 F.3d 456, 466 (7th Cir. 2000) ("Dilution by tarnishing occurs when a junior mark's similarity to a famous mark causes consumers mistakenly to associate the famous mark with the defendant's inferior or offensive product.")).

Defendants have not done anything to undermine this claim other than to say it was not pled.  That is simply wrong.  General allegations that defendants diluted plaintiff's marks by using confusingly similar domain names was more than sufficient to state a claim for both dilution by blurring and by tarnishment in *Vulcan Golf*, 552 F. Supp. 2d at 774.  *See also Rhee Bros., Inc. v. Han Ah Reum Corp*., 178 F. Supp. 2d 525, 530-31 (D.Md. 2001) ("[T]o the extent that defendants are insisting that plaintiff must make an election as to a specific theory of dilution, I reject such a contention out of hand; there is no warrant for imposing a requirement of that sort.").

> **D.    Defendants' Unlawful Acts are Not Excused by the "News Reporting and News Commentary" Exception.**

The "news reporting and news commentary" exception to the Federal dilution statute does not excuse Defendants' dilutive use of the Jones Day Marks via the deep, embedded links[3]

---

[3]  A "deep link" is a hyperlink that takes a user directly to a webpage beyond the homepage of the target web site.  An "embedded link" is a hyperlink that is placed on a word or name, rather than explicitly by a URL address, such as www.jonesday.com.  The Defendants' link to the biography pages of Jones Day attorneys is therefore both "deep" (in that it links directly to a webpage beyond the Jones Day web site homepage), and "embedded" (in that the hyperlink is placed within the person's name (i.e., Malone), and the destination of the link is not apparent to the user).  In this situation, this linking method exacerbates Defendants' objectionable conduct.  By using a "deep link" to an internal Jones Day page, Defendants have increased the appearance of sponsorship as the Blockshopper.com viewer, by clicking on the link, is immediately and seamlessly placed within the internal pages of

provided on Defendants' web site.  This exception was designed to safeguard against the reporting and commentary about the owner of a famous mark, not to insulate deceptive use of a famous mark to create false affiliation for profit.  Moreover, the question of whether the Defendants' use of the Jones Day Marks falls under the exception is, like all "fair use" analysis, an issue of fact not suitable for resolution by a motion to dismiss.

The "news reporting and new commentary" exception was added to ensure that news outlets could report and comment on a company in a negative manner, and do so without fear of a dilution claim.  As contemporaneously reported by the BNA Patent, Trademark & Copyright Journal:  "[T]he news exemption was added at the request of the National Association of Broadcasters, which felt that the non-commercial use exemption might not be sufficient to cover news broadcasts."  Legislation, Trademarks, 50 PTCJ 711 (Issue No. 1249, October 19, 1995).  As many news organizations are for-profit entities, this exception makes sense.  The local paper should not fear a dilution lawsuit because they ran a truthful story about a popular fast-food chain's unsanitary kitchen conditions.

The exception does not focus on the status of the speaker, nor what type of organization to which the speaker belongs.  *See Bidzirk, LLC v. Smith*, C.A. No. 6:06-109-HMH, 2007 WL 3119445, at *6-7 (D.S.C. Oct. 22, 2007) (blogger's *activities* held to fall within exception).  Rather, the "news reporting and news commentary" inquiry focuses on *how* a defendant is using the plaintiff's mark:  Is it being done to report news or provide commentary, or for some other purpose?

---

(continued…)

the Jones Day website.  By using an "embedded link," Defendants are purposefully not alerting the viewer that the viewer is now going to an external website that in truth is unaffiliated with and does not sponsor Blockshopper.com.

Defendants' use of the Jones Day Marks via the deep links on their web site is done neither to report news nor to provide commentary. Defendants link to the Jones Day web site (which prominently displays the Jones Day Marks) to create a false impression that Jones Day supports, approves, or is in some way affiliated with Defendants' business practices. (*See* Am. Compl., ¶ 28). The point of this, of course, is to bolster the content of Defendants' web site, and therefore derive more advertising revenue. (*See id.*, ¶ 24).

Defendants' intent is evident simply by glancing at Defendants' web site page containing an unauthorized link. Consider the Defendants' content regarding Dan Malone, Jr., attached as Exhibit D to the Amended Complaint. This page contains numerous items of publicly-available information Defendants are certainly allowed to assemble and share: the names of the buyer and seller; the listing and sale price of the condo; the address of the condo; where Mr. Malone works; where Mr. Malone went to school; and even what type of law he practices. Jones Day is not complaining about any of this content. Slyly inserted, however, into the body of the content is a deep, embedded hyperlink[4] placed on Mr. Malone's last name. Clicking on this link takes a user to a page bearing the Jones Day Marks within the Jones Day web site. No notice is given to the user, before they click on the link, where they are being taken. As alleged in the Amended Complaint, herein lies the crux of Defendants' objectionable conduct.[5]

Defendants' use of the link (and thus the Jones Day Marks) has nothing to do with "reporting news" about Jones Day. The salient information about Mr. Malone is already provided on the Defendants' page without unlawful use of the Jones Day Marks, such as Mr. Malone's employer, education, and experience. The link adds nothing in the way of "news" —

---

[4] *See supra* note 3.

[5] For the purposes of responding to Defendants' Motion to Dismiss, Jones Day focuses on one of Defendants' unlawful acts (linking to the Jones Day web site), as that is sufficient to do away with Defendants' Motion to Dismiss.

instead, it bulks up the perceived content of the Defendants' web site in a way that dilutes the Jones Day Marks, is likely to confuse users, and is designed to make more money for Defendants. Indeed, if the link was removed from the page featuring Mr. Malone, and everything else remained, the content of the page is unaffected. Whatever is "newsworthy" survives without Defendants' unlawful and deceptive link to Jones Day's web site.

Defendants' placement of the link also has nothing to do with "commentary." In fact, Defendants have no "commentary" about Jones Day at all on their web site. The content is about real estate transactions, and the buyers and sellers involved. In this sense, *Bidzirk* is easily distinguishable. In *Bidzirk*, the defendant (Smith) had a negative personal experience with Bidzirk when Smith attempted to use Bidzirk as an eBay listing company. 2007 WL 3119445 at *1, *6. Smith wrote about his personal experiences with Bidzirk on his blog, and was critical of Bidzirk's business. *Id*. The court held Smith's acts fell under the "news reporting and news commentary" exception because Smith was actually providing "commentary" on Bidzirk in a truthful, though negative, manner. *Id*. at *6-7. In this case, Defendants do nothing of the sort. Their use of the Jones Day Marks (via the link) is not part of any "commentary" about Jones Day.

Defendants' citation to the Illinois Reporter's Privilege statute (735 ILCS 5/8-901 *et seq*.) does nothing to resurrect their otherwise defective arguments. The purpose of the Illinois Reporter's Privilege statute is to protect reporters from having to divulge their sources. Defendants cite no authority for the proposition that the Illinois Reporter's Privilege statute's definition of "news medium" is somehow relevant to the application of the Federal dilution statute. Defendants also misrepresent *Bidzirk* on this point. In *Bidzirk*, the Report of Magistrate Judge (attached to Def.'s Mot. to Dismiss) was principally concerned with whether Smith held

the status of a "journalist," an inquiry the parties in this case agree is irrelevant.  (*See* Def.'s Mot. to Dismiss at 9 ("content, rather than format")).  The district court did not consider this subject relevant either, and declined to discuss the South Carolina shield law in its decision.  *See Bidzirk*, 2007 WL 3119445.  The Illinois Reporter's Privilege statute therefore has no bearing on whether the Defendants' conduct is excused by the "news reporting and news commentary" exception.

Finally, whether Defendants' acts fall under the "news reporting and news commentary" exception is, like all "fair use" defenses, an issue of fact.  *See KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 608-09 (9th Cir. 2005) ("There are genuine issues of fact that are appropriate for the fact finder to determine in order to find that the defense of fair use has been established."); *Cortland Line Co. v. The Orvis Co.*, No. 97-CV-1294, 1997 WL 808608, at *4 (N.D.N.Y. Jan. 5, 1997) ("[D]efenses such as the fair use doctrine involve a more detailed analysis of the facts at issue and are best resolved by summary judgment motions or adjudication at trial.").

### E.    Defendants' Use of the Jones Day Marks is Not Nominative Fair Use.

The nominative fair use defense also provides no refuge for Defendants' unlawful acts. First, unless the elements of an affirmative defense are evident on the face of the Complaint, a motion to dismiss is not appropriately decided on such a defense.  *United States Gypsum Co.,* 350 F.3d at 626.  Nothing in the Amended Complaint suggests that the elements required to prove nominative fair use (even if that doctrine is recognized) exist.[6]  Second, nominative fair use requires a factual analysis entirely unsuitable for resolution by a motion to dismiss.

---

[6] The Seventh Circuit has never recognized the nominative fair use doctrine, although three cases in this district have applied it.  *See RJ Reynolds Tobacco Co. v. Premium Tobacco Stores, Inc.*, No. 99 C 1174, 2001 WL 747422 (N.D. Ill. June 29, 2001); *World Impressions, Inc. v. McDonald's Corp.*, 235 F. Supp. 2d 831 (N.D. Ill. 2002); *Ty, Inc. v. Publ'n Int'l, Ltd.*, No. 99 C 5565, 2005 WL 464688 (N.D. Ill. Feb. 25, 2005).

To employ the nominative fair use defense, Defendants must prove all of the following: (1) the product or service in question must be one not readily identifiable without use of the mark; (2) only so much of the mark was used as was reasonably necessary to identify the product or service; and (3) the Defendants did absolutely nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. *New Kids on the Block v. New Am. Publ'g, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992).

Defendants cannot prove any element of the nominative fair use test. First, Defendants can easily identify Jones Day (as Messrs. Teidt and Malone's employer, or for any other reason) without resort to using the Jones Day Marks by linking to the Jones Day web site. (Simply using the words "Jones Day" in the text of their web site does the trick). Defendants' statement that "using a general description like 'large international law firm with a Chicago office'" would not suffice misses the mark entirely (*see* Def.'s Mot to Dismiss at 12), and highlights Defendants' misunderstanding as to that which is lawful, and that which is unlawful. Jones Day is not baldly objecting to the use of "Jones Day" in a truthful manner as the employer of certain individuals. Jones Day is not claiming that it can never be referred to as a law firm by the name of Jones Day. What Jones Day is objecting to is Defendants' unlawful use of deep links to Jones Day's web site (*see* Am. Compl., ¶¶ 24, 25, 28), which displays the Jones Day Marks. Defendants certainly do not need to link to the Jones Day web site, in any manner, to communicate that Messrs. Teidt and Malone work for Jones Day. Therefore, Defendants fail the first part of the nominative fair use test.

Second, Defendants are using more of the Jones Day Marks than is "reasonably necessary," for whatever lawful purpose they may have. As noted above, Defendants need not use the Jones Day Marks, in any manner, to provide content about matters related to Jones Day,

or its employees' real estate purchases and sales. Yet Defendants have gone far beyond what is "reasonably necessary," and instead diluted Jones Day's Marks. *See World Impressions*, 235 F. Supp. 2d at 843 (denying plaintiff's motion for summary judgment on defendant's counterclaim of dilution and holding: "[b]y using the stylized form of the word 'Disneyland' and the castle design, rather than a plain rendition of the word 'Disneyland,' plaintiff does more than simply identify Disneyland's location on a map. Instead it implies that Disney sponsored or endorsed its maps.").

Third, Defendants are using the Jones Day Marks in a manner that suggests sponsorship or endorsement by Jones Day. (*See* Am. Compl., ¶ 28). As noted in more detail herein, Defendants' use of deep, embedded links to the Jones Day web site creates a likelihood that users will be confused as to the affiliation of Jones Day with the Defendants' business. (*See id.*, ¶¶ 38, 44, 61, 67). Likelihood of confusion is a probative factor in determining whether a defendant's use of a plaintiff's mark "suggest[s] sponsorship or endorsement" by the plaintiff. *See Ty, Inc*. 2005 WL 464688, at *8. *See also RJ Reynolds*, 2001 WL 747422, at *5-6 (granting a motion to strike because existence of likelihood of confusion precluded nominative fair use).

Defendants' statement that "deep-links certainly is not enough" to suggest sponsorship or endorsement (*see* Def.'s Mot. to Dismiss at 12) is not only unsupported, it is wrong. *See Courtenay Communications Corp. v. Hall*, 334 F.3d 210, 214 n.1 (2d Cir. 2003) (reversing district court's dismissal of plaintiff's complaint, noting "the hyperlink connection to a page of endorsements 'suggests affiliation, sponsorship, or endorsement by' CCC."). Thus, Defendants' nominative fair use defense fails on all fronts.

Defendants also neglect to mention that courts consistently refuse to engage in a nominative fair use analysis at the motion to dismiss stage because each of the factors presents

factual questions that cannot be answered on the pleadings alone.  The most recent case in this district addressing nominative fair use denied a defendant's motion for summary judgment for this reason.  *See Ty, Inc.* 2005 WL 464688, at *9 ("[W]hether the extent of PIL's use of Ty's mark to describe its products was reasonable is a question of fact.").  Courts in other circuits agree that the nominative fair use factors present inescapable fact issues.  *See Merck & Co. Inc. v. Mediplan Health Consulting, Inc.* 425 F. Supp. 2d 402, 414 (S.D.N.Y. 2006) ("[T]he third element of the nominative fair use defense requires that the use of the trademark not create a likelihood of confusion as to the mark-holder's sponsorship, endorsement or affiliation…. [T]he existence of consumer confusion necessitates focusing on 'the minds of the relevant purchasers – an analysis based on a factual inquiry inappropriate to a motion to dismiss.'") (citations omitted); *Yeager v. Cingular Wireless LLC*, No. CIV. S-07-2517 FCD GGH, 2008 WL 2413167, at *6 (E.D. Cal. June 12, 2008) ("[T]he court cannot find as a matter of law that defendant's reference to plaintiff in the publication makes no suggestion of sponsorship or endorsement by the plaintiff.").  The nominative fair use defense is not appropriately resolved on a motion to dismiss.

### F.  Likelihood Of Confusion Is A Question Of Fact.

Defendants' sole argument in support of the dismissal of Counts I (Federal Service Mark Infringement), II (Federal False Designation of Origin), IV (Illinois Statutory Unfair Competition) and V (Illinois Common Law Infringement and Unfair Competition) is that Jones Day has failed to properly allege a likelihood of confusion.[7]  While likelihood of confusion is at issue in these claims, Jones Day "need not prove either defendants' use or likelihood of

---

[7]  In connection with Defendants' likelihood of confusion arguments, they argue that these Counts can be dismissed based upon the doctrine of nominative fair use.  As set forth in Sections III.A and III.E, that "defense" is not a basis upon which to grant Defendants' Motion.

confusion now – both are questions of fact to be determined at a later stage." *Papa John's,* 446 F. Supp. 2d at 807.

Defendants are asking this Court to make a factual determination as to whether or not their use of the Jones Day Mark gives rise to any likelihood of confusion. Such an undertaking on a motion to dismiss is wholly inappropriate. The unambiguous law of this Circuit is that "the question of likelihood of confusion is all fact and no law." *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F.2d 1423, 1428 (7th Cir. 1985). Thus, the authority in this District is plain; likelihood of confusion cannot be decided on a motion to dismiss. *Vulcan Golf*, 552 F. Supp. 2d at 769; *Bobak Sausage Co. v. A&J Seven Bridges, Inc.*, No. 07 C 4718, 2008 WL 4181744, *8 (N.D. Ill. Sept. 5, 2008); *Aguila Records v. Federico*, No. 07 C 3993, 2007 WL 2973832, *2 (N.D. Ill. Oct. 10, 2007); *Triple Canopy, Inc. v. Moore*, No. 04 C 3265, 2005 WL 1629768, *11 (N.D. Ill. July 1, 2005). The sole inquiry is whether Jones Day alleges that there is a likelihood of confusion between Defendants' use of "Jones Day" and the Jones Day Marks. *Papa John's*, 446 F. Supp. 2d at 807; *McDonald's Corp. v. Gunville*, 441 F. Supp. 71 (N.D. Ill. 1977) (holding that the allegation that the defendant "is causing and is likely to cause confusion and mistake, as well as to deceive purchasers and the public" was sufficient to state a claim under the Lanham Act). The answer to that question is a resounding yes. (Am. Compl., ¶¶ 13-16, 22-25 and Ex. D).

None of the authority cited by Defendants dictates a different result. Defendants cite to *Ticketmaster Corp. v. Tickets.com, Inc.*, 2003 WL 21406289 (C.D. Cal. 2003) for the proposition that the presence of a link on a web site as a matter of law does not give rise to likelihood of confusion. (Def.'s Mot. to Dismiss at 18). Reliance on *Ticketmaster* is misplaced. The court in *Ticketmaster* was addressing the functionality of a URL in connection with a copyright claim, not infringement and dilution claims. Nothing in *Ticketmaster* stands for the proposition that

Defendants may use the Jones Day Marks and link to the Jones Day web site to increase traffic to their site, or for any other purpose. Similar trademark use has been the subject of successful Lanham Act claims. *See*, *e.g.*, *Promatek Industrial, Ltd. v. Equitrac Corp.*, 300 F.3d 808, 812 (7th Cir. 2002) (holding that imbedded use of a trademark behind a web page usurps the goodwill associated with the trademark); *Playboy Enterprises, Inc. v. Netscape Communications Corp.*, 354 F.3d 1020, 1029 (9th Cir. 2004) (holding that a genuine issue of fact existed as to likelihood of confusion where the trademark was used in on a list of pre-identified terms that were linked to certain advertisements); *N. Am. Medical Corp. v. Axiom Worldwide, Inc.*, 522 F.3d 1211, 1219-1220 (11th Cir. 2008) ("Under the plain meaning of the language of the statute, such use [of trademarks in metatags] constitutes a use in commerce in connection with the advertising of any goods.").

Notwithstanding seven pages of discussion devoted to the "issue" of confusion, Defendants cite only one case from any court in this Circuit which granted a motion to dismiss on the issue of likelihood of confusion. *Segal v. Geisha NYC LLC*, 517 F.3d 501 (7th Cir. 2008). In *Segal*, the United States Court of Appeals for the Seventh Circuit affirmed dismissal of the claims because attached to the complaint was an agreement between the parties authorizing the defendant's use of the trademark in question. No such agreement exists in this case. Indeed, Jones Day asserts that it never authorized Defendants' use of its marks. (Am. Compl., ¶¶ 27, 34, 39 and 45).

Indeed, so desperate for any authority to support their position, Defendants cite to *Autozone, Inc. v. Strick*, 466 F. Supp. 2d 1034 (N.D. Ill. 2006), a case in which the district court granted summary judgment on the issue of likelihood of confusion. (Defendants' Motion to Dismiss at 16). However, the United States Court of Appeals for the Seventh Circuit reversed

that decision, holding "that question of fact [i.e. likelihood of confusion] may be resolved on summary judgment only 'if the evidence is so one-sided that there can be no doubt about how the question should be answered.'" *AutoZone, Inc. v. Strick*, No. 07-2136, 2008 WL 4173019, *3 (7th Cir. Sept. 11, 2008) (citations omitted). Defendants have failed to cite to a single authority from this Circuit which supports their Motion to Dismiss.[8] The reason for their omission is obvious, there is none.

Jones Day has alleged that "Defendants' use of the Jones Day Marks, in connection with their real estate advertisement scheme, is likely to deceive and cause confusion and mistake among customers as to the source or origin of the services provided or offered for sale by Defendants and the affiliation of Jones Day with those services and/or the sponsorship or endorsement of those services by Jones Day." (Am. Compl., ¶ 38; *See also id.*, ¶¶ 25-29, 44, 61 and 67). Under the relevant and binding authority, these allegations are sufficient to state a claim. Thus, Counts I, II, IV and V of the Amended Complaint should not be dismissed.

### G. Defendants Timpone and Weinhaus Can Be Individually Liable for the Unlawful Acts of Blockshopper LLC.

Jones Day does not need to pierce the corporate veil for Defendants Timpone and Weinhaus to be personally liable for their unlawful acts. Jones Day alleges sufficient facts to state a claim that Defendants Timpone and Weinhaus may be individually liable by personally directing and overseeing the unlawful acts detailed in the Amended Complaint.

Defendants spend much of their Motion bemoaning Jones Day's alleged efforts to pierce the corporate veil of Defendant Blockshopper LLC. By naming Defendants Timpone and

---

[8] Defendants' reliance on *Knight-McConnell v. Cummins*, No. 03 Civ. 5035, 2004 WL 1713824 (S.D.N.Y. July 29, 2004) is of no moment, either. In *Knight-McConnell*, the defendant linked to the plaintiff's web site as part of an ongoing criticism of the plaintiff. The court, noting the unique circumstances of the case, found that such linking would not give rise to a claim because the defendant, rather than attempting to use the goodwill of the plaintiff, was "continuously disassociating herself from plaintiff by criticizing her and accusing her of misconduct."

Weinhaus in this action, Jones Day is doing nothing of the sort. Indeed, it is well-settled that "[i]f an individual actively and knowingly caused the trademark infringement, he is personally responsible. Specifically, a corporate officer who directs, controls, ratifies, participates, or is the moving force behind the infringing activity, is personally liable for such infringement *without regard to piercing the corporate veil*." *Babbit Electronics, Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1184 (11th Cir. 1994) (emphasis added). *See also Lambert v. Kazinetz*, 250 F. Supp. 2d 908, 915 (S.D. Ohio 2003) (holding that "Kazinetz cannot shield himself from liability for the conduct in which he allegedly engaged merely because he engaged in that conduct as a corporate officer; the fact that the Plaintiffs may not be able to pierce the corporate veil is irrelevant to the issue of Kazinetz's personal liability for his own conduct.").

Courts in this district therefore analyze whether a defendant is individually liable without regard to whether the corporate veil is pierced. *See, e.g., Sparks Tune-Up Centers, Inc. v. Panchevre*, No. 90 C 4369, 1992 WL 211029, at *6 (N.D. Ill. Aug. 21, 1992); *Piaggio & C.S.P.A. v. Scooterworks USA, Inc*., No. 98 C 7573, 1999 WL 674749, at *6 (N.D. Ill. Aug. 23, 1999); *For Your Ease Only, Inc. v. Calgon Carbon Corp*., No. 02 C 7345, 2003 WL 21475905, at *2-3 (N.D. Ill. June 20, 2003). As such, this Court need not entertain whether the corporate veil is pierced for Timpone and Weinhaus to be named as defendants in this case.

Based on the information available on Defendants' website, Defendants Timpone and Weinhaus directed, controlled, and willfully operated Defendants' web site which facilitates Defendants' infringing, dilutive, and deceptive acts. Defendants correctly cite *Dangler v. Imperial Machine Co*., 11 F.2d 945, 947 (7th Cir. 1926) as the original case requiring a "special showing" to hold an individual personally liable for the acts of a corporate entity, but fail to mention that recent case law in this district construed *Dangler* to apply only to evidentiary

matters, not to pleadings standards.  In *Do It Best Corp. v. Passport Software, Inc*., No. 01 C 7674, 2004 WL 1660814 (N.D. Ill. July 23, 2004), the plaintiff sought to dismiss the defendant's (PSI) counterclaims against an individual for copyright infringement.  The plaintiff claimed that a "special showing" was needed pursuant to *Dangler*, but the court resisted, stating:  "In the court's view, a requirement that, at the pleadings stage, PSI must make a further 'special showing' of participation in copyright infringement would go beyond the requirements of Rule 8(a)(2)."  *Id*. at *15.  In denying the motion to dismiss, the court further noted:  "Indeed, the *Dangler* decision did not involve application of Rules 8 or 12(b)(6), as the Federal Rules of Civil Procedure were adopted 14 years after *Dangler* was decided.  Thus, *Dangler* arguably sets forth an evidentiary standard, rather than a heightened pleading requirement…"  *Id*. ("*Dangler* apparently involved a judgment on the merits, rather than a motion to dismiss.").

Even if it is relevant to the pleadings stage, *Dangler* does not dictate that the Amended Complaint be dismissed.  Courts in this district, prior to *Do It Best*, found the requisite "special showing" in situations bearing facts closely similar to this case.  For example, in *Piaggio*, 1999 WL 674749, at *6, the complaint alleged that the individual defendant, McCaleb, was the president of the corporate defendant, Scooterworks; that McCaleb personally participated in the alleged acts of infringement occurring on Scooterworks' web site; and that McCaleb's conduct was willful.  The court denied the defendants' motion to dismiss claims of individual liability, noting that the plaintiff had alleged facts showing McCaleb to be a "controlling officer of Scooterworks [who] personally participated in the allegedly infringing activities."  *Id*. at *6 n.7.  On this basis, the court expressly distinguished *The Drink Group, Inc. v. Gulfstream Communications, Inc*., 7 F. Supp. 2d 1009 (N.D. Ill. 1998) which is also cited by Defendants.

Other decisions from this district reveal a similar result. *See, e.g., Cooper Indus., Inc. v. Juno Lighting, Inc.*, 1 U.S.P.Q. 2d 1313, 1314 (N.D. Ill. 1986) (denying defendant's motion to dismiss where individual defendant (Fremont) was the "moving force" behind Juno's allegedly infringing activities as the founder and majority shareholder of Juno); *Sethness-Greenleaf, Inc. v. Green River Corp.*, Nos. 89-C-9203, 91-C-4373, 1994 WL 67830, at *7 (N.D. Ill. Feb. 11, 1994) (granting summary judgment on the plaintiff's Lanham Act claims, and stating: "[a]n individual, including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, or who personally participates in that activity, is personally liable for the infringement."); *Peaceable Planet, Inc. v. Ty, Inc.*, 185 F. Supp. 2d 893, 896-97 (N.D. Ill. 2002) (Darrah, J.) (denying defendant's motion to dismiss where the individual defendant (Warner), as president of Ty, held ultimate oversight, approval, authorization, and marketing responsibilities).

Jones Day's Amended Complaint states a claim for individual liability of Timpone and Weinhaus. As stated in paragraph 20: "Defendants Weinhaus and Timpone co-founded, registered and own the internet web site located at the domain www.blockshopper.com." Paragraph 21 of the Amended Complaint further states: "Defendants Weinhaus and Timpone use the [Defendants'] Web Site to operate the Defendant business Blockshopper.com." Timpone and Weinhaus' personal involvement with the content of Blockshopper.com is corroborated by the web site itself. Timpone's email address (brian@blockshopper.com) is listed as the contact for "Media, Advertising & Business Dev.," while Weinhaus' email address (eddie@blockshopper.com) is likewise listed as the manner to contact Defendants about "advertising and sponsorship." (*See* Am. Compl., Ex. C). Defendants' web site further identifies Timpone and Weinhaus as the founders of Blockshopper.com. (*See id.*). Jones Day further

alleges that all Defendants acted willfully in infringing and diluting the Jones Day Marks. (*See id.*, ¶¶ 47-49). Taking all facts and allegations in a view most favorable to Jones Day, the Amended Complaint alleges a basis upon which to hold Timpone and Weinhaus personally liable: they are the "moving force" behind Blockshopper.com's operations, and have oversight, control and direction over its content, which includes the unlawful use of the Jones Day Marks.

Jones Day's allegations that Timpone and Weinhaus are the "moving force" behind Blockshopper.com is buttressed by the fact that nowhere on Defendants' web site is "Blockshopper LLC" referred to or mentioned, even in passing. Only Timpone and Weinhaus are listed as contacts for Blockshopper.com — therefore, Timpone and Weinhaus are holding themselves out as the principal decision-makers of the web site. From the standpoint of a user viewing the Blockshopper.com pages attached to the Amended Complaint (*see* Ex. C), Timpone and Weinhaus are not only the "moving force" behind Defendants' web site, they are the only participants directing and controlling it.

## IV.    CONCLUSION

There can be little doubt that the Amended Complaint contains the requisite short and plain statement of facts sufficient to demonstrate that Jones Day is entitled to relief.  Moreover, neither the news reporting and news commentary exception, nor nominative fair use defense, operates to bar Jones Day's claims.  Finally, fact issues abound, making resolution without discovery and factual analysis entirely inappropriate.  For the foregoing reasons, Defendants' Motion should be denied.


Dated:  October 3, 2008                          Respectfully submitted,


By: /s/ *Paul W. Schroeder*
    Paul W. Schroeder
    pwschroeder@jonesday.com
    Irene S. Fiorentinos
    ifiorentinos@jonesday.com
    Brent P. Ray
    bpray@jonesday.com
    JONES DAY
    77 West Wacker Drive, Suite 3500
    Chicago, Illinois 60601-1692
    Telephone:  (312) 782-3939
    Facsimile:  (312) 782-8585

    Meredith M. Wilkes
    mwilkes@jonesday.com
    James W. Walworth Jr.
    jwalworth@jonesday.com
    JONES DAY
    North Point
    901 Lakeside Avenue
    Cleveland, Ohio 44114
    Telephone:  216-586-3939
    Facsimile:  216-579-0212

## CERTIFICATE OF SERVICE

I hereby certify that on October 3, 2008, I electronically filed the foregoing Opposition to Defendants' Motion to Dismiss with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following at their e-mail address on file with the Court:

Martin B. Carroll
mcarroll@fhslc.com
Daniel S. Hefter
dhefter@fhslc.com
Tracy Katz Muhl
tkatz@fhslc.com
Adam A. Hachikian
ahackikian@fhslc.com
FOX, HEFTER, SWIBEL, LEVIN & CARROLL LLP
200 West Madison Street, Suite 3000
Chicago, Illinois 60606
Phone: 312-224-1230
Attorneys for Defendants


*/s/ Paul W. Schroeder*
One of the Attorneys for Jones Day