IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JONES DAY, <br> a General Partnership, <br><br>   Plaintiff, <br><br> v. <br><br> BLOCKSHOPPER, LLC, d/b/a <br> Blockshopper.com, a Missouri Limited <br> Liability Corporation, BRIAN TIMPONE, <br> d/b/a Blockshopper.com, an individual, and <br> EDWARD WEINHAUS, d/b/a <br> Blockshopper.com, an individual, <br><br>   Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 08 CV 4572 <br> ) Judge John Darrah <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION TO DISMISS AMENDED COMPLAINT**

Jones Day's Opposition to Defendants' Motion to Dismiss ("Pls. Opp.") is aptly summarized by its recurring theme – BlockShopper's use of the mark JONES DAY, in combination with a link to a Jones Day web page, is infringing and diluting *because we say so*. Never mind that *Knight-McConnell v. Cummins*, No. 03 Civ. 5035 (NRB), 2004 WL 1713824, *2 (S.D.N.Y. Jul. 29, 2004) held that "a hyperlink… will not lead a web user to conclude… associat[ion] with… the linked site." Never mind that Plaintiff's Exhibits show that Blockshopper.com is an independent real estate news site, reporting on and linking to dozens of different employer web pages, belying any confusion with Jones Day. Never mind that, by analogy, Jones Day's Amended Complaint means that, for example, *The Chicago Tribune* infringes upon and dilutes the trademark FOUR SEASONS, by writing an article naming the Four Seasons and its web site, www.fourseasons.com.[1] The pleadings rules are liberal, but not this liberal.

---

[1] While this example works as a hypothetical, this Court may take judicial notice of newspapers on a Motion to Dismiss under Federal Rule of Evidence 201, and see that *The Chicago Tribune* reports countless web addresses of

Plaintiff seeks refuge in Federal Rule of Civil Procedure 8, pleading that it "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the… claim is and the grounds upon which it rests.'" (Pls. Opp. p. 3, citing *Bell Atl. Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007)). But Plaintiff ignores, as this very Court stressed after citing the exact same language, that Plaintiff's allegations must also "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level;' if they do not, the plaintiff pleads itself out of court." *WMH Tool Group, Inc. v. Woodstock Int'l, Inc.*, No. 07 C 3885, 2007 WL 4117738, *2 (N.D. Ill. Nov. 14, 2007) (J. Darrah) (citation omitted).[2] Here, Plaintiff has done nothing more than incant legal conclusions, even though the Amended Complaint and Exhibits rule out any infringement or dilution.

I. **JONES DAY'S OWN ALLEGATIONS AND EXHIBITS ESTABLISH THE GROUNDS FOR DISMISSAL.**

Plaintiff does not challenge a single statement in BlockShopper's facts, nor could it, since these facts are taken directly from Jones Day's own Amended Complaint and Exhibits. As it must, Jones Day accepts BlockShopper's description of its news stories, the many companies named and linked therein, and the vast journalistic experience of co-founder, Brian Timpone. Jones Day also does not dispute that this Court may independently examine and form its own opinions about the web page exhibits, and that those web pages control, where the allegations are in conflict.

In light of those facts, Jones Day is shockingly silent. The Amended Complaint and Exhibits could be read to allege two equally impossible alternative factual theories – 1) that BlockShopper has somehow confused readers into believing it is selectively affiliated with and diluting the marks of only Jones Day, despite comparable content for many other companies, or 2)

---

trade and service mark owners in this year alone, including the above example (10/5/08 Chi. Trib. 1, 2008 WL 18931082). *Buck v. Lake County Sheriff*, No. 03 C 1740, 2004 WL 2983966, n. 4 (N.D. Ill. Dec. 23, 2004) (taking judicial notice of newspaper article) citing *Palay v. U.S.*, 349 F.3d 418, 425 n. 5 (7th Cir. 2003).

[2] Unpublished decisions are attached hereto as Group Exhibit A.

that BlockShopper is affiliated with (and dilutes the marks of) every single company whose employees are reported upon alongside a hyperlink on the site. Jones Day dodges this no-win question because neither theory is tenable. Instead, Jones Day piles on distinguishable cases and legal conclusions, divorced from the facts in its very own Exhibits, hoping it can distract enough attention from the implausibility of its claims to survive the motion to dismiss. This tactic must fail.

## II. JONES DAY HAS NOT PLED DILUTION.

Jones Day's response on dilution is four-fold. It argues incorrectly that: 1) BlockShopper requests factual findings improper on a motion to dismiss, 2) both blurring and tarnishment are fully pled, 3) nominative fair use is an affirmative defense, inapplicable at this stage, and 4) the news reporting and commentary exclusion does not apply. None of the arguments bears any weight.

### A. BlockShopper Does Not Ask for Any Factual Findings.

Jones Day repeatedly asserts that BlockShopper asks this Court to "decide complex issues of fact," without ever identifying any disputed or unclear facts. (Pls. Opp. pp. 4-5.) The parties do not dispute the facts of the Amended Complaint and Exhibits, only the legal conclusions therefrom.

Jones Day's cited cases, purportedly for the idea that fact-intensive dilution cases "routinely resis[t] motions to dismiss," are not even all dismissal cases, deal with fact disputes absent here, or, at a minimum, present plausible claims.[3] None of its cases resembles this case, where the facts of BlockShopper's news reports and their utterly unconfusing nature are laid out on the face of the Amended Complaint and Exhibits. Plaintiff's reference to "complex fact issues" is a red herring, meant to shy this Court away from finding that its claims are impossible based upon the facts pled.

---

[3] Pls. Opp. p. 5; *Lucent Techs., Inc. v. Johnson*, 56 U.S.P.Q.2d 1637, 1639 (C.D. Cal. 2000) (*cybersquatting* claim for www.lucentsucks.com is mixed question of fact and law unsuitable for dismissal, while tarnishment claim for pornographic content alleged sufficient facts); *Cairns v. Franklin Mint Co.*, 24 F. Supp. 2d 1013, 1036 (C.D. Cal. 1998) (questions of fact if Princess Diana's name had "secondary meaning" and, if so, whether use of mark on jewelry, plates, and dolls would be dilution); *Avery Dennison Corp. v. Sumpton*, 189 F.3d 868, 881 (9th Cir. 1999) (reversing permanent injunction; questions of fact on cybersquatting and tarnishment claims where defendant used "avery.net" and dennison.net" within list of lewd names to sell email addresses); *Nat'l Bd. for Cert. in Occ. Therapy, Inc. v. Am. Occ. Therapy Assoc.*, 24 F. Supp. 2d 494, 510 (D. Md. 1998) (denying summary judgment; questions of fact if mark transferee's recertification program requiring occupational therapists to disclose illegal behavior *would dilute marks*).

B.   **Jones Day Has Not Pled Blurring Sufficiently and Tarnishment at All.**

   1. **Blurring is not pled.**

For blurring, Jones Day concedes that it must plead that BlockShopper's "use of the mark is likely to cause dilution," 15 U.S.C. § 1125(c)(1), but its allegations are contradicted and conclusory:

> 28.   Use of the Jones Day Marks, the links to the Jones Day web site and the use of proprietary information from the Jones Day web site creates the false impression that Jones Day is affiliated with and/or approves, sponsors or endorses the business conducted by the Defendants. Such an impression is false and disparages Jones Day and the Jones Day Marks....
> 55-57. Defendants' use of the Jones Day Marks is diluting and blurring... is disparaging the distinctiveness of the Jones Day Marks, [and] ha[s] diluted the famous Jones Day Marks.

(Pls. Opp. pp. 5, 15.) Plaintiff has felled these very allegations. Jones Day concedes that BlockShopper was free to use JONES DAY to identify it as Tiedt and Malone's employer, and to use all of the "publically-available information" on the property sales and their backgrounds. (Pls. Opp. pp. 10, 13.) That leaves Jones Day with just the hyperlink, which cannot support its claim.

All of the linking cases side with BlockShopper and against infringement or dilution. *Knight-McConnell*, *2 ("hyperlink... will not lead a web user to conclude... associate[ion] with... linked site"); *BidZirk v. Smith*, No. 6:06-109-HMH, 2007 WL 3119445, *1 (D.S.C. Oct. 22, 2007) (news use of *BidZirk* mark and link not dilution); *Ticketmaster Corp. v. Tickets.com, Inc.*, No. CV 997654, 2003 WL 21406289, *5 (C.D. Cal. Mar. 7, 2003) (link "is simply an address," not basis for copyright infringement claim). With all the factual allegations undone, the empty legal conclusions fall flat, and the blurring claim must be dismissed.

   2. **Tarnishment is not pled.**

As for the tarnishment claim, Jones Day simply has not pled it.[4] Neither "tarnishment" nor its statutory section, 15 U.S.C. § 1125(c)(2)(C), appear in the Amended Complaint. Though Jones Day concedes that "[d]ilution by tarnishing occurs when a junior mark's similarity to a famous

---

[4] BlockShopper only asks that all claims be pled, not that Jones Day must elect blurring *or* tarnishment.

mark causes consumers to mistakenly associate the famous mark with the defendant's inferior or offensive product," that is never pled. (Pls. Opp. p. 8); *Eli Lilly & Co. v. Natural Ans., Inc.*, 233 F.3d 456, 466 (7th Cir. 2000). BlockShopper, the junior user, uses the BLOCKSHOPPER.COM, which is completely dissimilar from Jones Day's allegedly famous JONES DAY. Plus, Jones Day omits the required allegation that BlockShopper's site is "inferior" or "offensive:"

> [T]arnishment... generally arise[s]..."in the contest of sexual activity, obscenity or illegal activity...." [S]ome courts have gone farther and recognized tarnishment where "a... trademark is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context likely to evoke unflattering thoughts...

*Planet Hollywood, Inc. v. Hollywood Casino Corp.*, 80 F. Supp. 2d 815, 904-05 (N.D. Ill. 1999) (citations omitted). See also *Kraft Food Holdings, Inc. v. Helm*, 205 F. Supp. 2d 942 (N.D. Ill. 2002) (KING VELVEEDA with sexual site content likely to dilute VELVEETA); *Classified Ventures, LLC v. Softcell Mktg, Inc.*, 109 F. Supp. 2d 898 (N.D. Ill. 2000) (false return address stione@cars.com on pornographic site diluted CARS.COM); *Papa John's Int'l, Inc. v. Rezko*, 446 F. Supp. 2d 801, 808 (N.D. Ill. 2006) (Pls. Opp. p. 8) (former franchisee's PAPA TONY'S on "inferior" pizzas could dilute PAPA JOHN'S). Jones Day has not pled anything unsavory or shoddy, nor could it, in light of its Exhibits. To the contrary, it argues at length (though wrongly) that BlockShopper's stories are not excluded as news because they are not negative. (Pls. Opp. pp. 9-11.) Accordingly, Jones Day has not and cannot plead tarnishment.

### 3. Jones Day admits it does not plead traditional dilution claims.

Jones Day's assertion that BlockShopper fundamentally misunderstands the dilution statute is simply false. (Pls. Opp. p. 5.) Unquestionably, a traditional dilution claim arises from "the erosion of distinctiveness and prestige of a trademark caused by the sale of *other goods and services under the same name.*" *Illinois High Sch. Ass'n v. GTE Vantage, Inc.*, 99 F.3d 244, 247 (7th Cir. 1996). Reading the Amended Complaint, BlockShopper believed Jones Day made this claim, albeit insufficiently. Jones Day now clarifies that, as with its infringement claim, it is pursuing an atypical

5

form of dilution, where even though Jones Day and BlockShopper use completely different marks on completely different services, BlockShopper is still somehow diluting the ability of JONES DAY to identify its legal services.

While Jones Day claims "several courts" have found dilution in these odd circumstances, it cites only one completely dissimilar case. In *Liquid Glass Enters., Inc. v. Dr. Ing h.c.F. Porsche AG*, 8 F. Supp. 2d 398, 405 (D.N.J. 1998), the court granted a preliminary injunction, finding that defendant's print ad, featuring a provocatively-clad woman polishing a Porsche, and its trade show video, cutting from a Porsche to a "naked woman taking a shower," was likely to infringe and dilute Porsche's marks. Defendant claimed the video was PG-13 and not "tasteless or degrading" enough to be tarnishment. *Id.* The court responded that defendant's use could still be blurring, even if not tarnishing, because it would "demean" the Porsche "cachet" and "blu[r] the value" of the famous mark. *Id.* In essence, that court found a use might be blurring when it was "demeaning," but not downright unwholesome enough to be traditionally tarnishing.

Nothing in *Porsche* resembles this matter. There is nothing demeaning, blurring, or tarnishing about accurately reporting Tiedt and Malone's real estate purchases or linking to Jones Day's site. Surely Jones Day does not suggest that its associates activities are unsavory or shoddy. To the contrary, the stories suggest these associates are doing quite well financially. These being the facts, it is impossible that Jones Day's marks are blurred or tarnished in any manner.

### 4. BlockShopper does not intentionally associate itself with Jones Day.

Jones Day's argument that BlockShopper uses JONES DAY along with a link to "create the false impression that Jones Day is affiliated with and/or approves, sponsors or endorses" BlockShopper is legally flawed. (Pls. Opp. p. 6); *Knight-McConnell*, *2 ("hyperlink… will not lead a web user to conclude… associate[ion] with… linked site"). The Exhibits C and D reveal that BlockShopper intended to report upon, not associate itself with, the associates of Jones Day.

Plaintiff's only citation to the contrary is *Vulcan Golf, LLC v. Google, Inc.*, 552 F. Supp. 2d 752, 774 (N.D. Ill. 2008), a case that does nothing to counter *Knight-McConnell*. In *Vulcan Golf*, plaintiff claimed its mark VULCAN GOLF, used in www.vulcangolf.com, was diluted by defendants' www.volcangolf.com, www.vulcanogolf.com, and the like. *Id.* While it is easy to see why those addresses would cause users to "mistakenly assume that the defendants' web pages are associated with" the plaintiff, deliberate passing off is never pled nor possible here. (Pls. Opp. p. 6.)

BlockShopper makes quite clear to readers when they are on a BlockShopper page and when they are not. Each BlockShopper pages features a www.blockshopper.com address and the mark BLOCKSHOPPER.COM. (Am. Compl. Ex. C.) By comparison, when readers click the Tiedt or Malone links, they reach the pages in Plaintiff's own Exhibit D, with a www.jonesday.com address, headed "Jones Day – Professionals," and with the stylized JONES DAY mark and catch-phrase "One Firm Worldwide." With all this notice, established in Plaintiff's very own Exhibits, there is no question who hosts which page and, as the linking case law shows, the link itself does not lead to an association. *Knight-McConnell*, *2. Hence, Jones Day's claims must be dismissed.

### 5. BlockShopper's use of advertisements to support its newspaper does not make its use of the mark in its news stories dilution.

Finally, in a theme rampant in Jones Day's brief, it argues that BlockShopper's advertising converts its news stories into dilution. (Pls. Opp. p. 7.) It writes: "Nothing on Defendants' web site advises… whether an entity named on the web site is there because it is an advertiser or because it is a sponsor or because it is an entity that has no affiliation to BlockShopper.com…" *Id.*

Nothing could be further from true. Take the BlockShopper.com home page. (Am. Compl. Ex. C, p. 2.) In the upper right corner, beside BLOCKSHOPPER.COM, is an ad for "Lucid Realty." *Id.* On the left side of the page, in three spots between story abstracts, in smaller distinct font, are pairs of "Ads by Google." *Id.* The Tiedt and Malone article pages also display the Lucid Realty ad. (Am. Compl. Ex. D.) Looking at these pages, Jones Day's claim that readers need

"advisement" about what is an ad versus a story is plainly false. No reader could confuse the Lucid Realty ad or the Ads by Google with the stories, nor believe the relationship between Lucid Realty and BlockShopper indicated that there was a relationship with Jones Day. If Jones Day really wanted to press this incredible argument, it should not have attached the web pages proving it false.

C.     **BlockShopper Made a Nominative Fair Use of Jones Day.**

Jones Day urges the Court to believe that because nominative fair use is an affirmative defense, now incorporated into the anti-dilution statute as an exclusion, it cannot be decided on a motion to dismiss. (Pls. Opp. p. 12.) Even Plaintiff's own case disagrees. Where, as here, Jones Day's allegations and incorporated Exhibits unequivocally show a nominative fair use, this Court must dismiss. *U.S. Gypsum Co. v. Indiana Gas Co.*, 350 F.3d 623, 626 (7th Cir. 2003) ("A litigant may plead itself out of court by alleging (and thus admitting) the ingredients of a defense"); *Merck & Co., Inc. v. Mediplan Health Consulting, Inc.*, 425 F. Supp. 2d 402, 414 (S.D.N.Y. 2006) (granting CrossBorder's motion to dismiss on nominative fair use defense).

While the parties agree on the three part test from *New Kids on the Block v. New American Publishing, Inc.*, 971 F.2d 302, 308 (9th Cir. 1992), Jones Day applies it incorrectly. (Pls. Opp. p. 13) JONES DAY is Jones Day's mark; the hyperlink is not. Hence, for the first two tests, whether Jones Day is readily identifiable without using JONES DAY and whether only as much of JONES DAY is used as required, BlockShopper clearly used the minimum needed words (and Jones Day concedes this was fine). *Id.* Even accepting Jones Day's argument that the link is the "mark," the conclusions are the same. The web pages for Tiedt and Malone cannot be identified without their www.jonesday.com addresses, and only those addresses are used.[5]

---

[5] Jones Day's reliance upon *World Impressions, Inc. v. McDonald's Corp.*, 235 F. Supp. 2d 831, 843 (N.D. Ill. 2002) for the proposition that BlockShopper took more of the mark than "reasonably necessary" is unavailing. (Pls. Opp. p. 13.) World Impressions used Disney's federally registered stylized font for "Disneyland," akin to BlockShopper using Jones Day's registered stylized font and design. (Am Compl. Ex. B.) That did not occur here.

The only test at issue is whether BlockShopper did anything that would, in conjunction with the mark, suggest sponsorship or endorsement. *New Kids*, 971 F.2d at 308. The law is with BlockShopper – a hyperlink does not create an association with the linked site. *Knight-McConnell*, *2. Plaintiff's alleged contrary authority, *Courtenay Communications Corp. v. Hall*, 334 F.3d 210 (2d Cir. 2003), does not even concern a link to a plaintiff's page. In *Hall*, the defendant used the mark "iMarketing" on its web page next to the hyperlinked words "smartest strategic move," which connected to defendant's "Success Stories" page, describing iMarketing as a "poorly managed, unfocused and unprepared" company overhauled by defendant, and containing a false, unauthorized endorsement from iMarketing's president, thanking defendant for its services. At 212. In a footnote, the court said the false endorsement, coupled with the "smartest strategic move" link, could lead to the conclusion that iMarketing endorsed defendants. *Id.* at n. 1. Our case is not about false endorsements, linked within a party's own site, and, hence, *Hall* cannot save Jones Day's case.

**D.     Under the Anti-Dilution Act, BlockShopper's News Reports Are Not Dilution.**

Finally and decisively, BlockShopper is excluded from the anti-dilution act under the news reporting and commentary exception. Not only does the exclusion defeat the claims, its very purpose is to prevent the use of trademark law to chill truthful speech which its subject dislikes. Make no mistake, that is Jones Day's purpose – to stop BlockShopper from reporting news about the public real estate transactions of its lawyers – but trademark law allows nothing of the sort.

Unlike nominative fair use, news reporting was created as a *statutory exclusion*, not converted from a common law affirmative defense. 15 U.S.C. § 1125(c)(3). If, as Jones Day suggests, news entities could not apply this exclusion on a motion to dismiss, it would gut the exclusion's ability to prevent the statute's use "as a weapon against media use of trademarks in the context of reporting news." McCarthy § 24:127. In the only reported opinion on the exclusion, *BidZirk*, the court found decisively in denying a preliminary injunction that Smith fulfilled the news

exception. At *1. Had Smith, a pro se defendant, not already answered, he could have moved to dismiss, rather than prevailing on all claims, as he did, at summary judgment. *Id.*

Jones Day attacks the news exception in three ways: by arguing that BlockShopper advertises, by suggesting it only covers negative reporting, and by opining that BlockShopper is not engaged in commentary. The advertising argument is quickly set aside. Virtually every newspaper advertises. If advertising prevented application of the news exception, the legislature's intent to allay the media's concern that "the noncommercial use exception might not be sufficient" would be thwarted. (Pls. Opp. p. 9; Def. Br. p. 8), citing 50 P.T.C.J. 711 (Oct. 19, 1995).

Jones Day's "negative news only" tact gets no farther. First, it has no statutory basis. The exclusion says "news reporting and news commentary," not just positive, neutral, or negative. 15 U.S.C. § 1125(c)(3). Second, to support its baseless argument, it quips: "the local paper should not fear a dilution lawsuit because they ran a truthful story about a popular fast-food chain's unsanitary kitchen conditions." (Pls. Opp. p. 9.) This begs the question: why should a paper ever fear a truthful story, positive or negative, because it uses the subject's mark and web address? News is news, no matter the tone. Jones Day's self-created negativity limitation, therefore, fails as well.

Finally, Jones Day seizes upon the phrase "news commentary" (as if it was not immediately preceded by "news reporting"). To this end, Jones Day tries to distinguish *BidZirk*, arguing that its blogger provided negative opinion commentary, unlike BlockShopper, who allegedly provided the opinion-less story and link for commercial benefit.[6] (Pls. Opp. pp. 9-10.) Again, the distinctions are false. Both reporting and commentary, positive or negative, are excluded. 15 U.S.C. § 1125(c)(3). The *BidZirk* court did not parse the blogger's story; it looked at the blog as is, and correctly ascertained that it was meant to inform like a news story, despite its format as a blog.

---

[6] Jones Day criticizes BlockShopper's citation to the Illinois Reporter's privilege statute, 735 ILCS 5/8-901, claiming it misrepresents *BidZirk* on this point. (Pls. Opp. p. 11.) This is not true. The *BidZirk* magistrate expressed an interest in whether a reporter's privilege statute would shed light on whether a blogger was covered, but that state did not have a statute. Illinois does, and this Court may consider its inclusion of electronic papers as "news medium." *Id.*

This Court should reject Jones Day's invitation to play editor and critique the "newsworthiness" of BlockShopper's stories. (Pls. Br. pp. 10-11.) Jones Day baldly states that BlockShopper's "use of the link... has nothing to do with reporting the news..." and that "the link adds nothing in the way of 'news,'" but what possible basis does it have for making these censor-like judgments? *Id.* Moreover, its judgment is wrong. Citing source material substantiates Malone and Tiedt's employment with Jones Day and corroborates the public facts, strengthening the article's credibility. This Court should reject Jones Day's presumptuous editorial assertions and apply the news exclusion to dismiss the baseless dilution claim.

### III. JONES DAY HAS NOT PLED INFRINGEMENT.[7]

BlockShopper's cases prove that Jones Day's likelihood of confusion based claims can and must be dismissed. *Knight-McConnell*, *2; *Just Add Water, Inc. v. Everything But Water, Inc.*, No. Civ. 3:04-CV-2085-H, 2005 WL 1206874, *4 (N.D. Tex. May 18, 2005); *Le Book Publ'g, Inc. v. Black Book Photog., Inc.*, 418 F. Supp. 3d 305, 313 (S.D.N.Y. 2005). Jones Day responds only to *Knight-McConnell*, a case devastating to its linking claim, with a footnote, stating that that Knight-McConnell's criticism makes her distinct.[8] (Pls. Opp. n. 8.) *Knight-McConnell* rejects that distinction. It holds broadly that hyperlinks do not create an association, but adds that this is "particularly true" where there is criticism and disassociation. *Id.* at *2. By taking the language out of context, Jones Day purposefully misleads the Court. Under *Knight-McConnell*, linking cannot prove association, and, hence, Jones Day's infringement claims must be dismissed.

Ignoring the relevant cases, Jones Day responds instead with a laundry list of traditional infringement cases, completely unlike ours, where courts declined to compare two arguably similar

---

[7] BlockShopper's arguments for nominative fair use apply equally to the likelihood of confusion based counts.
[8] Jones Day offers no response at all to motion to dismiss cases *Everything But Water* and *Le Book*, or to similarly favorable TRO and preliminary injunction cases *Universal City Studios, Inc. v. Ideal Publ'g Corp.*, No. 77 Civ. 4508, 1977 WL 25614 (S.D.N.Y. Sept. 29, 1977); *Caterpiller, Inc. v. Walt Disney Co.*, 287 F. Supp. 2d 913 (C.D. Ill. 2003); and *Wham-O, Inc. v. Paramount Pictures Corp.*, 286 F. Supp. 2d 1254 (N.D. Cal. 2003).

marks on a motion to dismiss.⁹ Jones Day also ignores how rare it is for a trademark complaint to be accompanied by exhibits that, as here, so squarely contradict its allegations of confusion. BlockShopper does not ask for a confusion comparison between two marks, like in Jones Day's cited cases. The parties agree that JONES DAY and BLOCKSHOPPER are dissimilar, but that BlockShopper uses JONES DAY and the link in two stories. The facts in the Amended Complaint and Exhibits are clear – it is only the law's application to be weighed here.

Jones Day does not cite a single case holding that "unauthorized linking" constitutes trademark infringement. Instead, it misrepresents "metatag" and "keying" cases as "similar trademark use." The concepts are different, as Jones Day knows full well. Jones Day explains that BlockShopper uses a link that is both "deep" and "embedded,"¹⁰ which is true, but then deceptively describes *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F. 3d 808, 812 (7th Cir. 2002) as being about "imbedded" uses of a trademark, wrongly suggesting it is an embedded link case, rather than a dissimilar metatag case.¹¹ (Pls. Opp. n. 3, p. 17.) See also *Playboy Enters., Inc. v. Netscape Comm's Corp.*, 354 F.3d 1020 (9th Cir. 2004) (misleadingly described by Plaintiff as about "linked" terms, but actually about keywords).¹² Use of trademarks in metatags and keywords is about potentially driving search engine inquiries about a trademark away from the mark owner and

---

⁹ Pls. Opp. p. 16; *Scandia Down Corp. v. Euroquilt, Inc.*, 772 F. 2d 1423, 1425-26 (7th Cir. 1985) (SCANDIA DOWN SHOPS and DOWN SHOPPES both with goose design); *AutoZone, Inc. v. Strick*, No. 07-2136, 2008 WL 4173019 (7th Cir. Sept. 11, 2008) (AUTO ZONE and WASH or OIL ZONE); *Vulcan Golf*, 552 F. Supp. 2d at 769 (VULCAN GOLF and VOLCAN GOLF); *Papa John's*, 446 F. Supp. 2d at 807 (PAPA TONY'S and PAPA JOHN'S); *Bobak Sausage Co. v. A&J Seven Bridges, Inc.*, No. 07 C 4718, 2008 WL 4181744, *3 (N.D. Ill. Sept. 5, 2008) (BOBAK'S and BOBAK'S SIGNATURE EVENTS); *Aguila Records v. Federico*, No. 07 C 3993, 2007 WL 2973832, *1 (N.D. Ill. Oct. 10, 2007) (scorpion designs); *McDonald's Corp. v. Gunville*, 441 F. Supp. 71, 73 (N.D. Ill. 1977) ("M"CDONALDS and "M"ONKBURGERS). See also *Triple Canopy, Inc. v. Moore*, No. 04 C 3265, 2005 WL 1629768 (N.D. Ill. Jul. 1, 2005) (allegedly fraudulent transfer and use of marks).

¹⁰ Oddly, Jones Day claims expertise on deep and/or embedded links but bristles at acknowledging the obvious fact that linking, the very root of the World Wide *Web*, is a practice at all, let alone a ubiquitous one. (Pls. Opp. p. 1.)

¹¹ Metatags, at issue in *Promatek* and in *North Am. Med. Corp. v. Axiom Worldwide, Inc.*, 522 F. 3d 1211, 1219-20 (11th Cir. 2008), are the hidden "HTML code intended to describe the contents of the web site" and which influence how likely a site is to be found when those metatags are used in a search engine. *Promatek*, 300 F. 3d at n. 1, 812 (injunction granted against use of COPITRAK in metatags).

¹² "Keying," the topic in *Playboy*, is the other side of the search equation, where web sites pay a search engine to have their site appear in response to a keyword. *Playboy*, 354 F.3d at 1023 (requiring adult-oriented sites to use keywords PLAYBOY and PLAYMATE may infringe or dilute those marks).

towards a competitor, who may be perceived as the owner or an affiliate. Here, BlockShopper is not accused of using JONES DAY in metatags or keywords. BlockShopper only uses JONES DAY in articles to describe Jones Day, and simply using a mark, even with a link, does not create an association between BlockShopper and Jones Day. *Knight-McConnell*, *2.

## IV. JONES DAY HAS FAILED TO PLEAD FACTS SUFFICIENT TO ATTACH PERSONAL LIABILITY TO TIMPONE AND WEINHAUS.

The individual defendants moved to dismiss Jones Day's claims against them personally because the Amended Complaint fails to make the required "special showing" to attach personal liability to limited liability company members accused of infringement. Jones Day responds that it is *possible* to hold corporate officers liable for infringement. But its Amended Complaint, even read liberally, makes no allegations that Weinhaus and Timpone did *anything* beyond the scope of their traditional duties as LLC members or that they personally directed the alleged infringement.

The parties agree that individual liability for infringement is possible, but only if plaintiff makes a "special showing." (Def. Mem. p. 26; Pls. Opp. p. 19.) That "special showing" is governed by *Dangler v. Imperial Machine Co.*, 11 F. 2d 945, 947 (7th Cir. 1926), requiring that:

> the officer acts willfully and knowingly – that is, [that] he personally participates in the manufacture or sale of the infringing article (acts other than as an officer), or when he use[s] the corporation as an instrument to carry out his own willful and deliberate infringements, or when he knowingly uses an irresponsible corporation with the purpose of avoiding personal liability.

*Id.* at 947. The parties only disagree on how *Dangler* applies under the liberal motion to dismiss pleading standard and whether these scant allegations meet the "special showing" requirement:

> 20. Upon information and belief, Defendants Weinhaus and Timpone co-founded, registered and own the internet web site located at the domain www.blockshopper.com (the "Web Site")....
>
> 21. Defendants Weinhaus and Timpone are now members of Defendant Blockshopper LLC; and, together, these three Defendants have done, and are now doing, business as Blockshopper.com and use the Web Site to operate that business.

(Am. Compl. ¶¶ 20-21.) These two paragraphs are the *entirety* of Jones Day's allegations on the individuals. These skeletal allegations are not enough, and even the cases cited by Jones Day demand more.[13] Even the one case Jones Day claims distinguishes *Dangler* – *Do It Best* – sets an almost identical pleading standard: "[T]he alleged contributory infringer must have acted 'willfully or knowingly' and must have 'personally participated' in the alleged infringement." 2004 WL 1660814, at *15. Thus, the analysis under all authorities is: did the individuals act outside the scope of their corporate duties by willfully and personally participating in deliberate infringement?

Nothing alleged by Jones Day, or even inferred there from, comes close. Having an active role in a company is not tortuous. Individual liability arises only when an individual personally directs *infringing activities*. *Cf. The Drink Group, Inc. v. Gulfstream, Comm'n, Inc.*, 7 F. Supp. 2d 1009 (N.D. Ill. 1998). Registering www.blockshopper.com is not an infringing activity; nor is co-founding the site. While Jones Day alleges that BlockShopper infringes its mark by naming Jones Day in news articles and by linking to its web site, there is no allegation that Timpone or Weinhaus wrote the articles, established the links, or directed those acts. As shown above, the sparse two allegations about Weinhaus and Timpone do not even allege in a conclusory fashion that these individuals are the driving force behind the alleged infringement.

As with its substantive claims, Jones Day once again seeks refuge in Federal Rule of Civil Procedure 8, asking that their Amended Complaint be liberally construed to allege that Timpone and Weinhaus are the "moving force" behind the "unlawful use" of the marks. (Pls. Opp. p. 22.) To reach such a conclusion, however, is more than liberal; it stretches the plausible implications of generic allegations beyond their reach. Even searching through Jones Day's Exhibits, which show

---

[13] Pls. Opp. p. 21; *Cooper Indus., Inc. v. Juno Lighting Inc.*, 1 U.S.P.Q.2d 1313, 1314 (N.D. Ill. 1986) (Plaintiff alleged individual defendant was "moving force" behind company's infringing activities and that he "willfully and deliberately induced, aided and abetted [company's] past and continuing infringement"); *Piaggio & C.S.P.A. v. Scooterworks USA, Inc.*, No. 98 C 7573, 1999 WL 674749, *6 (N.D. Ill. Aug. 23, 1999) (Plaintiff "alleged facts demonstrating that [individual] personally participated in the alleged acts of infringement"); *Do It Best Corp. v. Passport Software, Inc.*, No. 01 C 7674, 2004 WL 1660814 (N.D. Ill. July 23, 2004) (Plaintiff alleged individual "knew about [the company's] alleged infringement and that he directed and participated in acts" in furtherance).

Timpone as the contact for "Media, Advertising & Business Dev." and Weinhaus as the contact for "advertising and sponsorship," there is not enough. (Pls. Opp. p. 21.) There is nothing infringing about selling advertising for developing business leads, nor for *being an email contact* for questions. Jones Day is grasping at straws to claim that its Amended Complaint alleges any basis, let alone a "special showing," for individual liability. Given the barebones allegations, Jones Day fails to state a claim for personal liability. Timpone and Weinhaus must be dismissed from the case.

## CONCLUSION

In considering Jones Day's Amended Complaint and Exhibits, the Court should bear in mind the consequences to the public should BlockShopper's Motion to Dismiss be denied. If Jones Day is correct – that conclusory allegations of likelihood of confusion and dilution suffice to save a complaint from dismissal whenever a web site operator with a trademark is unhappy about an article that accompanies a link to a page on its web site – then any powerful company can drag a journalist into court and force him to endure discovery and perhaps trial. The result will be the end of the Internet as we know it, because nobody will be able to safely link to anybody else's site without permission. The facts pled are clear, and they support BlockShopper. This case must be dismissed.

                **BLOCKSHOPPER, LLC,**
                **BRIAN TIMPONE, and EDWARD WEINHAUS**

                By: /s/ Martin B. Carroll
                    One of their Attorneys

Martin B. Carroll
Tracy Katz Muhl
Adam Hachikian
**FOX, HEFTER, SWIBEL, LEVIN & CARROLL, LLP**
200 West Madison Street, Suite 3000
Chicago, Illinois 60606
(312) 224-1200
(312) 224-1202 (fax)
Dated: October 10, 2008