**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JONES DAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 08 CV 4572 |
| | ) | |
| BLOCKSHOPPER, LLC, BRIAN | ) | Judge John Darrah |
| TIMPONE and EDWARD WEINHAUS, | ) | |
| | ) | **JURY DEMANDED** |
| Defendants. | ) | |

**DEFENDANT BLOCKSHOPPER LLC'S ANSWER**
**TO AMENDED COMPLAINT AND JURY DEMAND**

Defendant Blockshopper LLC ("Blockshopper"), by and through its attorneys

Sonnenschein Nath & Rosenthal LLP, answers the Amended Complaint and Jury Demand of

Plaintiff, Jones Day, as set forth below. This Court dismissed Plaintiff's claims in the Amended

Complaint against Brian Timpone and Edward Weinhaus in their individual capacities by Order

of the Court, entered November 17, 2008. Accordingly, the allegations and claims against Brian

Timpone and Edward Weinhaus are not answered here. Thus, to the extent that the Amended

Complaint refers to Blockshopper, Brian Timpone and Edward Weinhaus collectively as

"Defendants," Blockshopper has treated those references for purposes of this Answer as a

reference to Blockshopper alone and only answers those and all other allegations herein as to

Blockshopper alone.

## JURY DEMAND

Blockshopper demands trial by jury.

## NATURE OF THE ACTION

1.      This is a civil action against Defendants for their acts of service mark

infringement, service mark dilution, false designation of origin and deceptive trade practices.

**ANSWER:**

Blockshopper admits the Complaint by Jones Day purports to be an action for service mark infringement, service mark dilution, false designation of origin and deceptive trade practices. Blockshopper denies the allegations of the Complaint as set forth herein and denies that its news reporting on Blockshopper.com has infringed or diluted Jones Day's service marks in any manner or has resulted in false designation of origin or deceptive trade practices in any manner in relation to Jones Day's service marks. Further answering, Blockshopper states that Jones Day has brought this action in an oppressive attempt to chill Blockshopper's news reporting of public record and publicly available information about Jones Day's partners and associates on Blockshopper.com. There is nothing infringing, diluting or actionable about Blockshopper's legitimate use of the words Jones Day to refer to Plaintiff and its lawyers in Blockshopper's local real estate news stories on Blockshopper.com, or to link on Blockshopper.com to the Jones Day web site, www.Jonesday.com, when referring in such news stories to individuals referenced on the Jones Day web site.

## PARTIES, JURISDICTION AND VENUE

2. At all times relevant hereto, Plaintiff, Jones Day, was and is a general partnership engaged in the profession and practice of law with an office in Illinois located at 77 West Wacker, Chicago, Illinois 60601-1692.

**ANSWER:**

On information and belief, Blockshopper admits the allegations of Paragraph 2.

3. At all times relevant hereto, upon information and belief, the Defendant, Blockshopper, LLC was and is a Missouri Limited Liability Corporation which has a place of business at 2000 North Racine Avenue, Chicago, Illinois 60614.

**ANSWER:**

Blockshopper admits that it was a Missouri limited liability company, and that, on

September 23, 2008, Blockshopper merged into a new entity, Blockshopper LLC, a

Delaware limited liability company. Blockshopper admits that it presently has a place of

business at 2000 North Racine Avenue, Chicago, Illinois 60614. Blockshopper denies all

remaining allegations of Paragraph 3 in full.

4.     At all times relevant hereto, upon information and belief, the Defendant, Brian
Timpone was and is an individual whose address is 2024 North Racine Avenue, Apartment
D, Chicago, Illinois 60614.

**ANSWER:**

This Court dismissed Plaintiff's claims against Brian Timpone by Order of the Court,

entered November 17, 2008. Accordingly, Blockshopper is not required to answer the

allegations of Paragraph 4.

5.     At all times relevant hereto, upon information and belief, the Defendant,
Edward Weinhaus was and is an individual whose address is 102 Ladue Aire Drive, Saint
Louis, Missouri 63141.

**ANSWER:**

This Court dismissed Plaintiff's claims against Edward Weinhaus by Order of the Court,

entered November 17, 2008. Accordingly, Blockshopper is not required to answer the

allegations of Paragraph 5.

6.     This Court has jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§
1331 and 1338. This Court has jurisdiction over Jones Day's common law claims pursuant
to 28 U.S.C. §§ 1332 and 1367.

**ANSWER:**

Admitted.


7.     Venue is proper in this District pursuant to 28 U.S.C. 1391(b) in that a substantial part of the events giving rise to the claims at issue occurred in this District. Jones Day is also suffering from the effects of Defendants' conduct in this District.

**ANSWER:**

Blockshopper admits that venue is proper in this District pursuant to 28 U.S.C.

1391(b) and denies all remaining allegations in Paragraph 7.

## FACTS COMMON TO ALL COUNTS

### Jones Day's Famous Service Marks

8.     Tracing its origins to 1893 in Cleveland, Ohio, Jones Day is one of the world's largest and most famous law firms, with more than 2,200 lawyers resident in 30 geographically diverse locations, worldwide.

**ANSWER:**

Blockshopper denies that Jones Day is a "famous" mark within the meaning of 15 U.S.C.

1125(c)(2)(A), and to the extent Paragraph 8 implies or alleges as much, Blockshopper

denies this allegation. Further answering, Blockshopper is without knowledge or information

sufficient to form a belief as to the truth of all remaining allegations of Paragraph 8 and on that

basis denies them in full.


9.     In the United States, Jones Day maintains offices in Atlanta, Georgia; Chicago, Illinois; Cleveland, Ohio; Columbus, Ohio; Dallas, Texas; Houston, Texas; Irvine, California; Los Angeles, California; New York, New York; Palo Alto, California; Pittsburgh, Pennsylvania; San Diego, California; San Francisco, California; and Washington, D.C.

**ANSWER:**

On information and belief, Blockshopper admits the allegations of Paragraph 9.

10.     Jones Day's international practice is also significant and expanding. In addition to representing a large number of its United States-based clients in international matters, Jones Day represents many major companies based in Europe, the Middle East, Asia and Latin America. Jones Day maintains a significant presence in the principal legal and regulatory capitals of the world. In Europe, more than 400 lawyers are based in Brussels, Belgium; Frankfurt, Germany; London, England; Madrid, Spain; Milan, Italy; Moscow, Russia; Munich, Germany; and Paris, France. In Asia, more than 200 lawyers are based in Beijing, China; Hong Kong, People's Republic of China; Shanghai, China; Singapore; Taipei, Taiwan; and Tokyo, Japan. Jones Day also has offices in Sydney, Australia.

**ANSWER:**

Blockshopper is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 10 and on that basis denies them in full.

11.     Jones Day is fortunate to have been selected to act as principal outside counsel to, or provide significant legal representation for, more than half of the Fortune 500 companies, as well as to a wide variety of other entities, including privately held companies, financial institutions, investment firms, health care providers, retail chains, foundations, educational institutions and individuals.

**ANSWER:**

Blockshopper is without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 11 and on that basis denies them in full.

12.     Surveys repeatedly list Jones Day as one of the law firms most frequently engaged by domestic corporations, and many of the Firm's lawyers have achieved national recognition in their disciplines. Jones Day has been ranked first among litigation departments in the United States, and consistently ranks among the finest litigation departments in the United States.

**ANSWER:**

Blockshopper is without knowledge or information sufficient to form a belief as to the

truth of the allegations of Paragraph 12 and on that basis denies them in full.


13. In October 2005, Jones Day, for the third time in five years, topped the BTI Consulting Group's National Survey of Client Service Performance for Law Firms. Jones Day is one of only two law firms honored in 2005 as a member of the BTI Client Service Hall of Fame. This exclusive list includes law firms that clients rank in the BTI Client Service Top Ten for five years in a row.

**ANSWER:**

Blockshopper is without knowledge or information sufficient to form a belief as to the

truth of the allegations of Paragraph 13 and on that basis denies them in full.


14. Jones Day is the owner of two United States Service Mark Registrations, Numbers 2,316,539 and 2,212,877, for the mark JONES DAY in connection with "Legal Services" (collectively the "Jones Day Marks"). The Jones Day Marks are incontestable. Copies of these Registrations are attached hereto as Exhibits A and B respectively.

**ANSWER:**

Blockshopper is without knowledge or information sufficient to form a belief as to the

truth of the allegations of Paragraph 14 and the authenticity of the Exhibits to the Complaint, and

on that basis denies the allegations of Paragraph 14 in full.


15. As a result of the high quality of legal services it has provided to its clients for more than a century and its reputation as one of the premier law firms in the United States (and the world), Jones Day's name and service marks have become very valuable assets and are famous. Since at least as early as July 1983, Jones Day has used the service mark JONES DAY to identify the legal services the Firm provides. The Firm has used the service mark JONES DAY in commerce in various other forms since at least 1939.

**ANSWER:**

Blockshopper denies that Jones Day is a "famous" mark within the meaning of 15 U.S.C. 1125(c)(2)(A), and to the extent Paragraph 15 asserts or implies as much, Blockshopper denies this allegation. Further answering, Blockshopper is without knowledge or information sufficient to form a belief as to the truth of all remaining allegations of Paragraph 15 and on that basis denies them in full.

16.     Since 1983, Jones Day has spent millions of dollars marketing its services worldwide using the Jones Day Marks. As a direct result of the time and effort promoting the Jones Day Marks, Jones Day's clients, its competitors and the general public have come to associate high quality legal services provided by Jones Day by its use of the name and service mark JONES DAY in both word and stylized forms.

**ANSWER:**

Blockshopper denies that Jones Day is a "famous" mark within the meaning of 15 U.S.C. 1125(c)(2)(A), and to the extent Paragraph 15 asserts or implies as much, Blockshopper denies this allegation. Blockshopper further specifically denies that "the general public ha[s] come to associate high quality legal services provided by Jones Day by its use of the name and service mark JONES DAY." Blockshopper is without knowledge or information sufficient to form a belief as to the truth of all remaining allegations of Paragraph 16 and on that basis denies them in full.

17.     Jones Day vigorously protects its rights in and to the Jones Day Marks. For example, in March 2000, Jones Day sued a cybersquatter who had registered and was using website domain names that incorporated the Jones Day Marks. Judge Nugent of the United States District Court for the Northern District of Ohio enjoined that cybersquatter from posting any content on websites at the domain names "www.jonesdayreavis.com," "www.jonesdayreavispogue.com," and "www.jonesdayreavisandpogue.com" or from registering any domain name that is identical or confusingly similar to any registered or common law service mark of Jones Day, including, but not limited to, the Jones Day Marks.

**ANSWER:**

Blockshopper is without knowledge or information sufficient to form a belief as to the

truth of the allegations of Paragraph 17 and on that basis denies them in full.


18.    A similar result was reached in November 2005. Jones Day sued an individual who had registered and was using www.jonesdays.com to disparage Jones Day: Judge Economus of the United States District Court for the Northern District of Ohio enjoined that individual from posting any content on the web site located at www.jonesdays.com, from registering any domain name that is identical or confusingly similar to any registered or common law service mark of Jones Day, including, but not limited to, the Jones Day Marks, and from engaging in any conduct which dilutes or infringes Jones Day's rights in and to the Jones Day Marks. Jones Day also was awarded costs, statutory damages and attorneys' fees.

**ANSWER:**

Blockshopper is without knowledge or information sufficient to form a belief as to the

truth of the allegations of Paragraph 18 and on that basis denies them in full.


19.    In 2006, Jones Day again successfully enforced its service marks against improper internet usage. Jones Day sued for trademark dilution in the United States District Court for the Northern District of Ohio (Case No. 1:06CV01174). The suit ultimately settled when the defendant agreed to refrain from referencing or using, directly or indirectly, "Jones Day" or the Jones Day Service Marks.

**ANSWER:**

Blockshopper is without knowledge or information sufficient to form a belief as to the

truth of the allegations of Paragraph 19 and on that basis denies them in full.


**Defendants' Unlawful Conduct**

20.    Upon information and belief, Defendants Weinhaus and Timpone co-founded, registered and own the internet web site located at the domain www.blockshopper.com (the "Web Site"). Attached hereto as Exhibit C, and incorporated herein by reference, are true and correct screenshots of the Web Site that an internet user sees when it types in the domain name www.blockshopper.com.

**ANSWER:**

Blockshopper admits that Timpone originally founded the business that is now Blockshopper LLC. Blockshopper further admits that Timpone initially registered the URL Blockshopper.com and that Blockshopper owns the internet web site located at the domain www.blockshopper.com (defined as and referred to in Jones Day's Complaint as the "Web Site"). Blockshopper further admits that Exhibit C appears to contain true and correct screenshots of the Web Site that an internet user sees when it types in the domain name www.blockshopper.com. Blockshopper denies all remaining allegations of Paragraph 20 in full.

21.     Defendants Weinhaus and Timpone are now members of Defendant Blockshopper, LLC; and, together, these three Defendants have done, and are now doing, business as Blockshopper.com and use the Web Site to operate that business.

**ANSWER:**

Blockshopper denies that Weinhaus and Timpone are now members of Defendant Blockshopper LLC. Further answering, Blockshopper admits that it operates Blockshopper.com. Blockshopper denies all remaining allegations of Paragraph 21 in full.

22.     Blockshopper.com is a business predicated upon gathering and publishing details of private residential real estate transactions.

**ANSWER:**

Blockshopper.com denies that it is a business predicated upon gathering and publishing details of "private" residential real estate transactions. Further answering, Blockshopper states that Blockshopper.com is a local community news web site and real estate market data service, which publishes news stories that contain details from public record

residential real estate transactions and other publicly available information, including local

government public records, trusted media outlets, and data made public by buyers and sellers

themselves.

23.     Upon information and belief, Defendants publish this information in a scheme
to solicit advertisements and garner advertising income: "BlockShopper.com offers special
advertising and sponsorship packages created to meet your local customer acquisition or
brand- building needs." See Exhibit C.

**ANSWER:**

Blockshopper admits that, as stated on its local community news web site,

"BlockShopper.com offers special advertising and sponsorship packages created to meet

your local customer acquisition or brand-building needs."  Blockshopper admits it solicits

advertisers and advertising income in connection with Blockshopper.com, as is common

practice for internet news web sites and traditional newspapers and media.  Blockshopper

denies all remaining allegations of Paragraph 23 in full.

24.     In order to make the Web Site more attractive to potential advertisers,
Defendants use the service marks of others, link to web sites owned by others, and use
material from web sites belonging to others.  [sic]

**ANSWER:**

Denied.

25.     On at least two occasions, Defendants have used the Jones Day Service Marks
and linked "articles" on the Web Site to the Jones Day web site. See Exhibit D.

**ANSWER:**

Blockshopper admits that it has published news stories on Blockshopper.com, which

referenced lawyers employed by Jones Day and "linked" from Blockshopper.com to the

Jones Day web site, Jonesday.com. Blockshopper admits that Exhibit D appears to contain print outs of such new stories on the Blockshopper.com web site. Blockshopper denies all remaining allegations of Paragraph 25 in full.

26. The Defendants have and continue to use proprietary materials from the Jones Day web site on the Web Site. A review of the content of the Web Site reveals that the photographs of at least two Jones Day associates are identical to the photographs which appear on the Jones Day web site.

**ANSWER:**

Blockshopper admits it posted copies on the Blockshopper.com web site of the photographs of at least two Jones Day associates that also appear on the Jones Day web site, and is without knowledge or information sufficient to form a belief as to the truth of all remaining allegations of Paragraph 26 and on that basis denies them in full.

27. Defendants have no business connection or association with Jones Day.

**ANSWER:**

Admitted.

28. Use of the Jones Day Marks, the links to the Jones Day web site and the use of proprietary information from the Jones Day web site creates the false impression that Jones Day is affiliated with and/or approves, sponsors or endorses the business conducted by the Defendants. Such an impression is false and disparages Jones Day and the Jones Day Marks.

**ANSWER:**

Denied.

29. Upon information and belief, Defendants first used the Jones Day Marks and materials from the Jones Day web site in April of 2008.

**ANSWER:**

Denied.


30.     Jones Day did not become aware of the use of its Marks and proprietary web site content until July of 2008.

**ANSWER:**

Blockshopper is without knowledge or information sufficient to form a belief as to the

truth of the allegations of Paragraph 30 and on that basis denies them in full.


31.     After Jones Day became aware of the use of its Marks, and its proprietary web site content, it contacted Defendants on July 10, 2008, and requested that the Defendants cease all use of the Jones Day Marks, cease linking to the Jones Day web site and cease use of Jones Day's proprietary web site content. A true and correct copy of Jones Day's correspondence to Defendants is attached hereto at Exhibit E and is incorporated herein by reference.

**ANSWER:**

Blockshopper admits that Jones Day alleges it "contacted Defendants on July 10,

2008," but Blockshopper denies it received Exhibit E or any such written correspondence

from Jones Day on or about July 10, 2008.  Further answering, Blockshopper states that

Jones Day's purported correspondence was not addressed to Blockshopper and furthermore

that at the time of July 10, 2008, Blockshopper was no longer operating out of the address to

which Jones Day apparently directed its July 10, 2008, written correspondence.

Blockshopper is without knowledge or information sufficient to form a belief as to the truth of

all remaining allegations of Paragraph 31 and the authenticity of Exhibit E, and on that basis

denies all remaining allegations of Paragraph 31 in full.


32.     Jones Day did not receive a response to its correspondence. On July 17, 2008,

Jones Day again contacted Defendants and requested that the Defendants cease all use of the Jones Day Marks, cease linking to the Jones Day web site and cease use of Jones Day's proprietary web site content. A true and correct copy of Jones Day's correspondence to Defendants is attached hereto at Exhibit F and is incorporated herein by reference.

**ANSWER:**

Blockshopper admits that Jones Day alleges "on July 17, 2008, Jones Day again contacted Defendants" but Blockshopper denies it received Exhibit F or any such written correspondence from Jones Day on or about July 17, 2008. Further answering, Blockshopper states that Jones Day's purported correspondence was not addressed to Blockshopper and furthermore that at the time of July 17, 2008, Blockshopper was no longer operating out of the address to which Jones Day apparently directed its July 17, 2008, written correspondence. Blockshopper is without knowledge or information sufficient to form a belief as to the truth of all remaining allegations of Paragraph 32 and the authenticity of Exhibit F, and on that basis denies all remaining allegations of Paragraph 32 in full.

33.    Prior to the filing of this suit, Defendants have never responded to Jones Day's repeated requests to cease the use of its intellectual property.

**ANSWER:**

Denied.

34.    Jones Day has never authorized Defendants to use any intellectual property owned by Jones Day, including the Jones Day Marks.

**ANSWER:**

Blockshopper denies that it has "use[d] any intellectual property owned by Jones Day, including the Jones Day Marks," or that "authorization" was or is required to reference Jones Day or link to the Jones Day web site in news articles on Blockshopper.com, as

- 13 -

Blockshopper has done in the past. Blockshopper denies all remaining allegations of Paragraph 34 in full.

35.    As of the date of the filing of this Complaint, Defendants have failed to cease their unauthorized unlawful and disparaging use of Jones Day's intellectual property.

**ANSWER:**

Blockshopper denies that it has made any "unauthorized unlawful and disparaging use of Jones Day's intellectual property" in its news articles on Blockshopper.com, and denies all remaining allegations of Paragraph 35 in full.

**COUNT I**
**SERVICE MARK INFRINGEMENT**
**15 U.S.C. 1114 AND 1125(a)**

36.    Jones Day incorporates each and every allegation of Paragraphs 1-35 of this Complaint as though fully set forth herein.

**ANSWER:**

Blockshopper incorporates its answers to the allegations of Paragraphs 1-35 of this Complaint as though fully set forth herein.

37.    Jones Day's use of the Jones Day Marks predates any alleged use by Defendants in the United States.

**ANSWER:**

Blockshopper denies that it has used the words "Jones Day" in its news articles on Blockshopper.com as service marks or in any infringing or confusing manner, and, for these and other reasons, denies all of the allegations of Paragraph 37 in full.

38.     Defendants' use of the Jones Day Marks, in connection with their real estate advertisement scheme, is likely to deceive and cause confusion and mistake among customers as to the source or origin of the services provided or offered for sale by Defendants and the affiliation of Jones Day with those services and/or the sponsorship or endorsement of those services by Jones Day.

**ANSWER:**

Blockshopper denies that it has used the words "Jones Day" in its news articles on Blockshopper.com as service marks or in any infringing or confusing manner, and, for these and other reasons, denies all of the allegations of Paragraph 38 in full.

39.     Jones Day has never authorized, licensed or otherwise condoned or consented to Defendants' use of the Jones Day Marks.

**ANSWER:**

Blockshopper denies that it has used the words "Jones Day" in its news articles on Blockshopper.com as service marks or in any infringing or confusing manner, and, for these and other reasons, denies all of the allegations of Paragraph 39 in full.

40.     Defendants have misappropriated and continue to misappropriate Jones Day's substantial property rights in the Jones Day Marks, as well as the goodwill associated therewith. Unless restrained and enjoined by this Court, such conduct will continue and will permit Defendants to improperly interfere with Jones Day's continued promotion and expansion of the Jones Day Marks.

**ANSWER:**

Denied.

41.     As a result of Defendants' ongoing unlawful activities, Jones Day continues to suffer irreparable harm.

**ANSWER:**

Denied.

42.     As a direct and proximate result of Defendants' unlawful activities, Jones Day has and continues to suffer damages in an amount that is not presently ascertainable, but will be established at trial.

**ANSWER:**

Denied.

## COUNT II
## FEDERAL FALSE DESIGNATION OF ORIGIN
## 15 U.S.C. 1125(a)

43.     Jones Day incorporates each and every allegation of Paragraphs 1-42 of this Complaint as though fully set forth herein.

**ANSWER:**

Blockshopper incorporates its answers to the allegations of Paragraphs 1-42 of this

Complaint as though fully set forth herein.

44.     Defendants' use of the Jones Day Marks, in connection with their real estate advertisement scheme, is likely to deceive and cause confusion among consumers as to the source of origin of the services offered by Defendants and the sponsorship or endorsement of those services by Jones Day.

**ANSWER:**

Blockshopper denies that it has used the words "Jones Day" in its news articles on

Blockshopper.com as service marks or in any infringing or confusing manner, and, for these

and other reasons, denies all of the allegations of Paragraph 44 in full.

45.     Jones Day has never authorized, licensed or otherwise condoned or consented to Defendants' use of the Jones Day Marks.

**ANSWER:**

Blockshopper denies that it has used the words "Jones Day" in its news articles on Blockshopper.com as service marks or in any infringing or confusing manner, and, for these and other reasons, denies all of the allegations of Paragraph 45 in full.

46.     Defendants have misappropriated and continue to misappropriate Jones Day's substantial property rights in the Jones Day Marks, as well as the goodwill associated therewith. Unless restrained and enjoined by this Court, such conduct will permit Defendants to gain an unfair competitive advantage over Jones Day and allow Defendants to improperly interfere with Jones Day's continued promotion and expansion of its business.

**ANSWER:**

Denied.

47.     The acts of Defendants alleged above were committed willfully, with full knowledge of Jones Day's rights and with the intention to deceive and mislead the public.

**ANSWER:**

Denied.

48.     The acts of Defendants alleged above were committed willfully, with full knowledge of Jones Day's rights and with the intention of causing harm to Jones Day.

**ANSWER:**

Denied.

49.     The acts of Defendants alleged above were committed willfully, with full knowledge of Jones Day's rights and with the intention of misappropriating and wrongfully trading upon the valuable goodwill and reputation of Jones Day and the Jones Day Marks.

**ANSWER:**

Denied.

50.     Defendants will continue their ongoing acts of false designation of origin, causing irreparable injury to Jones Day, unless such activities are enjoined by this Court.

**ANSWER:**

Denied.

51.     As a direct and proximate result of Defendants' unlawful activities, Jones Day has and continues to suffer damages in an amount that is not presently ascertainable, but will be established at trial.

**ANSWER:**

Denied.

## COUNT III
## FEDERAL SERVICE MARK DILUTION, 15 U.S.C. 1125(c)

52.     Jones Day incorporates each and every allegation of Paragraphs 1-51 of this Complaint as though fully set forth herein.

**ANSWER:**

Blockshopper incorporates its answers to the allegations of Paragraphs 1-51 of this Complaint as though fully set forth herein.

53.     The Jones Day Marks have acquired fame in the United States.

**ANSWER:**

Denied.

54.     Defendants began using the Jones Day Marks after they became famous.

**ANSWER:**

Blockshopper denies that it has used the words "Jones Day" in its news articles on Blockshopper.com as service marks or in any diluting manner, and, for these and other reasons, denies all of the allegations of Paragraph 54 in full.


55.     Defendants' use of the Jones Day Marks is diluting and blurring the distinctiveness of the Jones Day Marks.

**ANSWER:**

Denied.


56.     Defendants' use of the Jones Day Marks is disparaging the distinctiveness of the Jones Day Marks.

**ANSWER:**

Denied.


57.     Defendants have diluted the famous Jones Day Marks.

**ANSWER:**

Denied.


58.     Defendants will continue their acts of dilution, causing irreparable injury to Jones Day, unless such activities are enjoined by this Court.

**ANSWER:**

Denied.

59. As a direct and proximate result of Defendants' acts of dilution, Jones Day has and continues to suffer damages in an amount that is not presently ascertainable, but will be established at trial. Jones Day is entitled to all available remedies provided for in 15 U.S.C. §§ 1117, 1118 and 1125, including preliminary and permanent injunctive relief, Defendants' profits, treble damages, costs and reasonable attorneys' fees.

**ANSWER:**

Denied.

## COUNT IV
## UNFAIR BUSINESS PRACTICES UNDER THE
## ILLINOIS UNIFORM DECEPTIVE TRADE PRACTICES ACT

60. Jones Day incorporates each and every allegation of Paragraphs 1-59 of this Complaint as though fully set forth herein.

**ANSWER:**

Blockshopper incorporates its answers to the allegations of Paragraphs 1-59 of this

Complaint as though fully set forth herein.

61. Defendants' activities set forth above have caused and will continue to cause a likelihood of confusion or misunderstanding as to the sponsorship, approval, affiliation or connection of Defendants with Jones Day.

**ANSWER:**

Denied.

62. In addition, Defendants' activities have given rise to and will continue to give

rise to the incorrect belief that Defendants have some connection with Jones Day,

irreparably damaging Jones Day's goodwill and reputation, in violation of the Illinois

Uniform Deceptive Trade Practices Act (815 ILCS 510/1 et seq.).

**ANSWER:**

Denied.

63.  As a direct and proximate result of Defendants' actions, Jones Day has and continues to suffer irreparable harm.

**ANSWER:**

Denied.

64.  As a direct and proximate result of the Defendants' actions, Jones Day has and continues to suffer damages in an amount which is not presently ascertainable, but will be established at trial.

**ANSWER:**

Denied.

## COUNT V
## ILLINOIS COMMON LAW INFRINGEMENT AND UNFAIR COMPETITION

65.  Jones Day incorporates each and every allegation of Paragraphs 1-64 of this Complaint as though fully set forth herein.

**ANSWER:**

Blockshopper incorporates its answers to the allegations of Paragraphs 1-64 of this

Complaint as though fully set forth herein.

66.  By virtue of Jones Day's continuous use of the Jones Day Marks in connection with legal services, Jones Day owns and enjoys common law rights in the Jones Day Marks in the State of Illinois.

**ANSWER:**

Blockshopper is without knowledge or information sufficient to form a belief as to the

truth of the allegations of Paragraph 66 and on that basis denies them in full.

67.    Defendants have committed common law infringement and unfair competition by referring to "Jones Day" in promoting their real estate advertisement scheme. The public is likely to believe that Defendants' services are affiliated with, connected to, or associated with Jones Day. Defendants' use of the Jones Day Marks is likely to cause confusion or mistake or deception of the public as to the affiliation of the services provided by Defendants.

**ANSWER:**

Denied.


68.    Defendants' acts are fraudulent and calculated to cause deception and confusion.

**ANSWER:**

Denied.


69.    Defendants have engaged in infringement and unfair competition in violation of the common law of the State of Illinois.

**ANSWER:**

Denied.


70.    As a direct and proximate result of Defendants' actions, Jones Day has and continues to suffer irreparable harm.

**ANSWER:**

Denied.


71.    As a direct and proximate result of Defendants' actions, Jones Day has and continues to suffer damages in an amount which is not presently ascertainable, but will be

established at trial.

**ANSWER:**

Denied.

WHEREFORE, Jones Day prays that this Court enter an Order:

A.  Preliminary and permanently enjoining Defendants, or anyone else acting in concert with it, or on its behalf, from:

   1.  Using any reproduction or colorable imitation of the Jones day Marks, or any mark confusingly similar thereto;

   2.  Linking to and/or using any materials from the Jones Day web site www.jonesday.com;

   3.  Engaging in any other conduct that suggests or tends to suggest to the public that Defendants are in any manner, directly or indirectly, affiliated, connected or associated with Jones Day or that the Defendants' services, goods or commercial activities originate from or are sponsored or approved by Jones Day;

B.  Requiring Defendants to account to Jones Day for all profits made by it in connection with any and all commercial activity relating to its use of the Jones Day Marks;

C.  Awarding to Jones Day the damages it sustained as a result of Defendants' wrongful acts;

D.  Awarding to Jones Day Defendants' profits pursuant to 15 U.S.C. §1117;

E.  Awarding to Jones Day treble damages pursuant to 15 U.S.C. §1117;

F.  Awarding to Jones Day its costs and attorneys' fees pursuant to 15 U.S.C. §1117;

G.  Awarding to Jones Day punitive damages as a result of Defendants' wrongful acts; and

H.  Granting Jones Day any further relief that the Court deems to be just and proper.

**ANSWER:**

Blockshopper denies that Jones Day is entitled to any of the requested relief and requests that Jones Day's Amended Complaint and requested relief be denied in full. Blockshopper also seeks its attorneys fees and costs pursuant to 15 U.S.C. 1117(a). This action by Jones Day constitutes oppressive conduct because, among other reasons, the action is without merit and is nothing more than a baseless attempt to chill Blockshopper's news reporting of public record and publicly available information about Jones Day's partners and associates on Blockshopper.com. According to Jones Day, it is one of the largest law firms in the world and reportedly has more than a billion dollars in annual revenues. It brought this suit, including a personal attack on two individuals, to coerce Blockshopper, a start up company with little capital, into censoring Blockshopper's publications to avoid the substantial legal fees it is being forced to incur defending this objectively meritless case.

Wherefore, Blockshopper respectfully requests this court to award Blockshopper its attorney's fees and costs of defending this action under the Lanham Act and other applicable federal rules and statutes, and to enter judgment in Defendant's favor.

**ADDITIONAL DEFENSES**

Further answering the Amended Complaint, Blockshopper pleads the following additional defenses and reserves the right to amend and add to the same:

## FIRST ADDITIONAL DEFENSE

Blockshopper's use of the words "Jones Day" and links to the Jonesday.com web site pages are non-trademark and non-servicemark uses.

## SECOND ADDITIONAL DEFENSE

Plaintiff's claims are barred by the First Amendment. Among other things, important and useful social, economic and commercial discourse would be harmed if speakers were under threat of an infringement lawsuit every time they made reference to a person, company or product by using its trademark or using a hyperlink to a company's or person's web site on the internet.

## THIRD ADDITIONAL DEFENSE

Plaintiff Jones Day has brought this action in an oppressive attempt to chill Blockshopper's news reporting of public record and publicly available information about Jones Day's attorneys on Blockshopper.com. There is nothing infringing, diluting or actionable about Blockshopper's legitimate use of the words Jones Day to refer to Plaintiff and its lawyers in Blockshopper's local real estate news stories on Blockshopper.com, or to link on Blockshopper.com to the Jones Day web site, Jonesday.com, and web pages when referring in news stories to individuals referenced on the Jones Day web site.

## FOURTH ADDITIONAL DEFENSE

Plaintiff's claims are barred by the doctrine of unclean hands. On information and belief, among other things, Jones Day uses the same kind of non-trademark and non-service mark references on its own web site, Jonesday.com, and the same type of linking about which it complains here.

## FIFTH ADDITIONAL DEFENSE

Plaintiff's claims are barred by the doctrine of laches.

## SIXTH ADDITIONAL DEFENSE

Plaintiff's dilution claims are barred because Jones Day's service marks are not "famous" within the meaning of 15 U.S.C. 1125(c), as amended in 2006 under the Trademark Dilution Revision Act. Among other things, Jones Day's service marks are not "widely recognized by the general consuming public of the United States as a designation of source of the goods or services" of Jones Day. (*Id.*, § 1125(c)(2)(A), emphasis added.)

## SEVENTH ADDITIONAL DEFENSE

Plaintiff's claims are barred under 15 U.S.C. 1125(c)(3)(A), which specifically excludes from actionable dilution "nominative or descriptive fair use, or facilitation of such fair use, of a famous mark by another person other than as a designation of source for the person's own goods or services" and further excludes uses of a famous mark that "comment" on the owner of the mark.

## EIGHTH ADDITIONAL DEFENSE

Plaintiff's claims are barred under 15 U.S.C. 1125(c)(3)(B), which specifically excludes from actionable dilution "all forms of news reporting and news commentary".

## NINTH ADDITIONAL DEFENSE

Plaintiff's claims are barred under 15 U.S.C. 1125(c)(3)(C), which specifically excludes from actionable dilution "[a]ny noncommercial use of a mark."

## TENTH ADDITIONAL DEFENSE

Plaintiff's claims are barred under 15 U.S.C. 1115(b)(4) because Blockshopper's use of the words "Jones Day" and links to the Jonesday.com web site pages constitute fair use.

## ELEVENTH ADDITIONAL DEFENSE

Blockshopper's use of the words "Jones Day" and links to the Jonesday.com web site pages constitute common law fair use, including "nominative" and "descriptive" fair use.

## TWELFTH ADDITIONAL DEFENSE

The nature of Blockshopper's use of the words "Jones Day" and links to the

Jonesday.com web site pages do not create a likelihood of dilution of the Jones Day Marks.

## THIRTEENTH ADDITIONAL DEFENSE

The nature of Blockshopper's use of the words "Jones Day" and links to the

Jonesday.com web site pages do not create a likelihood of confusion as to the source of

Blockshopper's services.

## FOURTEENTH ADDITIONAL DEFENSE

Plaintiff can, in no event, recover monetary damages for alleged trademark infringement

because there is no actual confusion.

December 3, 2008

Respectfully submitted,

SONNENSCHEIN NATH & ROSENTHAL LLP

By:   /s/ Natalie J. Spears
      One of the attorneys for Defendant

James A. Klenk (01482599)
Natalie J. Spears (6230320)
SONNENSCHEIN NATH & ROSENTHAL LLP
7800 Sears Tower
233 S. Wacker Drive
Chicago, IL 60606
(312) 876-8000(312) 876-8000
(312) 876-7934 (Facsimile)
14763120

## CERTIFICATE OF SERVICE

I, Natalie J. Spears, an attorney, hereby certify that on December 3, 2008, I electronically filed the foregoing **DEFENDANT BLOCKSHOPPER LLC'S ANSWER TO AMENDED COMPLAINT AND JURY DEMAND** by using the CM/ECF system, which will send notification of such filing to the attached service list:

Paul W. Schroeder (pwschroeder@jonesday.com)
Irene S. Fiorentinos (ifiorentinos@jonesday.com)
Brent P. Ray (bpray@jonesday.com
JONES DAY
77 West Wacker Drive
Suite 3500
Chicago, IL 60601-1692
(312) 782-3939
(312) 782-8585 (Fax)

Meredith M. Wilkes (mwilkes@jonesday.com)
James W. Walworth, Jr. (jwalworth@jonesday.com)
JONES DAY
North Point
901 Lakeside Avenue
Cleveland, OH 44114
(216) 586-3939
(216) 579-0212

Martin B. Carroll (mcarroll@fhslc.com)
Daniel S. Hefter (dhefter@fhslc.com)
Tracy Katz Muhl (tkatz@fhslc.com)
Adam A. Hackikian (ahackikian@fhslc.com)
FOX, HEFTER, SWIBEL, LEVIN & CARROLL LLP
200 West Madison Street
Suite 3000
Chicago, IL 60606
(312) 224-1230

/s/ Natalie J. Spears
One of the attorneys for Defendant
Blockshopper LLC